**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEXANDER CORREDOR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ASP ISOTOPES INC., PAUL E. MANN, and HEATHER KIESSLING,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Alexander Corredor ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by ASP Isotopes Inc. ("ASP Isotopes" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by ASP Isotopes; and (c) review of other publicly available information concerning ASP Isotopes.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired ASP Isotopes securities between October 30, 2024 and November 26, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     ASP Isotopes is a development stage advanced materials company focused on the production, enrichment, and sale of isotopes. The Company purports to have multiple isotope enrichment plants currently under development in South Africa. The Company is engaged in the development of "quantum enrichment technology" which allegedly uses lasers to produce enriched isotopes, including Uranium-235. The Company purports to be in development of high-assay low-enriched uranium ("HALEU") reactors to be fueled by Uranium-235 produced using its quantum enrichment technology. The Company touts that it its HALEU facilities could be deployed "for considerably lower capital costs, and in much less time, compared to the construction of an enrichment facility using a traditional centrifuge process." The Company has two operating

1

segments: (i) nuclear fuels, and (ii) specialist isotopes and related services. The Company's nuclear fuels operating segment is primarily operated through its Quantum Leap Energy subsidiary.

3.    On October 30, 2024, the Company announced it had entered into a term sheet with TerraPower, LLC "related to the construction of a uranium enrichment facility capable of producing High Assay Low-Enriched Uranium (HALEU) and the future supply of HALEU to TerraPower."

4.    On November 26, 2024, at approximately 10:00 a.m. Eastern Standard Time, market research firm Fuzzy Panda Research published a report which alleged that the Company is "using old, disregarded laser enrichment technology to masquerade as a new, cutting-edge Uranium enrichment." The report quoted a former employee of Klydon (the company ASP Isotopes purchased its "proprietary" technology from) as stating scientists "***did not think it would work on Uranium.***"[1]  The report revealed a series of experts interviewed stated the Company's reported cost estimates and timeline for building its HALEU uranium facilities was misleading to the point of being "delusional." The report further alleged the Company had significantly overstated the significance of its agreement with TerraPower, which was only a "non-binding" memorandum of understanding entered into to "***put pressure on [TerraPower's] real suppliers***." The report quoted a former TerraPower executives as stating that ASP Isotopes was "***missing the manufacturing; They are missing the processes as well; They still have to develop the HALEU…the most important part***." Finally, the report revealed that the Company's subsidiary, Quantum Leap Energy, which operates its nuclear fuels segment and to which the Company assigned the TerraPower memoranda of understanding, was ***completely absent from its registered***

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

***South African address***. The report revealed there were "zero signs" of their presence and "security guards and neighboring business about them all told us they had never heard of the companies."

5.     On this news, the Company's stock price fell $1.80 or 23.53%, to close at $5.85 per share on November 26, 2024, on unusually heavy trading volume. The stock continued to fall on the subsequent trading date, falling $0.83 or 14.19%, to close at $5.02 per share on November 27, 2024, on unusually heavy trading volume.

6.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company overstated the potential effectiveness of its enrichment technology; (2) the Company overstated the development potential of its high assay low-enriched uranium facility; (3) the Company overstated the Company's nuclear fuels operating segment results; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

12.     Plaintiff Alexander Corredor, as set forth in the accompanying certification, incorporated by reference herein, purchased ASP Isotopes securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant ASP Isotopes is incorporated under the laws of Delaware with its principal executive offices located in Washington, DC. ASP Isotopes' common stock trades on the NASDAQ exchange under the symbol "ASPI."

14.     Defendant Paul E. Mann ("Mann") was the Company's Founder and Chief Executive Officer ("CEO") at all relevant times.

15.     Defendant Heather Kiessling ("Kiessling") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16.     Defendants Mann and Kiessling (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money

4

and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     ASP Isotopes is a development stage advanced materials company focused on the production, enrichment, and sale of isotopes. The Company purports to have multiple isotope enrichment plants currently under development in South Africa. The Company is engaged in the development of "quantum enrichment technology" which allegedly uses lasers to produce enriched isotopes, including Uranium-235. The Company purports to be in development of high-assay low-enriched uranium ("HALEU") reactors to be fueled by Uranium-235 produced using its quantum enrichment technology. The Company touts that it its HALEU facilities could be deployed "for considerably lower capital costs, and in much less time, compared to the construction of an enrichment facility using a traditional centrifuge process." The Company has two operating segments: (i) nuclear fuels, and (ii) specialist isotopes and related services. The Company's nuclear fuels operating segment is primarily operated through its Quantum Leap Energy subsidiary.

