**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LEONE, Individually and on Behalf of All Others Similarly Situated, <br><br>     Plaintiff, <br><br>     v. <br><br> ASP ISOTOPES INC., PAUL E. MANN, and HEATHER KIESSLING, <br><br>     Defendants. | Case No. 1:24-cv-9253-CM |

**DEFENDANTS ASP ISOTOPES INC., PAUL E. MANN,**
**AND HEATHER KIESSLING'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**MORGAN, LEWIS & BOCKIUS LLP**

Michael D. Blanchard
Christopher M. Wasil
One State Street
Hartford, CT 06103
(860) 240-2700
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

Laura Hughes McNally
Karen Pieslak Pohlmann
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000
brian.herman@morganlewis.com

*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF RELEVANT FACTS ............................................................................. 4

     A.   ASPI And Its Technology. .................................................................................. 4

     B.   ASPI's Public Disclosures That It Has Not Used QE On Uranium Or Obtained Licenses To Do So. ............................................................................. 5

     C.   The Challenged Statements. ................................................................................ 6

     D.   The Fuzzy Panda Report. .................................................................................... 7

     E.   The Canaccord Interview. ................................................................................... 8

     F.   The Instant Action. ............................................................................................. 8

ARGUMENT ......................................................................................................................... 8

I.   PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MATERIAL MISREPRESENTATION OR OMISSION. ............................................................... 8

     A.   ASPI Repeatedly Disclosed That Its QE Technology Has Never Been Used On Uranium—The Fact Plaintiffs Claim Was Concealed. .......................... 8

     B.   None Of The Challenged Statements Are Actionable. ....................................... 10

          1.   Plaintiffs Improperly Challenge Statements Of Opinion. ........................ 11

          2.   Plaintiffs Improperly Challenge Puffery. ................................................. 12

          3.   None Of The Remaining Challenged Statements Are False Or Misleading. ................................................................................................ 12

     C.   The Fuzzy Panda Report And Purported Comments By Former Employees Are Irrelevant. .................................................................................................... 17

II.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION. ................................................. 18

     A.   The Fuzzy Panda Report Does Not Support Loss Causation. ........................... 19

     B.   The Canaccord Interview Does Not Support Loss Causation. ........................... 20

III.   PLAINTIFFS FAIL TO PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER. ....................................................................................... 21

     A.   The Company's Stock Offering Does Not Support A Strong Inference Of Scienter. ............................................................................................................ 21

     B.   Plaintiffs Fail To Allege "Strong Circumstantial Evidence" Of Conscious Misbehavior Or Recklessness. ........................................................................ 23

IV.   PLAINTIFFS DIRECT NO ALLEGATIONS AT KIESSLING. ................................ 24

V.   PLAINTIFFS FAIL TO STATE A CLAIM  UNDER SECTION 20(a) OF THE EXCHANGE ACT. ......................................................................................................... 25

# TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION.................................................................................................................... 25

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Altayyar v. Etsy, Inc.*,
    242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd* 731 F. App'x 35 (2d Cir. 2018)..........................11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).....................................................................................................2, 25

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
    543 F. App'x 72 (2d Cir. 2013) ...................................................................................................18

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..........................................................................................................12

*City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*,
    2019 WL 452051 (S.D.N.Y. Feb. 5, 2019)...................................................................................12

*Debora v. WPP Grp., P.L.C.*,
    1994 WL 177291 (S.D.N.Y. May 5, 1994) ....................................................................................9

*Diabat v. Credit Suisse Grp. AG*,
    2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024).............................................................................19

*Dujardin v. Liberty Media Corp.*,
    359 F. Supp. 2d 337 (S.D.N.Y. 2005).......................................................................................9, 10

*Forth Worth Emps.' Ret. Fund v. Biovail Corp.*,
    615 F. Supp. 2d 218 (S.D.N.Y. 2009)............................................................................................3

*Hawes v. Argo Blockchain PLC*,
    2024 WL 4451967 (S.D.N.Y. Oct. 9, 2024).................................................5, 11, 21, 23, 24

*In re Advanced Battery Techs., Inc.*,
    781 F.3d 638 (2d Cir. 2015)..........................................................................................................23

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    315 F. Supp. 3d 737 (S.D.N.Y. 2018)...........................................................................................23

*In re Curaleaf Holdings, Inc. Secs. Litig.*,
    519 F. Supp. 3d 99 (E.D.N.Y. 2021) ..............................................................................................9

*In re Lottery.com, Inc. Sec. Litig.*,
    765 F. Supp. 3d 303 (S.D.N.Y. 2025)...........................................................................................22

iii

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd* 604 F. App'x 62 (2d Cir. 2015)...............18, 19, 20

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
  563 F. Supp. 3d 259 (S.D.N.Y. 2021)..................................................................................20

*In re Plug Power, Inc. Sec. Litig.*,
  2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022)......................................................................22

*In re Sunedison Sec. Litig.*,
  300 F. Supp. 3d 444 (S.D.N.Y. 2018)..................................................................................24

*Jones v. Perez*,
  550 F. App'x 24 (2d Cir. 2013) ..............................................................................................4

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005).................................................................................................20

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020)..................................................................................18

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
  761 F.3d 1109 (10th Cir. 2014) ...........................................................................................22

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).................................................................................................24

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)..............................................................................................................11

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013).........................20

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)...................................................................................................24

*Slayton v. Am. Exp. Co.*,
  604 F.3d 758 (2d Cir. 2010)............................................................................................21, 24

*Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*,
  412 F. Supp. 3d 353 (S.D.N.Y. 2019), *aff'd* 826 F. App'x 111 (2d Cir. 2020).........................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..............................................................................................................21

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)............................................................................................11, 12

**Statutes**

15 U.S.C. § 78u–4(b)(4) ......................................................................................................18

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Defendants ASP Isotopes Inc. ("ASPI" or the "Company"), Paul E. Mann, and Heather Kiessling (together with ASPI, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Class Action Complaint (Dkt. 25) (the "Complaint" or "AC") in its entirety, with prejudice.

**PRELIMINARY STATEMENT**

ASPI is a South Africa-based company engaged in researching and developing technologies and processes for enriching isotopes.  AC ¶ 2.  Plaintiffs are purported ASPI shareholders who claim Defendants violated the securities laws by issuing public statements (the "Challenged Statements")[1] that allegedly misrepresented that the Company's quantum enrichment ("QE") technology has been successfully utilized to enrich uranium, when it has not.  AC ¶ 47 ("Defendants knew, but failed to disclose to investors, that neither ASPI nor its predecessor Klydon had ever experimented with or tested their technology on uranium.").  According to Plaintiffs, the truth was "revealed" to the public through: (a) an article by an anonymous short seller, Fuzzy Panda Research (the "Fuzzy Panda Report" or "FP")[2]; and (b) a subsequent interview with Mann, ASPI's CEO (the "Canaccord Interview").