**Materially False and Misleading**

**Statements Issued During the Class Period**

18.    The Class Period begins on October 30, 2024. On that day, the Company issued a press release which announced it had entered into a term sheet with TerraPower, LLC "related to the construction of a uranium enrichment facility capable of producing High Assay Low-Enriched Uranium (HALEU) and the future supply of HALEU to TerraPower." Specifically, the press release stated, in relevant part:

**ASP Isotopes Inc. enters into Term Sheet with TerraPower, LLC for Construction of a HALEU Production Facility**

**- Term sheet contemplates preparation of definitive documentation pursuant to which TerraPower would provide funding for the construction of a uranium enrichment facility and would purchase HALEU after the expected completion of the facility.**

WASHINGTON, Oct. 30, 2024 (GLOBE NEWSWIRE) -- ASP Isotopes Inc. NASDAQ: ASPI ("ASP Isotopes" or the "Company"), an advanced materials company dedicated to the development of technology and processes for the production of isotopes for use in multiple industries, today announced that it has **entered into a term sheet with TerraPower, a nuclear innovation company and advanced nuclear energy developer, related to the construction of a uranium enrichment facility capable of producing High Assay Low-Enriched Uranium (HALEU) and the future supply of HALEU to TerraPower, as a customer of Quantum Leap Energy LLC (QLE).**

The term sheet contemplates the preparation of definitive agreements pursuant to which **TerraPower would provide funding for the construction of a HALEU production facility.** In addition, **the parties anticipate entering into a long-term supply agreement for the HALEU expected to be produced at this facility pursuant to which the customer would purchase all the HALEU produced at the facility over a 10-year period after the expected completion of the facility.** It is anticipated that the definitive agreements will be assigned to ASP Isotopes' wholly owned subsidiary, Quantum Leap Energy LLC (QLE).

*            *            *

The Company believes that **its enrichment technologies can be deployed in a new HALEU facility for considerably lower capital costs, and in much less time, compared to the construction of an enrichment facility using a traditional centrifuge process of HALEU production.** The Company has already constructed

or is in the process of constructing three isotope enrichment facilities in South Africa. The first facility is expected to enrich Carbon-14 for use in healthcare and agrochemicals. The second facility is expected to enrich Silicon-28, which the Company believes will enable **faster, more efficient semiconductors for use in artificial intelligence and quantum computing.** The third facility is expected to enrich Ytterbium-176, a critically important raw material used in the production of oncology therapies.

"*Over the last several decades, the scientists at ASP Isotopes have developed some of the world's **most advanced isotope enrichment technologies. This term sheet is further validation of our belief that ASP Isotopes can offer scalable and capital efficient technology solutions to the supply challenges which exist in global isotope markets*"** said Paul Mann, Chairman and CEO of ASP Isotopes, and Chairman and CEO of QLE.

19.    On November 4, 2024, the Company submitted a prospectus supplement on a Form 424B5 filed with the SEC (the "Prospectus Supplement"). The Prospectus Supplement touted the Company's belief in the ability of its technology to manage uranium enrichment and HALEU reactor development. Specifically, the Prospectus Supplement stated, in relevant part:

Our proprietary technology, the Aerodynamic Separation Process ("ASP technology"), originally developed by Klydon Proprietary Ltd ("Klydon"), is designed to enable the production of isotopes used in several industries.

\*             \*             \*

We are also developing quantum enrichment technology to produce enriched Ytterbium-176 ("Yb-176"), Nickel-64, Lithium 6, Lithium7 and **Uranium-235 ("U-235").** Quantum enrichment is an advanced isotope enrichment technique that is currently in development that uses lasers. **We believe that the U-235 we may produce using quantum enrichment technology may be commercialized as a nuclear fuel component for use in the new generation of high-assay low-enriched uranium (HALEU)-fueled small modular reactors** that are now under development for commercial and government uses.

\*             \*             \*

The aerodynamic separation technique has its origins in the South African **uranium enrichment program** in the 1980s, and the ASP technology has been developed during the last 18 years by the scientists at Klydon.