The Complaint must be dismissed for failure to state a claim for multiple, independently dispositive reasons.  But most glaringly, the Complaint's core allegation of falsity fails because the very information Plaintiffs claim was concealed—that the Company had not tested its QE technology on enriching uranium—was expressly and repeatedly disclosed in its SEC filings. Without a false or misleading statement, the Complaint fails out of the gate.  That same deficiency

---

[1]    For the Court's convenience, submitted herewith is an Appendix identifying the Challenged Statements and stating the bases for dismissal applicable to each one.

[2]    A copy of the Fuzzy Panda Report is attached as Exhibit 5 to the Complaint (Dkt. 25-5).

negates the Complaint's theory of loss causation, pointing to purported "corrective disclosures" that did nothing more than repeat ASPI's prior, repeated disclosures that its QE technology has not been used to enrich uranium.  Plaintiffs also fail to allege facts giving rise to a strong inference of scienter, merely positing that the Company was incentivized to raise capital as motivating the alleged (but nonexistent) misrepresentations, an observation that is applicable to virtually every public company that seeks to raise capital.

**Failure to plead actionable misstatements or omissions.**  Dismissal is warranted for the simple reason that ASPI disclosed the very information Plaintiffs allege was concealed.  One need only read the documents quoted in the Complaint (although Plaintiffs omit the portions that contradict their claim) to appreciate that the allegedly concealed facts were expressly disclosed.  The Fuzzy Panda Report itself—an exhibit to the Complaint—states that QE has not been tested on uranium, and quotes an ASPI SEC filing disclosing that ASPI *has not even received the necessary government approval* to begin doing so.  *See* FP at 18 (quoting Form 10-Q: "If we receive permits and licenses to enrich U-235 (which in itself is highly uncertain), we do not expect U-235 to be commercially available for at least several years, if ever.").  Despite its obvious connection to Plaintiffs' allegations, this portion of the Fuzzy Panda Report is not even mentioned in the Complaint.

If the above-quoted disclosure were not clear enough (as it was for Fuzzy Panda, apparently), ASPI's Form 10-K for FY 2023, filed April 10, 2024 ("FY 2023 10-K")[3]—another

---

[3]    Relevant excerpts from the FY 2023 10-K are attached to the accompanying Declaration of Michael D. Blanchard as Exhibit ("Ex.") 1.  For the Court's convenience, it can access the full document using the following hyperlink: FY 2023 10-K.  In considering the instant motion, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

document Plaintiffs selectively quote in the Complaint—makes the point crystal clear several times over.  It states, for example:

> We also **plan to begin researching the enrichment of uranium,** which is a chemical element we believe may have application in the clean, efficient and carbon-free energy industry, **using quantum enrichment**. Quantum enrichment has never been used to produce isotopes at a commercial scale and the research that has been conducted using this technique has never been published. The IAEA [International Atomic Energy Agency] has never inspected any facility that leverages this technology and **there is no proof that this technology has ever been used to enrich uranium**.

*Id.* at 28 (emphasis added); *see also, e.g.*, *id.* at 8 ("We plan to begin research and development for the enrichment of uranium to demonstrate our capability to produce HALEU [high-assay low-enriched uranium] using Quantum Enrichment technology. . . . We would need to obtain approval from one of these regulatory bodies [*e.g.*, Nuclear Energy Corporation of South Africa ("NECSA")] in order to proceed with our nuclear research.").

Plaintiffs accuse Defendants of concealing information from the public, when in reality it is Plaintiffs concealing from the Court the disclosures that contradict their claims.  As ASPI disclosed the very information Plaintiffs allege was concealed, dismissal is warranted.

**Failure to allege loss causation.**  For similar reasons, the Complaint fails to plead loss causation—*i.e.*, that Plaintiffs' alleged losses "were caused by the disclosure of the truth that Defendants had previously allegedly misrepresented."[4]  ASPI itself publicly stated prior to the Class Period that its QE technology has never been used on uranium.  Thus, any allegation that the Fuzzy Panda Report or the Canaccord Interview "revealed" that fact to the market is simply not well pled.  In addition, Plaintiffs fail to allege that the Canaccord Interview was even disseminated to the public.  Plaintiffs thus insufficiently allege that either communication caused the declines in

---

[4]    *Forth Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 229 (S.D.N.Y. 2009).

ASPI's stock price through the disclosure of new information. The Court should dismiss the Complaint for this additional reason.

**Failure to allege scienter.** Even if the Court finds that any Challenged Statements are actionable, *and* that Plaintiffs have adequately pled loss causation, dismissal of the Complaint is still warranted because Plaintiffs do not plead particularized facts supporting a strong inference of scienter. Tellingly, the Complaint is unclear even as to Plaintiffs' *theory* of scienter. To the extent Plaintiffs allege that Defendants had a motive to artificially inflate ASPI's stock price in aid of raising capital, courts in this Circuit routinely find that such allegations fail to establish scienter. Plaintiffs also fall well short of pleading conscious misbehavior or recklessness—*i.e.*, that Defendants' alleged conduct amounted to an "extreme departure from the standards of ordinary care[.]"[5] Whether viewed independently or holistically, these allegations fail to establish scienter, providing another independent basis for dismissal.

**No allegations asserted against Defendant Kiessling.** The only place Kiessling's name appears in the Complaint is the caption. She should be dismissed from the case, with prejudice.

**No control person liability.** Finally, having failed to allege any primary violation of the securities laws, Plaintiffs' control person claim fails.

For these reasons, as more fully discussed below, Defendants respectfully request that the Complaint be dismissed in its entirety, with prejudice.

**STATEMENT OF RELEVANT FACTS**

A.      **ASPI And Its Technology.**

ASPI is a South Africa-based company that researches and develops technologies and processes for enriching isotopes—the process of separating from each other slightly different types

---

[5]     *Hawes v. Argo Blockchain PLC*, 2024 WL 4451967, at *18 (S.D.N.Y. Oct. 9, 2024) (quoting *Jones v. Perez*, 550 F. App'x 24, 27 (2d Cir. 2013)).