20.    The Prospectus Supplement further touted the Company's agreement with TerraGroup and the strong interest in commercialization of its technology leading the Company to

7

separate out its operating segments and contemplate a potential spin out of Quantum Leap Energy, the subsidiary of the Company vested with the TerraGroup agreement. Specifically, the Prospectus Supplement stated, in relevant part:

> We operate principally through our subsidiaries. ASP Isotopes Guernsey Limited (the holding company for subsidiaries in the Cayman Islands, South Africa, Iceland and the United Kingdom) is focused on the development and commercialization of high-value, low-volume isotopes for highly specialized end markets (such as C-14, Mo-100, and Si-28). ASP Isotopes UK Ltd is the owner of our technology.
>
> In September 2023, **we formed Quantum Leap Energy LLC,** or "QLE," which also has subsidiaries in the United Kingdom (Quantum Leap Energy Limited) and **South Africa (Quantum Leap Energy (Pty) Limited),** to focus on the development and commercialization of advanced nuclear fuels such as HALEU and Lithium-6.
>
> \*                 \*                 \*
>
> **Beginning in 2024, primarily as a result of the increased business activities of QLE, we have two operating segments: (i) nuclear fuels, and (ii) specialist isotopes and related services.**
>
> **Although no assurance can be given, we plan to spin-out QLE, as a separate public company and list the shares of QLE on a U.S. national exchange** and distribute a portion of QLE's common equity to ASPI's stockholders as of a to-be-determined future record date, in each case subject to obtaining applicable approvals and consents and complying with applicable rules and regulations and public market trading and listing requirements.
>
> \*                 \*                 \*
>
> In connection with the anticipated spin-out, in February 2024, we entered into a number of agreements with QLE, including a License Agreement, pursuant to which **QLE has licensed from us the rights to technologies and methods used to separate Uranium 235 and Lithium 6 (including but not limited to the quantum enrichment and ASP technologies) in exchange for a perpetual royalty in the amount of 10% of all future QLE revenues,** and an EPC Services Framework Agreement, pursuant to which we will provide services for the engineering, procurement and construction of one or more turnkey Uranium-235 and Lithium-6 enrichment facilities in locations to be identified by QLE and owned or leased by QLE, and commissioning, start-up and test services for each such facility, **subject to the receipt of all applicable regulatory approvals, permits, licenses,** authorizations, registrations, certificates, consents, orders, variances and similar rights. **In addition, in February 2024, we assigned to QLE certain existing memoranda of understanding with U.S.-based small modular reactor companies for the use of Quantum Enrichment for the production of High-Assay Low**

8

*Enriched Uranium (HALEU). The MOUs provide for substantial financial support for the development of HALEU production facilities that should be capable of supplying metric ton quantities of HALEU by 2027.*

\*          \*          \*

**Recent Developments**

*In October 2024, we entered into a term sheet with TerraPower, LLC related to the construction of a uranium enrichment facility capable of producing HALEU and the future supply of HALEU to TerraPower.* The term sheet contemplates the parties entering into a definitive agreement, pursuant to which **TerraPower would provide funding for the construction of a HALEU production facility. In addition, the parties anticipate entering into a long-term supply agreement for HALEU expected to be produced at this facility, pursuant to which the customer would purchase all HALEU produced at the facility over a 10-year period after the expected completion of the facility in 2027.** It is anticipated that the **definitive agreements will be assigned to QLE.**

21.    On November 14, 2024, the Company issued a press release announcing that it entered into a Memorandum of Understanding with the South African Nuclear Energy Corporation to collaborate on the research and development of advanced nuclear fuel production. Specifically, the press release stated, in relevant part:

*MOU contemplates collaboration on the research, development and ultimately the commercial production of advanced nuclear fuels, such as High Assay Low Enriched Uranium (HALEU) for Small Modular* Reactors*.*

\*          \*          \*

Washington, D.C., November 14, 2024 (GLOBE NEWSWIRE) -- ASP Isotopes Inc. NASDAQ: ASPI ("ASP Isotopes" or the "Company"), an advanced materials company dedicated to the development of technology and processes for the production of isotopes for use in multiple industries, today announced that it has entered into a Memorandum of Understanding (MOU) with The South African Nuclear Energy Corporation (Necsa) to *collaborate on the research, development and ultimately the commercial production of advanced nuclear fuels.*

\*          \*          \*

*It is anticipated that the research, development and ultimate construction of a HALEU production facility will take place at Pelindaba, which is situated approximately 22 miles west of Pretoria, South Africa.* Pelindaba is South Africa's main nuclear research center and is the home of the 20MW research

nuclear reactor, SAFARI-1, which over the last several years has become one of the world's largest suppliers of Molybdenum-99 and other radioisotopes.