4

of atoms of the same chemical element. AC ¶ 2. As ASPI's FY 2023 10-K explains, the Company has several isotope-enrichment technologies in development. The Company's Aerodynamic Separation Process ("ASP") technology, originally developed by an entity named Klydon, is designed to enrich isotopes for the medical and semiconductor industries. Ex. 1 at 4. ASPI focuses its development of this technology on the enrichment of carbon, molybdenum, and silicon. *Id.*

Separately, ASPI is researching the enrichment of uranium using QE technology. *Id.* QE is an advanced isotope enrichment technique that uses lasers. *Id.* ASPI believes that QE may be capable of producing high-assay, low-enriched uranium ("HALEU"), which can be commercialized as a nuclear fuel to power the new generation of small modular nuclear reactors ("SMRs"). *Id.*

### B.    ASPI's Public Disclosures That It Has Not Used QE On Uranium Or Obtained Licenses To Do So.

ASPI's SEC filings describe its technologies in detail. The Company's FY 2023 10-K features numerous disclosures making clear that ASPI: (a) has never tested or used QE to enrich uranium; and (b) has not even yet obtained the necessary regulatory licenses or approvals to enrich uranium. Indeed, the Company makes plain to investors that its very mission around QE technology and enriching uranium is aspirational—*i.e.*, to "***Demonstrate the capability to produce high-assay low-enriched uranium (HALEU) using Quantum Enrichment[.]***" Ex. 1 at 8 (bold and italics in original). ASPI then explains that it has not yet obtained regulatory approval necessary to begin pursuing its objective of demonstrating that QE technology may be successfully utilized to enrich uranium:

> We *plan to begin research and development for the enrichment of uranium* to demonstrate our capability to produce HALEU using Quantum Enrichment technology. . . . We are currently in discussions with both the UK Atomic Energy Authority, UK Office of Nuclear Regulation (ONR), Nuclear Energy Corporation of South Africa (NECSA) as well as the South African Department of Mineral Resources and Energy (DMRE) pursuing an approval to conduct nuclear research

in either of these countries. *We would need to obtain approval from one of these regulatory bodies in order to proceed with our nuclear research.*

*Id.* (emphasis added).

In the same spirit, ASPI disclosed: "We are awaiting the approvals necessary to conduct early research and development efforts for isotopes such as Uranium-235 utilizing the Quantum Enrichment process." *Id.* at 24. And similarly:

> [W]e have not yet sought any regulatory approval that may be necessary for application of Mo-100 that we may produce using the ASP process in the medical industry or the production of U-235 that we may produce using quantum enrichment.

*Id.* at 25.

> We also *plan to begin researching the enrichment of uranium*, which is a chemical element we believe may have application in the clean, efficient and carbon-free energy industry, *using quantum enrichment*. Quantum enrichment has never been used to produce isotopes at a commercial scale and the research that has been conducted using this technique has never been published. The IAEA has never inspected any facility that leverages this technology and *there is no proof that this technology has ever been used to enrich uranium*. There are significant regulatory hurdles associated with *enabling our research and development efforts* to enter the nuclear energy market. Multiple regulatory agencies need to provide approvals to allow us *to proceed with the research and development necessary to show proof of concept* to the market.

*Id.* at 28 (emphasis added).[6]

## C.    **The Challenged Statements.**

Plaintiffs challenge sixteen statements allegedly made by Defendants between September 26, 2024 and November 22, 2024 as false or misleading for allegedly failing to disclose that ASPI

---

[6]    The Complaint and the Challenged Statements relate to the Company's QE technology. To the extent Plaintiffs contend, however, that their claims relate also to the Company's ASP technology (*see supra* at 4–5), the Company has also publicly disclosed that it has never used or tested ASP technology on uranium, either. *See* Ex. 1 at 9 (discussing ASP technology: "While the technology has not yet been used to enrich either Molybdenum or Uranium or heavier isotopes, we believe the success of the enrichment process for oxygen-18 and silicon-28 has demonstrated the efficacy and commercial scalability of the ASP technology.").

had not used or tested QE on uranium. AC ¶¶ 58–90. The Challenged Statements were allegedly made in investor conference calls and accompanying slide decks, press releases, and a magazine interview. *Id.* Defendants refer the Court to the Appendix filed herewith for further details.

### D.    **The Fuzzy Panda Report.**

On November 26, 2024, Fuzzy Panda Research—an anonymous short seller who might profit by ASPI's stock price decreasing—published an article seeking to drive down ASPI's stock price, making a variety of accusations. AC Ex. 5; ¶¶ 5, 92–100. Among the most prominent of those accusations are: (a) ASPI is allegedly associated with certain individuals who previously engaged in purported fraud (FP at 3–7); (b) ASPI's offices allegedly are not located at their registered address (*id.* at 9–11); (c) ASPI allegedly used paid stock promoters (*id.* at 11–13); and (d) ASPI's QE technology is derived from prior AVLIS (atomic vapor laser isotope separation) technology (*id.* at 14–19), about which Fuzzy Panda states: "We are not saying the technology is fake ... it works, but evidently only at a small lab scale." *Id.* at 15.

Notably, the Fuzzy Panda Report highlights the publicly disclosed fact that ASPI's QE technology has never been used or tested on uranium, and that the Company does not possess the regulatory approvals to do so. FP at 18. Specifically, it states: "A former Klydon executive pointed out that if the [QE] technology was as good as ASPI claims, someone surely would have by now found a way to get the necessary licenses and test it on uranium to prove its worthiness." *Id.* It quotes ASPI's Form 10-Q for Q3 2024 ("Q3 2024 10-Q"), filed with the SEC on November 19, 2024: "If we receive permits and licenses to enrich U-235 (which in itself is highly uncertain), we do not expect U-235 to be commercially available for at least several years, if ever." *Id.*[7]

---

[7]    ASPI has included this disclosure in its SEC filings since at least 2023. *See, e.g.*, ASPI Form 10-Q for Q1 2023, filed with the SEC on May 19, 2023, at 29 (relevant excerpt attached to the Declaration of Michael D. Blanchard as Ex. 2). The full document is accessible using the following hyperlink: Q1 2023 10-Q.

### E.    The Canaccord Interview.

The next day, on November 27, 2024, Mann allegedly participated in an interview with Canaccord Genuity, an investment banking and financial services firm.  AC ¶ 103.  During the interview, Mann allegedly stated that ASPI has not yet enriched uranium using its QE technology, and that it first needed to obtain a government license to do so.  *Id.* ¶¶ 104–105.  The Complaint contains no allegations regarding the audience for the Canaccord Interview, whether it was publicly disseminated, and, if so, when and to what extent.  *See id.* ¶¶ 103–111.