                    *                    *                    *

***ASPI recently entered into a Term Sheet with TerraPower LLC which contemplates TerraPower providing funding for the construction of a HALEU Facility and TerraPower purchasing HALEU produced at the facility***.

22.    On November 19, 2024, the Company submitted its quarterly report for the period ended September 30, 2024 on a Form 10-Q filed with the SEC (the "2Q24 10-K"). The 2Q24 10-K reported the Company's revenue and segment results, stating in relevant part:

Beginning in 2024, primarily as a result of increased business activities of its subsidiary, Quantum Leap Energy LLC, the Company has two operating segments: (i) nuclear fuels, and (ii) specialist isotopes and related services.

                    *                    *                    *

| | Revenues | | Net Loss Before Allocation to Noncontrolling Interest | |
| | Three Months Ended September 30, | | Three Months Ended September 30, | |
| Segment | 2024 | 2023 | 2024 | 2023 |
|---|---|---|---|---|
| Specialist isotopes and related services | $ 1,087,695 | $ — | $ (3,722,764) | $ (4,222,483) |
| Nuclear fuels | — | — | (3,632,625) | — |
| | $ 1,087,695 | $ — | $ (7,355,389) | $ (4,222,483) |

23.    The 2Q24 10-K further reported the Company's purported progress on High-Assay Low-Enriched Uranium (HALEU) Production. Specifically, the 2Q24 10-K stated in relevant part:

***High-Assay Low-Enriched Uranium (HALEU) Production***

In October 2024, we entered into a term sheet with TerraPower, LLC related to the ***construction of a uranium enrichment facility capable of producing HALEU and the future supply of HALEU to TerraPower.*** The term sheet contemplates the parties entering into a definitive agreement, pursuant to which TerraPower would provide funding for the construction of a HALEU production facility. In addition, ***the parties anticipate entering into a long-term supply agreement for HALEU expected to be produced at this facility, pursuant to which the customer would purchase all HALEU produced at the facility over a 10-year period after the expected <u>completion of the facility in 2027</u>.*** It is anticipated that the definitive agreements will be assigned to QLE.

                    *                    *                    *

In November 2024, we entered into a memorandum of understanding ("MOU") with The South African Nuclear Energy Corporation (Necsa) to collaborate on the research, development and ultimately the commercial production of advanced nuclear fuels. Necsa is a state-owned company established by the Republic of South Africa Nuclear Energy Act in 1999 with a mandate to undertake and promote research and development in the field of nuclear energy and radiation sciences. Necsa is also responsible for processing source material, and co-operating with other institutions on nuclear and related matters. The proposed structure under discussion for the delivery of the objectives of the MOU contemplates the formation of a new entity in South Africa with a board of directors consisting of at least two representatives from the Company and Necsa. ***Discussions between the parties during the last three years have focused on advancing new nuclear fuel to cater especially for small modular reactors as a start and eventually the construction of a nuclear fuel facility for the production of HALEU. It is anticipated that the research, development and ultimate construction of a HALEU production facility will take place at Pelindaba in Pretoria, South Africa.*** Pelindaba is South Africa's main nuclear research center and is the home of the 20MW research nuclear reactor, SAFARI-1, which over the last several years has become one of the world's largest suppliers of Molybdenum-99 and other radioisotopes.

24.     The above statements identified in ¶¶ 18-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) the Company overstated the potential effectiveness of its enrichment technology; (2) the Company overstated the development potential of its high assay low-enriched uranium facility; (3) the Company overstated the Company's nuclear fuels operating segment results; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

25.     On November 26, 2024, at approximately 10:00 a.m. Eastern Standard Time, market research firm Fuzzy Panda Research published a report entitled  "ASP Isotopes (ASPI): Failed Tech + Paid Stock Promotion + "Microcap Fraudsters" (Honig & Stetson) = Nuclear Meltdown." (the "Fuzzy Panda Report"). The Fuzzy Panda Report alleged that the Company is