### F.    The Instant Action.

Just one week after the Fuzzy Panda Report and Canaccord Interview, the instant action was filed.  Dkt. 1.  The initial complaint challenged certain of Defendants' public statements because they allegedly failed to disclose the Company's "overstate[ment]" of: (a) the "potential effectiveness of its enrichment technology"; (b) the "development potential of its [HALEU] facility"; and (c) "the Company's nuclear fuels operating segment results[.]" *Id.* ¶ 6.  The operative Complaint was filed May 27, 2025.  Dkt. 25.  In it, Plaintiffs narrow their allegations of falsity to claim every Challenged Statement is false or misleading "because Defendants had never attempted to use ASPI's technology on uranium."  *Id.* ¶ 73; *see also* ¶¶ 60, 62, 64, 66, 68, 80, 83, 87, 90.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MATERIAL MISREPRESENTATION OR OMISSION.

#### A.    ASPI Repeatedly Disclosed That Its QE Technology Has Never Been Used On Uranium—The Fact Plaintiffs Claim Was Concealed.

Where a securities fraud claim is premised upon the alleged concealment of a fact, dismissal is warranted when documents incorporated into the complaint show the exact opposite— that the defendant openly disclosed the fact.  "The naked assertion of concealment of material facts which is contradicted by published documents which expressly set forth the very facts allegedly

concealed is insufficient to constitute actionable fraud." *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 348 (S.D.N.Y. 2005); *see also In re Curaleaf Holdings, Inc. Secs. Litig.*, 519 F. Supp. 3d 99, 107 (E.D.N.Y. 2021) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.") (citing, *inter alia*, *Debora v. WPP Grp., P.L.C.*, 1994 WL 177291, at *5 (S.D.N.Y. May 5, 1994) ("A complaint fails to state a § 10(b) claim when the alleged omission has actually been disclosed.")).

That is the scenario presented here. Plaintiffs allege that each Challenged Statement was false or misleading for the same purported reason: Defendants allegedly omitted that ASPI had not used or tested its QE technology on uranium. AC ¶¶ 60, 62, 64, 66, 68, 73, 80, 83, 87, 90. As set forth above (*supra* at 5–6), ASPI repeatedly stated that it had never used QE technology on uranium, and that it had not obtained regulatory approval to do so. The Court need not look beyond the Rule 12(b)(6) record, incorporated by reference into the Complaint and thus properly considered here, to draw this conclusion.

The Fuzzy Panda Report is attached to, and quoted extensively in, the Complaint. AC Ex. 5; ¶¶ 92–100. Given its author—a short seller who is financially incentivized to drive down ASPI's stock price—the Fuzzy Panda Report unsurprisingly casts wide aspersions upon ASPI, including attacking individuals supposedly associated with the Company and the technology from which QE is purportedly derived. Many of these accusations are parroted in the Complaint. *See id.* Tellingly, Plaintiffs do not allege that the Fuzzy Panda Report "revealed" to the public that QE had never been used or tested on uranium or that it lacked the regulatory licenses to do so. Nor could they so allege. Not even Fuzzy Panda can lay claim to exposing this fact. Rather, Fuzzy Panda itself cites, among other things, ASPI's Q3 2024 10-Q (FP at 18) for the proposition that "[i]f [ASPI]

9

receive[s] permits and licenses to enrich U-235 (which in itself is highly uncertain), [ASPI does] not expect U-235 to be commercially available for at least several years, if ever."

The Complaint itself also quotes and relies upon ASPI's FY 2023 10-K.  AC ¶¶ 33–35. Not surprisingly, however, Plaintiffs decline to quote the robust disclosures in that document making clear that QE has never been used or tested on uranium, and that ASPI still did not have the necessary licenses to do so (and in fact may never receive those licenses).  *See, e.g.*, Ex. 1 at 8 (disclosing ASPI "plan[s] to begin research and development" on use of QE on HALEU, but currently lacks regulatory approval to do so); 24 (disclosing ASPI is "awaiting the approvals necessary to conduct early research and development efforts for isotopes such as Uranium-235 utilizing the [QE] process"); 25 (disclosing ASPI has "not yet sought any regulatory approval that may be necessary for . . . the production of U-235 that we may produce using [QE]"); 28 (disclosing ASPI "plan[s] to begin researching the enrichment of uranium" using QE, and that "there is no proof that this technology has ever been used to enrich uranium"); *see also id.* at 30, 33, 59 (making similar disclosures).

These disclosures are case dispositive.  As pled, the Complaint rises and falls with the allegation that the Challenged Statements are false or misleading because Defendants concealed that ASPI has never used or tested its QE technology on uranium.  Because the documents incorporated into the Complaint establish the opposite of the Complaint's theory of falsity, dismissal is warranted.  *Dujardin*, 359 F. Supp. 2d at 351–52.

**B.     None Of The Challenged Statements Are Actionable.**

Given ASPI's explicit and pervasive disclosures that its QE technology has never been used or tested on uranium, Plaintiffs' core claim that Defendants concealed this fact fails as a matter of law.  Even if this were not the case, none of the Challenged Statements supports a claim under Section 10(b), 15 U.S.C. § 78j(b), and the PSLRA.  First, many of the Challenged Statements

constitute non-actionable opinions or statements of optimism (*i.e.*, inactionable puffery).  Second, the remaining statements that do not constitute opinions or puffery are neither false nor misleading.

### 1.    Plaintiffs Improperly Challenge Statements Of Opinion.

"As a general rule, statements of opinion, rather than actual fact, are not actionable" under Section 10(b).  *Hawes*, 2024 WL 4451967, at *4.  "This is because opinions are 'not quantifiable' and 'are subject to interpretation.'"  *Id.* (quoting *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 174 (E.D.N.Y. 2017), *aff'd* 731 F. App'x 35 (2d Cir. 2018)).  Phrases like "we believe" indicate that the statement being made is an opinion.  *See Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019) (statement that "[w]e believe we are well positioned to maintain this growth" is opinion), *aff'd* 826 F. App'x 111 (2d Cir. 2020).