"using old, disregarded laser enrichment technology to masquerade as a new, cutting-edge Uranium enrichment." The Fuzzy Panda Report quoted a former employee of Klydon (the company ASP Isotopes purchased its 'proprietary' technology from) as stating scientists "***did not think it would work on Uranium.***" The Fuzzy Panda Report revealed a series of experts interviewed stated the Company's reported cost estimates and timeline for building its HALEU uranium facilities was misleading to the point of being "delusional." The Fuzzy Panda Report further alleged the Company had significantly overstated the significance of its agreement with TerraPower, which was only a "non-binding" memorandum of understanding entered into to "***put pressure on [TerraPower's] real suppliers.***" The Fuzzy Panda Report quoted a former TerraPower executives as stating that ASP Isotopes was "***missing the manufacturing; They are missing the processes as well; They still have to develop the HALEU…the most important part***." Finally, the Fuzzy Panda Report revealed that the Company's subsidiary, Quantum Leap Energy, which operates its nuclear fuels segment and to which the Company assigned the TerraPower memoranda of understanding, was ***completely absent from its registered South African address***. The Fuzzy Panda Report revealed there were "zero signs" of their presence and "security guards and neighboring business about them all told us they had never heard of the companies." Specifically, the Fuzzy Panda Report stated the following, in relevant part:

> **ASP Isotopes (ASPI): Failed Tech + Paid Stock Promotion + "Microcap Fraudsters" (Honig & Stetson) = Nuclear Meltdown**
>
> ***ASP Isotopes (ASPI) is using old, disregarded laser enrichment technology to masquerade as a new, cutting-edge Uranium enrichment company.*** The truth is hiding just below the surface. Unbeknownst to investors, we discovered a crew tied to the most notorious "Microcap Fraudsters" (Honig & Stetson) behind the scenes. Nuclear energy and Uranium stocks are hot right now, so naturally Honig's family and friends are tied to a paid stock promotion in Uranium. ASPI is that company.
>
> We spoke with former executives from customers and competitors, and they told us ASPI is using old, mothballed technology that has been shown to be uneconomic.

*          *          *

**South African Subsidiaries:  Many List Same Address. We Visited. They Were Not Actually There**

We hired a local South African Investigator to pull ASPI's South African subsidiaries filings (only someone with a South African ID number can do this). We then had our investigator visit the listed addresses. Shockingly, almost all the subsidiaries had the exact same address.

**We visited the primary location — 1 Melrose Blvd- Unit 19, Johannesburg, South Africa — hoping to get answers. But we found that the ASP Isotopes's SA subsidiaries were NOT actually there.**

**There was ZERO sign of any of the companies at their listed address ASP Isotopes South Africa, Quantum Leap Energy,** Enlightened Isotopes, or ASPI South Africa Asset Finance.

**When we asked security guards and neighboring business about them all told us they had never heard of the companies.** The one thing we did find at that location was a South African retail investing fund, called Jaltech, that appears sketchy and shares the same address as ASPI's key subsidiaries as well as some Board Members who are hiding on the subsidiary filings.



South African Registration Documents Clearly Show the current address as 1 Melrose Blvd- Unit 19, Johannesburg, South Africa.

13

For Example – Quantum Leap Energy's South Africa Current CIPC Statement show the registered and current postal address as 1 Melrose Blvd- Unit 19, Johannesburg, South Africa.



All ASPI Subsidiaries Were Are Missing from the Building Directory at 1 Melrose Blvd – Unit 19; Johannesburg, South Africa

Quantum Leap Energy, Enlightened Isotopes, ASPI SA Asset Finance, or ASP Isotopes SA HQ were nowhere to be found.

## ASPI Subsidiaries Missing From Their Registered Address



\*                    \*                    \*

**TerraPower Executives Ranked ASPI at the Bottom in Terms of Quality**

- TerraPower Executives Said the MOU is "Non Binding" & "Required Zero Capital Commitment"

- TerraPower Executives Were "Most Skeptical" of ASPI's Ability to Deliver

**ASPI's Stock shot up ~150% over the last month. The major reason for this share spike was … a press release.**

**TerraPower had publicly announced that they signed a term sheet with ASP Isotopes.** To understand if this was just a press release or if this was going to be the rare Honig-Stetson company that had a technological advantage, **we spoke to former TerraPower executives in charge of procurement and nuclear executives at competitors.** They told us it was just a press release, a public announcement. The TerraPower-ASP Isotopes agreement is likely "Non-Binding" and required "Zero Capital Investment," they said.