Statements 1, 4, 7, 8, 11, 12, and 13 express Defendants' "beliefs" regarding QE, rendering them non-actionable opinions.  *See, e.g.*, AC ¶¶ 59 (Statement 1: ASPI "believe[s]" that QE "provides an ideal solution" for the growing need for HALEU); 65 (Statement 4: ASPI "believe[s]" that QE can process nuclear waste into HALEU); 70 (Statement 7: based upon ASPI's successful enrichment of Ytterbium-176 using QE, ASPI "believes . . . it is likely that other important isotopes can be produced using [QE]").  These are quintessential statements of opinion that cannot support a claim under Section 10(b).  *See Skechers*, 412 F. Supp. 3d at 363.

Although in some circumstances opinions may be actionable under the PSLRA, those circumstances are not pled here.  Under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), "liability for making a false statement of opinion may lie if either 'the speaker did not hold the belief she professed' or 'the supporting fact she supplied were untrue.'"  *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare*, 575 U.S. at 185–86).  Neither theory is adequately pled here.  As set forth below (§ III, *infra*), Plaintiffs plead no facts from which it can be inferred that Defendants did not hold the "beliefs"

11

expressed in the Challenged Statements.  And, as also set forth below (§ I.B.3, *infra*), Plaintiffs do not adequately allege that any "supporting fact" in the Challenged Statements is untrue. Defendants' statements of opinion therefore remain non-actionable.  *Tongue*, 816 F.3d at 210.

> 2.  Plaintiffs Improperly Challenge Puffery.

Similarly, several of the Challenged Statements contain classic examples of non-actionable puffery—*i.e.*, generalized corporate optimism, or statements not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome[.]" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183, 185 (2d Cir. 2014).  "[S]tatements expressing a general view that 'things are going well,' that the company is 'well positioned,' or that a year was 'successful' are generally not actionable" puffery.  *City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*, 2019 WL 452051, at *4 (S.D.N.Y. Feb. 5, 2019).  Certain portions of the Challenged Statements fall squarely within this category. *See* AC ¶¶ 59 (Statement 1: "[W]e think our [QE] technology is perfect for enriching uranium."); 67 (Statement 6: ASPI's various technologies will "allow[] it to meet the growing demand" in certain industries); 70 (Statement 7: ASPI believes QE is "more efficient and scalable than other enrichment technologies"); 71 (Statement 8: ASPI believes QE "will be able to produce HALEU . . . at an attractive price"); 78 (Statement 12: ASPI believes it "can offer scalable and capital efficient technology").  For this reason, the foregoing Challenged Statements are not actionable.

> 3.  None Of The Remaining Challenged Statements Are False Or Misleading.

>> a.  *Statement 2*

Plaintiffs allege that ASPI's September 26, 2024 investor presentation (the "Presentation")[8] "presents . . . data purporting to compare *uranium* enrichment under various

---

[8]    A copy of the Presentation is attached to the Complaint as Exhibit 4.  All arguments for dismissal of claims related to the Presentation apply with equal force to the "revised version" of

methods," including QE. AC ¶ 61 (discussing Presentation at 28) (emphasis added). The Complaint further alleges that this was false or misleading because ASPI had never attempted to use QE on uranium. *Id.* ¶ 62. Plaintiffs are correct that the slide at issue compares and contrasts "enrichment methods," as the slide's title reflects. *Id.* ¶ 61. The word "uranium," however, does not appear on the slide. Nor does the Presentation suggest that ASPI derived any of the purported data regarding its QE technology from tests on uranium, as opposed to other materials.

Mann's comments accompanying this slide and the next (challenged at AC ¶ 61, below chart) reinforce this point. As Plaintiffs themselves allege, Mann provided a single "example of quantum enrichment in a real world application"—lithium. *Id.* Because ASPI has not tested QE on uranium (a publicly disclosed fact), Mann instead highlighted QE's enrichment capabilities using data for a different material. Indeed, the quoted passage never once mentions uranium. *Id.* Notably, the Complaint omits slide 29's graphs and bullet points emphasizing that ASPI's "real world application" of QE was on lithium—not uranium. *Compare* Ex. 4 at 29, *with* AC ¶¶ 61–64. Plaintiffs' distortion of the Presentation does not render this statement false or misleading.

> b.    *Statement 3*

Plaintiffs challenge as false or misleading the Presentation's statement: "Our team have used lasers to enrich many different metals[,]" including "[u]ranium." AC ¶ 63 (discussing Presentation at 29). Plaintiffs allege this statement is actionable because "neither ASPI nor its predecessor Klydon had any real world experience enriching uranium with lasers or otherwise." *Id.* ¶ 64. The allegation is not well pled. Most obviously, the quoted statement simply does not claim that ASPI or Klydon (as opposed to the "team" referenced in the statement) has ever enriched uranium, with lasers or otherwise. Plaintiff's criticism appears to be more in the nature of an

---

the Presentation allegedly published November 22, 2024. AC ¶ 89. As alleged, the revised version is identical to the original but for the deletion of one slide that is immaterial to this motion. *Id.*

alleged omission—conceding the Challenged Statement is literally true but misleading by failing to note that the team's relevant experience is dated. Thus, Plaintiffs assert that the "truth" was revealed by Mann later stating that "*[t]he team have done it* [*i.e.*, they have enriched uranium using lasers] in the day, *20-30 years ago*." *Id.* ¶ 64 (emphasis added). That the "team" has enriched uranium with lasers—according to Plaintiffs, the "truth"—is of course the point of the Challenged Statement itself.[9]   Plaintiffs are thus left to stand on the Presentation's omission that such experience was "20-30 years ago." *Id.* ¶ 64. But Plaintiffs do not explain why the time period of the team's experience using lasers to enrich uranium—which Plaintiffs allege to be true—renders the Challenged Statement misleading, let alone materially so. At bottom, Challenged Statement 3 is but a distraction from the core theory of the Complaint as it does not claim that ASPI, Klydon, or anyone else has specifically used *QE technology* to enrich uranium.

For similar reasons, Statement 6—in addition to containing non-actionable puffery (*see supra* at 12)—is insufficiently alleged to be false or misleading. AC ¶ 67 (challenging statement that ASPI's various technologies "leverage 20 years of R&D history" enriching isotopes). As Plaintiffs themselves allege as true that ASPI team members used lasers to enrich uranium "20-30 years ago" (*id.* ¶ 64), their challenge to this statement is facially invalid.

c.      <em>Statement 5</em>

Plaintiffs challenge the Presentation's inclusion of a table allegedly "showing that ASPI's work on uranium-235 using both quantum enrichment and ASP technology is currently in the 'R&D Stage[.]'" *Id.* ¶ 65. Plaintiffs allege the table is false or misleading because "ASPI's

---

[9]     The team's experience is also highlighted elsewhere. *See* Presentation at 39 (ASPI Leadership Team member Hendrik Strydom, Phd has "[e]xtensive research on *the laser separation* of heavy isotopes") (emphasis added); *id.* at 41 (ASPI Scientific Advisor Prof. Einar Ronander, Phd "[p]ioneered the Molecular *Laser Isotope Separation* (MLIS) and the Atomic Vapour *Laser Isotope Separation* (AVLIS) for heavy volatile isotopes[.]") (emphasis added).