**<u>The former executives told us privately that the true purpose was to show the DOE that they had a recovery plan and to put pressure on their real suppliers. The executive said if TerraPower was actually confident in ASPI's ability to deliver, they would've issued a purchase order rather than a MOU.</u>**

*              *              *

**ASPI was Ranked at the Bottom in Terms of Quality**

" Q) Who would you rank at the bottom?

> Probably ASP Isotopes … [ASPI] still have to build the manufacturing facility. [ASPI] still have to qualify the process. ASPI is missing the manufacturing; They are missing the processes as well; They still have to develop the HALEU…the most important part"

> ~TerraPower Former Executive in Procurement

**Nuclear Executives Also Thought ASPI's Timeline was Unrealistic**

How would you characterize the projected timeline and forecasts?

> **"It's too optimistic. And not real… That's my view on it**. And again, I have been around. I've worked on real projects, and I've seen how things work."

> ~ TerraPower Former Executive

*              *              *

**Cameco – Another Nuclear Co Was Skeptical of ASPI Tech; Their Scientists Didn't Think It Would Work on Uranium**

We spoke with a former employee of Klydon (the company ASPI bought the tech from) and they told us that Klydon had also tried and failed at selling the tech to Cameco. **The former Klydon employee told us Cameco's scientists were "very skeptical of the technology" and Cameco "did NOT think it would work on uranium."**

*              *              *

**ASPI Tech is Failed 1990s Tech That USA Gave Away For Free. Even IRAN and IRAQ Rejected It!**

- "Tech" is a Recycled Failed US Gov't Project from 1990s

- Japan and, yes, Iraq and Iran, Tried Developing Same Tech. All Concluded it was Commercially Useless.

- Lacks NRC License to Enrich Uranium & Didn't Even Bid for Large DOE Award

ASPI used to admit that they have tied investor's hopes and dreams to a process that is actually a failed DOE project from the late 1990s called AVLIS. AVLIS stands for (Atomic Vapor Laser Isotope Separation), which basically is enriching isotopes (like uranium) with lasers. This is the key technology ASPI is hyping. Unfortunately for ASPI, lots of governments have already tried AVLIS and determined it **does NOT work commercially.**

*          *          *

**In fact, twenty nations have researched laser isotope separation – Pretty much all of them abandoned it!**

"In total, more than **20 other nations have researched laser isotope separation techniques**. A report by Boureston and Ferguson [2005] includes Argentina, Australia, Brazil, Britain, China, France, Germany, India, Iran, Iraq, Israel, Italy, Japan, the Netherlands, Pakistan, Romania, Russia, South Africa, South Korea, Spain, Sweden, Switzerland, the United States and Yugoslavia." (source)

Pretty much all of them decided that it was **"NOT commercially viable"** and **"Unprofitable."**

We are not saying the technology is fake … it works, but evidently only at a small lab scale. The reality is that most nuclear companies and governments have studied AVLIS and many have wasted billions of dollars realizing that AVLIS (which ASPI's hopes and dreams are pinned on) **is inferior and unprofitable.**

A 2012 Berkeley study stated: "It is unclear whether AVLIS for uranium enrichment is even feasible."

*          *          *

**High-Cost Reality – Experts Laughed at ASPI's Cost Projections & Estimated They Will Be At Least 10x Higher**

- TerraPower Executives – Hundreds of Millions

- Centrus Executive – At Least a Billion

**Management is telling investors it will only cost $10 million. The experts we spoke with told us it would cost way more than that, and that's just to get it to the pilot phase.**

**TerraPower Former Executive – It will Cost ASPI "Way More" … "Hundreds of Millions"**

"Q) ASP has said that building out the facility for HALEU costs about $10 million. Is that accurate?

17

(Hahaha) "It's not. **It's going to be way more than $10 million…hundreds of millions sounds about right**…[Their estimates are] too optimistic. And not real…That's my view on it. And again, I have been around. I've worked on real projects and I've seen how things work.

~Former Terrapower Executive

26.    On this news, the Company's stock price fell $1.80 or 23.53%, to close at $5.85 per share on November 26, 2024, on unusually heavy trading volume. The stock continued to fall on the subsequent trading date, falling $0.83 or 14.19%, to close at $5.02 per share on November 27, 2024, on unusually heavy trading volume.