14

quantum enrichment and ASP technologies as applied to uranium-235 were entirely theoretical and lacked any real-world research and development." *Id.* ¶ 66. The Complaint alleges no facts to support the conclusion that "R&D Stage" is synonymous with, or would necessarily imply to a reasonable investor, that ASPI has used or tested its QE technology on uranium. It does not.

    d.  *Statements 9–12*

  Plaintiffs challenge as false or misleading certain statements made in a press release announcing ASPI's entry into a term sheet with TerraPower, LLC ("TerraPower") for the construction of a HALEU production facility. AC ¶¶ 75–78. Within this Challenged Statement are facts that Plaintiffs do not challenge as false, specifically: (a) ASPI entered into a term sheet with TerraPower related to the construction of a HALEU production facility (*id.* ¶ 75); (b) ASPI and TerraPower anticipated entering into a long-term HALEU supply agreement (*id.* ¶ 76); and (c) scientists at ASPI have over the past several decades developed "advanced" isotope enrichment technologies (*id.* ¶ 78). Rather, Plaintiffs challenge the press release only to the extent that "there was no reasonable basis for [Defendants'] purported *belief* that ASPI could construct a commercially viable HALEU facility, and would produce commercial quantities of HALEU" because ASPI had never used its technology on uranium. *Id.* ¶ 80 (emphasis added). As explained above (*supra* at 11–12), such statements are non-actionable opinions, and are otherwise not false or misleading given ASPI's disclosures that it has not used QE technology to enrich uranium.

    e.  *Statement 13*

  Plaintiffs challenge as false or misleading Mann's "belief" that ASPI will show regulators that QE will not risk "hitting criticality" when enriching uranium. AC ¶ 82.[10] As support for this

---

[10]  Plaintiffs allege that "[c]riticality refers to the point at which a nuclear chain reaction becomes self-sustaining, which can give rise to a substantial and dangerous release of energy and/or radiation." *Id.* n.10.

belief, Mann explains aspects of the QE process, which—it is undisputed—has been used to enrich other materials. *See id.* (Mann stated: "One of the advantages of our QE process is that we do it in batches, so . . . you only have a small amount of product being enriched at a time."). Plaintiffs do not allege that Mann's explanation of the QE process is inaccurate, or that the advantages of the process have not been demonstrated by enriching materials other than uranium. *See* AC ¶ 70 (declining to challenge ASPI's statement it had enriched Ytterbium-176 using QE). At bottom, Mann simply expressed what he "believed" QE will show regulators with respect to enriching uranium, and he provided the basis for that belief—*i.e.*, certain features of the QE process. *Id.* ¶ 82. Nothing about this statement is adequately pled as false or misleading.

f.   *Statements 14 & 15*

The Complaint challenges as false or misleading two statements allegedly made by ASPI's Viktor Petkov[11] in an interview with POWER magazine. AC ¶¶ 85–87. Plaintiffs first challenge Petkov's response to a question about what "current technology" ASPI was "working on." *Id.* ¶ 85. Petkov responded that the Company is "focusing on producing critical nuclear fuels" for SMRs, including HALEU, lithium, and other materials. *Id.* ¶ 85. Plaintiffs allege this was false or misleading because "ASPI was not currently working on uranium with its technology and never had[.]" *Id.* ¶ 87. The allegation of falsity is a non sequitur. That ASPI was not yet physically using or testing its technology on uranium does not render false or misleading Petkov's statement that ASPI was "focus[ed] on producing critical nuclear fuels" (*id.* ¶ 85), its very business model.

Plaintiffs also challenge Petkov's statement that "[ASPI's] technology is fully prepared for deployment, pending the necessary approvals to operate an isotope enrichment facility." *Id.* ¶ 86. According to Plaintiffs, because the Company "was not currently working on uranium . . . its

---

[11]   Petkov is allegedly "ASPI's Vice President of Business Development & Funding from March 2024 to present[.]" AC ¶ 84 n.11.

technology was not prepared for commercial deployment." *Id.* ¶ 87. But Petkov stated that ASPI's "*technology*" was prepared for deployment—not the application of that technology to enrich uranium. And as Petkov previously explained, the "technology" would be used on lithium and other materials. *Id.* ¶ 85. Regarding uranium, Petkov expressly differentiated between the timeline for producing lithium versus that of producing uranium—*i.e.*, whereas ASPI was "targeting 2025/2026" for lithium, it was merely "*in discussions* with multiple governments to *secure authorization for the construction* of a uranium enrichment plant[.]" *Id.* ¶ 86 (emphasis added). No reasonable investor could mistake Petkov's statement that ASPI's "technology" was ready to be deployed as meaning that ASPI had used it to enrich uranium when the Company was only "in discussions" to "secure authorization" to enrich uranium—especially when contrasted with a 2025/2026 timeframe for deploying the technology as to lithium.

*        *        *

In sum, even ignoring the Company's disclosures that its QE technology has never been used or tested on uranium, Plaintiffs fail to allege that any of the Challenged Statements are in any sense false or misleading. For this reason, they do not support a Section 10(b) claim, warranting dismissal.

### C.    The Fuzzy Panda Report And Purported Comments By Former Employees Are Irrelevant.

Nothing in the Fuzzy Panda Report or purported comments by alleged former employees (AC ¶¶ 48, 49) (the "Former Employees") supports Plaintiffs' allegation that the Challenged Statements were false or misleading. As explained above (*supra* at 7), the Fuzzy Panda Report is relevant to the Complaint in only one respect—it accurately quotes ASPI's public disclosure that the Company has not obtained (and may never obtain) the necessary license to enrich uranium. FP at 18. It does not identify any statements by Defendants to the contrary, nor include any accusation

17

that Defendants sought to mislead investors to believe ASPI had, in fact, tested its QE technology on uranium.  So too as to the Former Employees.  Even if the Court accepts the entirety of their comments as true, they simply confirm: (a) Klydon was not working on uranium as of December 2017 (AC ¶ 48); and (b) ASPI was working only on "the theory" for testing QE technology on uranium as of January 2024 (*id.* ¶ 49).  This is entirely consistent with ASPI's own public disclosures (*see supra* at 5–6), and in no way supports the Complaint's theory of falsity.