27.    On November 26, 2024, after the market closed, the Company issued a press release denying the allegations of the Fuzzy Panda Report based on a "preliminary review and evaluation of the report."  Specifically, the Company stated, in relevant part:

Based upon ASP Isotopes's and its legal counsel's preliminary review and evaluation of the report, the Company believes the report includes speculative conjecture and claims that are inaccurate or filled with innuendo in an attempt to mislead investors about ASP Isotopes's technology, leadership and future growth. Investors are encouraged to review the Company's public filings made with the SEC.

ASP Isotopes is in the process of commissioning three isotope enrichment facilities in South Africa and has hosted commercial partners and investors at these facilities. The first facility is scheduled to enrich Carbon-14 for use in healthcare and agrochemicals. The second facility is scheduled to enrich Silicon-28, which the Company believes will enable faster, more efficient semiconductors for use in artificial intelligence and quantum computing. The third facility is scheduled to enrich Ytterbium-176, a critically important raw material used in the production of radio-oncology therapies.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired ASP Isotopes securities between October 30, 2024 and November 26, 2024, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants,

the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

29.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, ASP Isotopes' shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of ASP Isotopes shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by ASP Isotopes or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of ASP Isotopes; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**<u>UNDISCLOSED ADVERSE FACTS</u>**

34.     The market for ASP Isotopes' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, ASP Isotopes' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired ASP Isotopes' securities relying upon the integrity of the market price of the Company's securities and market information relating to ASP Isotopes, and have been damaged thereby.

35.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of ASP Isotopes' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about ASP Isotopes' business, operations, and prospects as alleged herein.

36.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ASP Isotopes' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

37.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.    During the Class Period, Plaintiff and the Class purchased ASP Isotopes' securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

39.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding ASP Isotopes, their control over, and/or receipt and/or modification of ASP Isotopes' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning ASP Isotopes, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

40.    The market for ASP Isotopes' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, ASP Isotopes' securities traded at artificially inflated prices during the Class Period. On November 8, 2024, the Company's share price closed at a Class Period high of $8.77 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of ASP Isotopes' securities and market information relating to ASP Isotopes, and have been damaged thereby.

41.    During the Class Period, the artificial inflation of ASP Isotopes' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about ASP Isotopes' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of ASP Isotopes and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted

in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

42.     At all relevant times, the market for ASP Isotopes' securities was an efficient market for the following reasons, among others:

(a)     ASP Isotopes shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, ASP Isotopes filed periodic public reports with the SEC and/or the NASDAQ;

(c)     ASP Isotopes regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     ASP Isotopes was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

43.     As a result of the foregoing, the market for ASP Isotopes' securities promptly digested current information regarding ASP Isotopes from all publicly available sources and reflected such information in ASP Isotopes' share price. Under these circumstances, all purchasers of ASP Isotopes' securities during the Class Period suffered similar injury through their purchase of ASP Isotopes' securities at artificially inflated prices and a presumption of reliance applies.

44.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of ASP Isotopes who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

46.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47.      During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase ASP Isotopes' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

48.      Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for ASP Isotopes' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.      Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about ASP Isotopes' financial well-being and prospects, as specified herein.

50.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ASP Isotopes' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about ASP Isotopes and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

51.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

52.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing ASP Isotopes' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of ASP Isotopes' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired ASP Isotopes' securities during the Class Period at artificially high prices and were damaged thereby.

54.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that ASP Isotopes was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their ASP Isotopes

securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.     Individual Defendants acted as controlling persons of ASP Isotopes within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, ASP Isotopes and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:   December 4, 2024

/s/   *Gregory Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com
         rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Alexander Corredor*

## SWORN CERTIFICATION OF PLAINTIFF

## ASP ISOTOPES INC. SECURITIES LITIGATION

I, Alexander Corredor, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase the ASP Isotopes Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in ASP Isotopes Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/27/2024
_____
Date

_____
Alexander Corredor

**Alexander Corredor's Transactions in ASP Isotopes Inc. (ASPI)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 11/15/2024 | Bought | 100 | $6.9100 |
| 11/15/2024 | Bought | 50 | $7.0000 |
| 11/18/2024 | Bought | 35 | $7.8000 |
| 11/25/2024 | Bought | 26 | $7.7300 |
| 11/25/2024 | Bought | 15 | $7.3700 |
| 11/26/2024 | Bought | 30 | $6.3600 |