Moreover, even if the Former Employees' comments contradicted ASPI's public disclosures in any relevant manner, neither Former Employee worked at the Company when the Challenged Statements were made.  AC ¶ 48 ("FKE1" allegedly worked at Klydon from March 2017 to December 2017); ¶ 49 ("FAE1" allegedly worked at ASPI from July 2007 to January 2024).  As such, neither Former Employee can "establish that the challenged statements were knowingly false when made."  *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 (S.D.N.Y. 2020).  For this additional reason, they do not support Plaintiffs' claims.

## II.    **PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.**

Even if the Complaint adequately alleged an actionable misstatement or omission (it does not), it still should be dismissed for failure to plead a legally cognizable theory of loss causation—that the purported misstatements and omissions, and not some other factor, "caused the loss for which the plaintiff seeks to recover."  15 U.S.C. § 78u–4(b)(4).  A plaintiff can plead loss causation "by alleging that the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 575 (S.D.N.Y. 2014), *aff'd* 604 F. App'x 62 (2d Cir. 2015).  Critically here, a corrective disclosure must "reveal some *then-undisclosed fact* with regard to the specific misrepresentations alleged in the complaint[.]"  *Id.* (emphasis added) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F.

18

App'x 72, 75 (2d Cir. 2013)). Contrary to Plaintiffs' allegations, neither the Fuzzy Panda Report nor the Canaccord Interview constitutes a corrective disclosure. The Complaint thus should also be dismissed for the independently dispositive reason that it fails to plead loss causation.

### A.    The Fuzzy Panda Report Does Not Support Loss Causation.

For several reasons, the Fuzzy Panda Report cannot serve as a corrective disclosure. First, while the Complaint rests upon the allegation that Defendants concealed that QE has never been used or tested on uranium, Plaintiffs do not allege that the Fuzzy Panda Report "revealed" this fact to the market. "An alleged corrective disclosure that does not reveal the falsity of Defendants' challenged public statements cannot establish loss causation, a pleading failure that is fatal under Second Circuit precedent." *Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at *147 (S.D.N.Y. Sept. 19, 2024) (internal quotation marks omitted). The closest Plaintiffs come is to repeat comments of "TerraPower Former Executives" quoted in the Fuzzy Panda Report. Those individuals allegedly criticized ASPI because, for example, the Company "still ha[s] to build the manufacturing facility," "still ha[s] to qualify the process," and "still ha[s] to develop the HALEU[.]" AC ¶ 93; *see also id.* ¶ 94 (claiming ASPI's projected timeline is "too optimistic" and "not real"). Plaintiffs, however, conspicuously fail to allege that these vague comments "revealed" that QE has never been used on uranium. As such, the Fuzzy Panda Report does not constitute a corrective disclosure for purposes of loss causation. *Lululemon*, 14 F. Supp. 3d at 575.

Second, as explained above (*supra* at 7), even where the Fuzzy Panda Report expressly states that QE has not been tested on uranium, and that ASPI has not obtained regulatory licenses to do so—a passage conspicuously omitted from the Complaint—the author explains that these facts were merely "pointed out" by a purported former Klydon executive and, more importantly, disclosed in ASPI's SEC filings. FP at 18. Because the Fuzzy Panda Report itself establishes that

19

it did not "reveal" to the market the purportedly concealed fact, it cannot serve as a corrective disclosure for purposes of loss causation as a matter of law. *Lululemon*, 14 F. Supp. 3d at 575.

**B.    The Canaccord Interview Does Not Support Loss Causation.**

For several reasons, the Canaccord Interview does not constitute a corrective disclosure. First, not only was the allegedly "concealed" fact previously disclosed in ASPI's public filings, it was also previously disclosed in the Fuzzy Panda Report. *See* FP at 18 ("[I]f the technology was as good as ASPI claims, someone surely would have by now found a way to get the necessary licenses and test it on uranium to prove its worthiness."). To be sure, the Complaint block quotes long passages from the Canaccord Interview, but the only relevant parts are those in which Mann truthfully states—consistent with ASPI's prior public disclosures and the Fuzzy Panda Report— that ASPI has never used or tested QE on uranium. AC ¶¶ 104, 105. Plaintiffs' allegation that Mann's statements were the "revelation" of that fact to the market are not well pled. For this reason alone, the Canaccord Interview does not support a cognizable theory of loss causation. *Lululemon*, 14 F. Supp. 3d at 575.

Second, Plaintiffs do not allege that the Canaccord Interview was publicly disseminated— an omission fatal to any theory of loss causation based on the Canaccord Interview, even assuming arguendo (and counterfactually) that the interview revealed new information exposing prior statements as false. "To plead loss causation through a corrective disclosure, plaintiffs must establish that the latter disclosure 'reveal[ed] *to the market* the falsity' of the prior disclosure and that the market reacted negatively to the revelation that that prior disclosure had been false.'" *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 267 (S.D.N.Y. 2021) (emphasis added) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 & n.4 (2d Cir. 2005)); *see also Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 686 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013) (granting dismissal: conference call not a corrective

20

disclosure where "there [was] no allegation that it ever became public"). Absent factual allegations that the Canaccord Interview was a statement "to the market," it cannot serve as a corrective disclosure. For this additional reason, the Canaccord Interview does not support loss causation.

## III. PLAINTIFFS FAIL TO PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.

Even if, arguendo, the Complaint somehow alleged actionable misstatements or omissions *and* pled loss causation, it should still be dismissed because Plaintiffs fail to "plead with particularity facts that give rise to a strong inference 'that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud.'" *Hawes*, 2024 WL 4451967, at *16 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 323 (2007)). "Under the heightened pleading standard for scienter, a 'complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010)). "A plaintiff can satisfy this pleading requirement by alleging facts showing either: (1) the defendant's motive and opportunity to commit fraud; or (2) strong circumstantial evidence of the defendant's conscious misbehavior or recklessness." *Id.* The Complaint fails under either theory.

### A. The Company's Stock Offering Does Not Support A Strong Inference Of Scienter.

While unclear whether Plaintiffs seek to establish scienter by alleging that Defendants had a motive and opportunity to commit fraud (itself a deficiency warranting dismissal) the Complaint can charitably be read to allege that Defendants were motivated to commit fraud by a desire to raise capital for the Company through a public stock offering. In a standalone section of the Complaint (AC ¶¶ 54–56), Plaintiffs allege that ASPI "[c]apitaliz[ed] on [an] artificially inflated stock price surge" by raising $18.6 million in capital through a public stock offering. *Id.* ¶ 56.

21

Perhaps recognizing that courts overwhelmingly refuse to find scienter based on this type of allegation (*see infra*), Plaintiffs' "Additional Scienter Allegations" section (*id.* ¶¶ 113–15) omits any mention of ASPI's stock offering.  Regardless, to the extent Plaintiffs intend to proceed on this theory, it fails as a matter of law.

It is well established that a company's alleged desire to raise funds—including via a public stock offering—is insufficient to establish scienter.  *See In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 347 (S.D.N.Y. 2025) ("[C]ourts in this Circuit routinely decline to find scienter based on a desire to benefit from a higher share price in the context of public offerings.") (internal quotation marks omitted); *In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892, at *12 (S.D.N.Y. Sept. 29, 2022) ("Defendants' alleged desire to raise capital from conducting offerings and entering into favorable transactions . . . is not evidence of scienter."); *see also MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1122 (10th Cir. 2014) (stock offering to raise "badly needed" capital insufficient to plead scienter: "[T]he complaint doesn't allege that the defendants themselves stood to gain personally from the offering.  So to hold plaintiffs establish scienter here we'd have to suggest scienter is present in nearly any case involving a stock offering[.]").

So too here.  The Complaint conspicuously fails to allege that Mann stood to gain personally from the alleged offering, or that he personally benefitted from the supposedly inflated stock price.  *MHC Mut. Conversion Fund*, 761 F.3d at 1122.  As a matter of law, ASPI's "need[] to obtain . . . large amounts of funding from investors" to cover its R&D expenses (AC ¶ 54), constitutes "the ordinary motives possessed by virtually all corporate insiders" and does not support scienter.  *Plug Power*, 2022 WL 4631892, at *12.

**B.      Plaintiffs Fail To Allege "Strong Circumstantial Evidence" Of Conscious Misbehavior Or Recklessness.**

Having failed to allege a legally cognizable motive to commit fraud, Plaintiffs' burden to establish scienter via conscious misbehavior or recklessness becomes far heavier.  "Without a motive for a defendant to commit fraud, the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater."  *Hawes*, 2024 WL 4451967, at *16 (alteration in original) (internal quotation marks omitted).  Mere allegations of negligence do not suffice.  Rather, Plaintiffs must "allege[] the facts that, if proved, would demonstrate 'highly unreasonable' conduct 'representing an extreme departure from the standards of ordinary care.'" *Id.*, at *18 (quoting *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015)).

Plaintiffs fall well short of this burden here.  First, Plaintiffs plead no facts whatsoever from which it can be inferred that Defendants engaged in "conscious misbehavior."  Tellingly, the Complaint's "Additional Scienter Allegations" section consists of 3 conclusory paragraphs asserting what Defendants allegedly "knew."  AC ¶¶ 113–15.  It does not cite, for example, "any internal documents or confidential witness statements tending to suggest that defendants knowingly deceived shareholders."  *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018).  (Notably, the purported comments by the Former Employees also lack any suggestion of intentional wrongdoing by any Defendant.  AC ¶¶ 48, 49.)  "Indeed, the [Complaint] lacks any concrete allegations whatsoever regarding defendants' knowledge, apart from the information defendants themselves disclosed."  *Aratana*, 315 F. Supp. 3d at 765.  "Absent concrete allegations as to defendants' knowledge, the [Complaint] cannot generate a strong inference of scienter."  *Id.*

Second, the Challenged Statements themselves do not suggest "conscious misbehavior" or "recklessness."  The Second Circuit has long held that, in this context, "recklessness" is akin to

23

"actual intent." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) ("By reckless disregard for the truth, we mean 'conscious recklessness—*i.e.*, a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*[.]'") (emphasis in original) (quoting *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000)). As set forth above (*supra* at § I.B), the Challenged Statements are non-actionable opinions or puffery, or they are insufficiently alleged to even be false or misleading. At most, Plaintiffs' cherry-picked portions of the Challenged Statements are alleged in substance to be—though Defendants deny that they are—"sloppy, contradictory and poorly drafted." *Hawes*, 2024 WL 4451967, at *18. Even if the Court drew that conclusion, it "does not mean that [they are] 'consistent with the reckless disregard for the truth required to allege scienter.'" *Id.* (quoting *In re Sunedison Sec. Litig.*, 300 F. Supp. 3d 444, 493 (S.D.N.Y. 2018)).

*    *    *

Finally, in assessing whether a complaint pleads a "strong inference of scienter," courts must "consider whether the inference of scienter is at least as compelling as any opposing inference of nonfraudulent intent," assessing the allegations "holistically." *Slayton*, 604 F.3d at 766, 773, 775 (alterations omitted). Here, whether the allegations are viewed separately or holistically, Plaintiffs fail to plead particularized facts giving rise to a strong inference of scienter. For this independently dispositive reason, the Complaint should be dismissed.

## IV.    PLAINTIFFS DIRECT NO ALLEGATIONS AT KIESSLING.

Even if the Complaint could survive dismissal, all claims against Kiessling should be dismissed. Aside from the caption, Kiessling's name does not even appear in the Complaint—not even in the "Parties" section that defines "Defendants." AC ¶¶ 14–17. Kiessling should accordingly be dismissed from this action, with prejudice.

24

## V.      PLAINTIFFS FAIL TO STATE A CLAIM
##         UNDER SECTION 20(a) OF THE EXCHANGE ACT.

Where, as here, there is no primary liability under Section 10(b), Plaintiffs' Section 20(a) claim should be dismissed.  *See ATSI Commc'ns, Inc.*, 493 F.3d at 108 (affirming dismissal of Section 20(a) claim for failure to plead Section 10(b) claim).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the instant motion and dismiss the Complaint in its entirety, with prejudice.

Dated:  June 27, 2025                    Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Michael D. Blanchard*
Michael D. Blanchard
Christopher M. Wasil
One State Street
Hartford, CT 06103
(860) 240-2700
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

Laura Hughes McNally
Karen Pieslak Pohlmann
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000
brian.herman@morganlewis.com

*Attorneys for Defendants ASP Isotopes Inc., Paul E. Mann, and Heather Kiessling*

25