**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARK LEONE, Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

    v.

ASP ISOTOPES INC., PAUL E. MANN,
and HEATHER KIESSLING,

      Defendants.

Case No. 1:24-cv-9253-CM

---

**DEFENDANTS ASP ISOTOPES INC., PAUL E. MANN,**
**AND HEATHER KIESSLING'S OPPOSITION TO PLAINTIFFS'**
**<u>MOTION FOR CLASS CERTIFICATION</u>**


**MORGAN, LEWIS & BOCKIUS LLP**

Michael D. Blanchard
Christopher M. Wasil
One State Street
Hartford, CT 06103
(860) 240-2700
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

Laura Hughes McNally
Karen Pieslak Pohlmann
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000
brian.herman@morganlewis.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF RELEVANT FACTS ................................................................................. 3

     A.     The Amended Complaint's Theory Of Liability ...................................................... 3

     B.     Mark Leone's Sworn Statements Concerning His Transactions In ASPI ............. 5

     C.     Relationship Between Proposed Class Representatives ........................................ 8

     D.     Relationship Between Proposed Class Representatives And Counsel .................. 9

ARGUMENT .............................................................................................................................. 9

I.     CLASS CERTIFICATION IS NOT PROPER BECAUSE COMMON ISSUES
     DO NOT PREDOMINATE. ........................................................................................ 10

     A.     Plaintiffs Cannot Rely Upon The Fraud-On-The-Market Presumption
             Here. ...................................................................................................................... 10

           1.     Plaintiffs have not proven that ASPI's November 27, 2024 stock
                  price drop constitutes a statistically significant price impact. ................. 10

           2.     Plaintiffs cannot rely upon the fraud-on-the-market presumption
                  under *Basic* because they have not demonstrated that the purported
                  disclosure of the "truth" on November 27, 2024 was public. .................. 11

           3.     Plaintiffs cannot rely upon the fraud-on-the-market presumption
                  under *Basic* because there is a mismatch between what the Fuzzy
                  Panda Report discloses and the Amended Complaint's theory of
                  liability. ..................................................................................................... 12

           4.     The proposed class definition does not match the Amended
                  Complaint's theory of liability. ................................................................ 13

II.     THE PROPOSED CLASS REPRESENTATIVES DO NOT SATISFY THE
     ADEQUACY REQUIREMENT. ................................................................................. 14

     A.     The Errors in Mr. Leone's Sworn Certifications and Declaration Raise
             Concerns About Either His Diligence Or His Candor. ........................................ 14

     B.     The Lack Of A Relationship Between The Proposed Class Representatives
             Raises Questions Whether This Is Lawyer-Driven Litigation. ........................... 18

III.     MR. LEONE CANNOT REPRESENT THE PUTATIVE CLASS AS DEFINED
     SINCE HE DID NOT BELIEVE THE CORRECTIVE DISCLOSURE ON
     NOVEMBER 26, 2024 WAS TRUE. ........................................................................ 19

CONCLUSION .......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ................................................................................................13

*Basic v. Levinson*,
485 U.S. 224 (1988)...............................................................................................1, 2, 12, 14

*Bhojwani v. Pistiolis*,
No. 06 Civ. 13761 (CM), 2007 WL 9228588 (S.D.N.Y. July 31, 2007)...............................16

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................18

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113 (2021)......................................................................................................1, 12

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...........................................................................15, 19

*In re Allergan PLC Sec. Litig.*,
No. 18 Civ. 12089 (CM), 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) ......................1, 2, 16

*In re Concho Res., Inc.*,
No. 4:21-cv-2473, 2025 WL 1040379 (S.D. Tex. Apr. 7, 2025)...........................................13

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
No. 20-CV-4953 (JPO), 2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024).................................13

*Merryman v. Citigroup, Inc.*,
No. 15 Civ. 9185 (CM), 2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018)................................10

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) .......................................................................................15

*Shupe v. Rocket Companies, Inc.*,
752 F. Supp. 3d 735 (E.D. Mich. 2024)..........................................................................14, 15

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
No. 18-CV-12084 (VSB) (KHP), 2024 WL 1497110 (S.D.N.Y. Apr. 5, 2024) ....................13

*Tsirekidze v. Syntax–Brillian Corp.*,
No. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................15

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Defendants ASP Isotopes Inc. ("ASPI" or the "Company"), Paul E. Mann, and Heather Kiessling (together with ASPI, "Defendants") respectfully submit this Opposition to Plaintiffs' Motion for Class Certification ("Class Motion") (ECF 37).[1]

## PRELIMINARY STATEMENT

While "a garden-variety securities fraud suit [is] a type of action particularly well suited to class treatment," *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG), 2020 WL 5796763, at *1 (S.D.N.Y. Sept. 29, 2020), this is no garden-variety securities fraud suit. Rather, the Class Motion shows that this case is not "well suited to class treatment" because Plaintiffs fail to establish either predominance or adequacy.

Plaintiffs rely upon the fraud-on-the-market presumption of reliance under *Basic v. Levinson*, 485 U.S. 224, 245 (1988), to show that issues of reliance predominate. Class Mem. at 10-11. The Amended Complaint alleges that Defendants hid from the market that ASPI had never tested its technology on uranium, and that the "truth" was revealed on November 26, 2024 and November 27, 2024. But the first alleged disclosure of the "truth," the November 26, 2024 Fuzzy Panda Report, revealed nothing about testing – it, in fact, quoted the Company's own risk disclosure that it has not even secured a license to begin enriching uranium. Thus, "there is a mismatch between the contents of the misrepresentation and the corrective disclosure," *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 123, (2021), and any price impact from the Fuzzy Panda Report that could support the *Basic* presumption is rebutted.

---

[1] For purposes of this Opposition, Defendants define "Plaintiffs" as Mark Leone and Ivan Agapchev, which is the definition used in Memorandum In Support of Plaintiffs' Motion for Class Certification ("Class Memorandum," or "Class Mem.") (ECF 38) at 1. The Class Motion does not refer to Alexander Corredor Prada who was also named as a plaintiff in the Amended Complaint. *See* Amended Complaint (ECF 28) at 1.

The second alleged disclosure of the "truth" – the November 27, 2024 Canaccord Interview – only reiterated ASPI's disclosure that the technology has not been tested on uranium. Plaintiffs also have not proven that the Canaccord Interview was public. And their expert's analysis of market efficiency fails to show that the market reacted to the November 27, 2024 Canaccord Interview because the expert's "Analysis Period" ends on November 26, 2024. Indeed, Plaintiffs' proposed class omits investors who purchased ASPI stock on November 27, 2024 before the Canaccord Interview supposedly became public. Accordingly, Plaintiffs cannot rely upon the *Basic* presumption and have not satisfied their burden to prove that common issues predominate.

Even if Plaintiffs could rely upon the *Basic* presumption (which they cannot), the proposed class representatives' deposition testimony revealed issues of adequacy that preclude certification. In keeping with this Court's denial of class certification on adequacy grounds to prevent lawyer-driven securities litigation (*Allergan*, 2020 WL 579673, at *1 (noting proposed class representative "is not the plaintiff who should be controlling the representation of the class")), the same concerns here should result in denial of the Class Motion.

Specifically, Mark Leone, the sole appointed Lead Plaintiff, has thrice sworn to the accuracy of different lists purporting to show all his ASPI stock transactions, including one he admitted was "obviously" not complete. Equally as concerning, Mr. Leone and his counsel buried their admissions of these errors – first on a footnote in the Amended Complaint (at 1 n.1) and then in Mr. Leone's declaration in support of the Class Motion (ECF 39-2, ¶ 3). Mr. Leone's repeated attempts to minimize serious misstatements to the Court undermines his adequacy to serve as a class representative.

Mr. Leone's deposition testimony also raised significant doubt that he can prevent this case "from being [a] 'lawyer driven' lawsuit[ ]." *Allergan*, 2020 WL 5796763, at *7. A core allegation

of the Amended Complaint prepared by his counsel is that the Fuzzy Panda Report purportedly revealed the "truth." Mr. Leone does not agree – he admitted that he did not believe the Report to be true. He also did not know why the Amended Complaint added as additional plaintiffs two individuals not appointed by the Court as lead plaintiffs, or whether one of those individuals was even still part of the case. And he has had limited contact – one phone call organized and attended by the lawyers – with the other proposed class representative, Ivan Agapchev, who himself has adequacy issues (but, to his credit, has submitted only one certification).

For the foregoing reasons, as explained more fully below, Defendants respectfully submit that class certification should be denied.

## STATEMENT OF RELEVANT FACTS

### A.  The Amended Complaint's Theory Of Liability

Plaintiffs claim ASPI, a company based in South Africa engaged in researching and developing technologies and processes for enriching isotopes, and its CEO Paul Mann made false or misleading statements that ASPI's quantum enrichment technology had been tested on uranium, when it allegedly had not. Class Mem. at 2-3; Amended Complaint, ¶ 5. Plaintiffs contend ASPI's stock price dropped when "the material risks and adverse information previously concealed by Defendants' false and misleading statements and omissions . . . were revealed," *id.* ¶ 91, through: (i) an article by Fuzzy Panda Research on November 26, 2024 (the "Fuzzy Panda Report"); and (ii) Mr. Mann's interview by Canaccord Genuity on November 27, 2024 at 10 a.m. ("Canaccord Interview"). *Id.* ¶ 5; Class Mem. at 3; *see generally* Amended Complaint, ¶¶ 5, 92-100, 102 (discussing Fuzzy Panda Report); ¶¶ 103-10 (discussing Canaccord Interview). Plaintiffs' expert report includes an analysis of the stock price drop on November 26, 2024 after the Fuzzy Panda

-3-

Report but does not include November 27, 2024 in his "Analysis Period." Expert Report of Zahn Bozanic, June 26, 2025 (ECF 39-1), ¶ 31 ("Analysis Period" ends on November 26, 2024).

A copy of the Fuzzy Panda Report is attached as an exhibit to the Amended Complaint (ECF 28-5). A transcript of the Canaccord Interview, notably, is not. What little exists in the public domain regarding the interview includes an ASPI press release issued on November 26, 2024 stating: "Canaccord Genuity's analyst, George Gianarikas, will host a fire side chat with ASP Isotopes's Chairman and Chief Executive Officer, Paul Mann, at 10am EST on November 27, 2024." ASPI Nov. 26, 2024 Press Release at p. 4 of 5 pages, attached as Ex. 1 to the Declaration of Michael D. Blanchard in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Blanchard Dec."). The press release concludes, not with identification of a source by which the public might access the interview, but directing: "Please contact your Canaccord Genuity sales representative for dial in details." *Id.*

Tellingly, Plaintiffs do not allege that the Fuzzy Panda Report informed the market that ASPI had not tested its technology on uranium. Rather, Plaintiffs assert only that the Fuzzy Panda Report "reveal[ed] significant problems facing ASPI's claimed uranium enrichment technology." Class Mem. at 3. Not even the Fuzzy Panda Report itself claimed to reveal the absence of testing. It stated: "A former Klydon executive pointed out that if the [QE] technology was as good as ASPI claims, someone surely would have by now found a way to get the necessary licenses and test it on uranium to prove its worthiness." Fuzzy Panda Report at 18. It continued: "ASPI agrees with our research, admitting they don't have any licenses to enrich uranium, and think it's '**highly uncertain**' they will ever receive them!" *Id.* (emphasis in original). For that proposition, Fuzzy Panda quotes ASPI's Form 10-Q for Q3 2024 as stating: "If we [ASPI] receive permits and licenses to enrich U-235 (which in itself is highly uncertain), we do not expect U-235 to be commercially

available for at least several years, if ever." *Id.*  While Fuzzy Panda cited the Company's prior disclosures to show quantum enrichment has not been tested on uranium, Plaintiffs claim that fact was not revealed until the November 27, 2024 Canaccord Interview.  Amended Complaint, ¶ 5.

Plaintiffs do not allege in the Amended Complaint that the Canaccord Interview was public, nor make any such claim or introduce any evidence of its publication in their Class Memorandum.  They have not provided a transcript of the interview.  They offer no information about who the audience for the Canaccord Interview was, whether the interview was publicly disseminated, and, if so, when, how and to what extent.  ASPI informed the market the Canaccord Interview could be accessed by contacting a "Canaccord Genuity sales representative for dial in details."  Ex. 1 at p. 4 of 5 pages.  Mr. Leone testified that the Canaccord Interview was "limited to Canaccord clients."  Transcript of July 10, 2025 Deposition of Mark Leone ("Leone Tr.") at 127:1-4  (attached as Ex. 2 to Blanchard Dec.).  In the November 26, 2024 email chain between Mark Leone and Jason Assad of ASPI, marked as Exhibit 13 to Leone Deposition (attached as Ex. 3 to Blanchard Dec.), Mr. Leone stated that he "very much look[s] forward to tomorrows [sic] chat" (referring to the Canaccord Interview), and Mr. Assad responded that "[t]he CG call scheduled for tomorrow is limited to Canaccord clients.  However, Ocean Wall will be hosting a separate call for Paul tomorrow to discuss several relevant topics.  I've copied Nicky from OW, who can provide you with the recording as soon as it's available." *Id.* at 1.  Mr. Assad did not offer to provide Mr. Leone with a recording of the Canaccord Interview.

**B.      Mark Leone's Sworn Statements Concerning His Transactions In ASPI**

This Court appointed Mark Leone the sole Lead Plaintiff based upon his purported financial loss of over $200,000 (ECF 21) calculated from Mr. Leone's ASPI stock transactions, attached to the Sworn Certification of Plaintiff dated February 3, 2025.  ECF 7-2 ("February Certification"); Leone Tr. at 49:8-9 (confirming that Leone read and signed the Sworn

Certification).  It listed five pages of *purchases* of ASPI on November 25-26, 2024 (*no sales*) as his "transactions in ASP Isotopes during the Class Period set forth in the Complaint" (October 30, 2024 through November 26, 2024).  Initial Complaint, ¶ 1; February Certification, ¶ 4.

At his deposition, Mr. Leone testified that "obviously" the five-page attachment to the February Certification was "not a complete list."  Leone Tr. at 53:23-24.  He appeared not to know why the incomplete list was used, first stating there was "probably just miscommunication on what [he] had to send" to attorney Frank Cruz, (*id.* at 54:22-24; *see also id.* at 54:9-10 (list not complete), 54:16-19 (Leone was communicating with Frank Cruz); 59:23-60:1 ("it was a miscommunication of when I was told to – what I thought I should have sent.")) before conceding "I don't remember, to be honest with you.  That was, yeah, just a miscommunication."  *Id.* at 60:5-10.

More than three months after swearing under penalty of perjury that the February Certification contained *all* of his ASPI stock transactions, Mr. Leone signed a Sworn Certification dated May 23, 2025 that was filed with the Amended Complaint.  ECF 28-1 ("May Certification").  The May Certification contained nine and a half pages of additional purchases and sales he made between October 30, 2024 and November 22, 2024 that were not included in the attachment to the February Certification.  *Id*.

The Amended Complaint states in a footnote that the newly identified transactions had been "inadvertently omitted" from the February Certification, "result[ing] in an overstatement of [Mr. Leone's] financial losses.  (Leone's recalculated losses total approximately $150,000 for the class period set forth in the initial complaint.)"  Amended Complaint at 1 n.1.  Moreover, this error concealed from the Court the "in and out" nature of Mr. Leone's ASPI stock trades. The transactions in the May Certification revealed Mr. Leone was entirely out of ASPI stock by November 22, 2024; as he explained, he sold the stock to "take some profit."  Leone Tr. at 70:5-

13. He started buying again on November 25, 2024 because he "had made some money and [he] still liked the stock." *Id.* at 70:17-23. He then "unloaded everything" on November 27, 2024. *Id.* at 71:6-7. These are facts the Court was unable to consider when determining who should serve as lead plaintiff.

Less than a month after the May Certification, Mr. Leone provided a sworn Declaration in Support of Plaintiffs' Motion for Class Certification (ECF 39-2) dated June 23, 2025 ("June Declaration"). The June Declaration states in Paragraph 3 that "[t]he vast majority of [Mr. Leone's] Class Period transactions in ASPI stock are listed in [his] certification dated May 23, 2025[,]" but there were also transactions in his individual retirement account that were "inadvertently omitted from [his] prior certification that reflected transactions from [his] brokerage account[.]" June Declaration, ¶ 3. Mr. Leone testified that these were not included in his earlier Certifications because he "completely forgot that they were even there. . . . just slipped my mind." Leone Tr. at 61:14-19. The Class Memorandum does not mention these additional transactions.

The Amended Complaint's theory of liability suggests the Fuzzy Panda Report would trigger widespread sales by ASPI stockholders. Not Mr. Leone – he *bought* shares in response to the Report. *Id.* at 72:10-13. In direct contradiction to the allegation that the Fuzzy Panda Report revealed the "truth," Mr. Leone concluded the Report was "just attacking the company because they were trying to short the stock and make money." *Id*. at 72:4-9. Mr. Leone was "suspicious" of the Fuzzy Panda Report because the author "makes a living putting out articles like this and shorting the stock and, you know, quick hits." *Id*. 80:14-81:9; *accord id*. at 96:19-22 ("Other people were saying what was in the report, that he [author of the FP Report] was trying to short the stock. My feeling was at the time just to make money on the short."). "[E]veryone was saying online, that they [FP] were – you know, it was an attack, it was just to make money on a

short . . . ." *Id*. at 127:23-128:1.  Mr. Leone "felt pretty confident that the stock was going to come back and that's probably why on the 26th [he] kept buying." *Id.* at 73:11-14; *accord id*. at 81:18-23 (Mr. Leone was "very confident" in the stock after the Fuzzy Panda Report); *see generally id*. at 81:18-82:7.

### C.    Relationship Between Proposed Class Representatives

Mr. Leone and Mr. Agapchev do not know each other outside this litigation.  Leone Tr. at 108:4-6.  They have never spoken to one another other than one phone call that included the Glancy firm.  *Id.* at 108:7-13, 17-18; Transcript of July 9, 2025 Deposition of Ivan Agapchev at 62:7-13; 63:22-25 ("Agapchev Tr.") (attached as Ex. 4 to Blanchard Dec.).  Mr. Leone testified that the call lasted about an hour, Leone Tr. at 112:18-113:8, but Mr. Agapchev initially testified that this was "just [an] introduction call" that lasted a "[c]ouple [of] minutes," Agapchev Tr. at 63:3-7.  Later, when Mr. Agapchev was questioned by his counsel in the deposition, he said the call was "definitely more than [a] couple [of] minutes"; it was "[u]p to ten minutes approximately" and possibly even longer.  Agapchev Tr. at 104:7-16.  Along the same lines, Mr. Agapchev initially testified that he does not have Mr. Leone's contact information, and that if he wanted to contact Mr. Leone, he "would have to go through the lawyers[.]"  *Id*. at 64:20-24.  But when questioned by his counsel, Mr. Agapchev said that he would have Mr. Leone's email address if he had been copied on the same email as Mr. Leone.  *Id*. at 104:23-105:1.  Mr. Agapchev has never looked up Mr. Leone or Alexander Corredor Prada (the other person named in the Amended Complaint as an additional plaintiff) on the Internet or on social media.  *Id*. at 63:16-21.

Mr. Leone does not know why Mr. Agapchev was added as plaintiff or if Mr. Agapchev is co-lead plaintiff.  Leone Tr. at 107:7-8, 10-13.  Mr. Leone moved to be lead plaintiff solely on his own behalf and feels he can satisfy the obligations of being lead plaintiff by himself.  *Id*. at 109:6-10, 17-110:2.  Mr. Leone does not know the responsibilities of a "regular plaintiff," the difference

between a lead plaintiff and a "regular plaintiff," or why the court would need two lead plaintiffs here. *Id*. at 112:8-13; 113:9-17.

Neither Mr. Leone nor Mr. Agapchev has ever spoken to or met Mr. Prada. *Id*. at 110:13-17; Agapchev Tr. at 62:6-10. Mr. Leone does not know if Mr. Prada is still a named plaintiff. Leone Tr. at 110:21-111:2. Mr. Agapchev does not think Mr. Prada is still a plaintiff in this case, but he has "no idea" why Mr. Prada is "not a plaintiff anymore." Agapchev Tr. 63:11-15.

### D. Relationship Between Proposed Class Representatives And Counsel

Both proposed class representatives' participation in this case began by responding to an ad placed by attorney Frank Cruz. Leone Tr. at 13:14-14:3; 104:14-19; Agapchev Tr. at 66:2-8; 66:22-24. Neither proposed representatives is certain whether he has a written agreement with Mr. Cruz or his firm. Leone Tr. at 104:20-105:4; Agapchev Tr. at 68:6-12. Mr. Agapchev testified: "I signed something. But I'm not sure – it was a while ago. I'm not sure it was an agreement or whether they sen[t] me some documents as far as I remember." Agapchev Tr. at 68: 6-12. When asked how he would represent investors in ASPI, Mr. Agapchev testified that "I have my attorneys. . . . I trust my attorneys. And I rely on them." *Id.* at 69:25-70:3.

### ARGUMENT

Class certification should be denied because Plaintiffs do not meet the predominance and adequacy requirements of Rule 23.[2]

---

[2] While Defendants address only these two issues herein, Defendants reserve their rights to raise a failure to satisfy other requirements of Rule 23, or to revisit predominance and adequacy, if Defendants become aware of facts giving rise to challenges. In light of the Private Securities Litigation Reform Act's ("PSLRA's") automatic stay and the limited class discovery that was available pursuant to this Court's scheduling Order (ECF 21) on class certification, Defendants only have the benefit of deposing the proposed class representatives. If this case survives Defendants' Motion to Dismiss, if the Court grants the Class Motion and if discovery reveals other grounds on which to challenge Plaintiffs' arguments in favor of class certification,

I.      **CLASS CERTIFICATION IS NOT PROPER BECAUSE COMMON ISSUES DO NOT PREDOMINATE.**

  A.      **Plaintiffs Cannot Rely Upon The Fraud-On-The-Market Presumption Here.**

  The Class Memorandum acknowledges that satisfaction of the predominance requirement often turns on reliance. Class Mem. at 10. Plaintiffs argue that predominance is satisfied here because "reliance may be presumed on a class-wide basis pursuant to the fraud-on-the-market presumption under *Basic v. Levinson*, 485 U.S. 224 (1988)." Class Mem. at 10. Plaintiffs are wrong for several reasons.

    1.      Plaintiffs have not proven that ASPI's November 27, 2024 stock price drop constitutes a statistically significant price impact.

  First, Plaintiffs have not met their burden of proof to show that the fraud-on-the-market presumption is triggered here. As noted, Plaintiffs' expert does not include November 27, 2024 in his "Analysis Period." Thus, Dr. Bozanic has conducted no analysis, and Plaintiffs have no proof showing whether the stock price drop after the Canaccord Interview was statistically significant. Nor have they considered what other news may have been available that day that could have affected ASPI's stock. Plaintiffs refer to the raw number by which ASPI's stock price dropped on November 27, 2024 (Class Mem. at 3), but have offered no evidence showing that the drop is meaningful or connected to the Canaccord Interview. Price impact cannot be established by a hunch. "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Merryman v. Citigroup, Inc.*, No. 15 Civ. 9185 (CM), 2018 WL 1621495, at *13 (S.D.N.Y. Mar. 22, 2018) (citation omitted).

---

Defendants reserve rights to raise those grounds in a motion to de-certify any class that is certified pursuant to this Motion for Class Certification.

2.      Plaintiffs cannot rely upon the fraud-on-the-market presumption under *Basic* because they have not demonstrated that the purported disclosure of the "truth" on November 27, 2024 was public.

Second, Plaintiffs have not provided facts sufficient to rely upon the fraud-on-the-market presumption because they have not demonstrated that the Canaccord Interview was publicly available.  As noted, the Amended Complaint does not plead that the Canaccord Interview was public, and the Class Memorandum cites to no evidence showing it was publicly available. The only record evidence relevant to this issue is the November 26, 2024 email between Mr. Leone and Mr. Assad of ASPI, which shows that the interview was *not* generally available to the public. *See* Nov. 26, 2024 email (attached as Ex. 3).  Mr. Leone plainly testified that the Canaccord Interview was limited to Canaccord clients.  Leone Tr. at 127:1-4.

Even though the Canaccord Interview is supposedly the key disclosure of the purported "truth" on which the Amended Complaint's theory of liability rests, Plaintiffs have provided little information about it.  They have not offered any evidence of how many people heard the Canaccord Interview at the time it occurred.  Plaintiffs have not shown how many people had access to or reviewed or listened to any transcript or audio recording after the Canaccord Interview was done.  Plaintiffs have not shown whether or where any transcript or recording of the Canaccord Interview was available.  Paragraphs 104 through 110 of the Amended Complaint contain alleged quotes from the Canaccord Interview (some lengthy) but do not include a cite for the quotes or reference any transcript.  Defendants have no information about the source of these quotes – *e.g.*, whether they are from a transcript; who prepared any transcript; when and under what circumstances any transcript was prepared; and who has seen, reviewed or been made aware of any transcript. Notably, while Plaintiffs attached a copy of the Fuzzy Panda Report to the Amended Complaint, they did not attach a transcript of the Canaccord Interview – despite purporting to quote it at length – or note where a transcript or video can be found.  Because Plaintiffs are the ones

-11-

moving for class certification, they bear the burden to prove all elements of the presumption of reliance they seek to invoke to satisfy the predominance requirement. They have not presented the Court with this necessary evidence.

In sum, for the same reasons that the alleged misstatements must be public for the fraud-on-the-market presumption to apply (*see* Class Mem. at 11 ("plaintiffs must show: '(1) that the alleged misrepresentation was publicly known[]'") (citations omitted)), so too with respect to a corrective disclosure. If Plaintiffs have not shown that the corrective disclosure is public, there is no way to know what triggered the stock price movement. This concern is elevated here where Plaintiffs' expert did not include the date of the last alleged corrective disclosure in the "Analysis Period" for his event study. Thus, Plaintiffs do not even show that the stock price movement on November 27, 2024 was statistically significant. Accordingly, Plaintiffs cannot use the *Basic* presumption to satisfy their burden to prove reliance on the corrective disclosure on November 27, 2024, and no class should be certified that relies upon the alleged November 27, 2024 Canaccord Interview as the alleged "corrective disclosure."

       3.     <u>Plaintiffs cannot rely upon the fraud-on-the-market presumption under *Basic* because there is a mismatch between what the Fuzzy Panda Report discloses and the Amended Complaint's theory of liability.</u>

Third, since the Canaccord Interview cannot be a corrective disclosure, only one disclosure can trigger the *Basic* presumption: the Fuzzy Panda Report. But the Fuzzy Panda Report does not disclose that ASPI had never tested its technology on uranium. Rather, the Fuzzy Panda Report notes this fact in passing by quoting, *inter alia*, ASPI's SEC filings disclosing that it does not even have the necessary licenses to enrich uranium and that receiving permits and licenses to do so is "highly uncertain." The Fuzzy Panda Report cannot serve as the corrective disclosure that revealed ASPI had not tested its technology on uranium because there is "a mismatch between the contents of the misrepresentation and the corrective disclosure." *Goldman Sachs*, 594 U.S. at 123.

The Second Circuit has instructed that "a searching price impact analysis must be conducted where" (as here), among other things, "the corrective disclosure does not directly refer . . . to the alleged misstatement." *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 102 (2d Cir. 2023). Where a mismatch occurs, courts have ruled that the *Basic* presumption does not apply. *See In re Concho Res., Inc.*, No. 4:21-cv-2473, 2025 WL 1040379, at *16 (S.D. Tex. Apr. 7, 2025) (denying in part motion for class certification because of mismatch between alleged corrective disclosures and challenged statements); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB) (KHP), 2024 WL 1497110, at *17 (S.D.N.Y. Apr. 5, 2024) (magistrate report and recommendation to deny in part motion for class certification) ("The corrective disclosure does not mention" the alleged facts that were misrepresented; "[s]ince there is no match between the eleven other statements at issue and the corrective disclosure, Plaintiffs cannot rely on the inference that the front-end statements had any impact on price, and the *Basic* presumption does not apply as to these statements."); *In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20-CV-4953 (JPO), 2024 WL 1342800, at *12 (S.D.N.Y. Mar. 29, 2024) (denying class certification because of substantive mismatch between alleged misstatements and corrective disclosures).

4.   <u>The proposed class definition does not match the Amended Complaint's theory of liability.</u>

Fourth and finally, Plaintiffs' proposed class definition omits potential class members who should be included pursuant to the Amended Complaint's theory of liability. According to Plaintiffs, the "truth" was not revealed solely in the Fuzzy Panda Report issued on November 26, 2024; Plaintiffs also seek to recover for the stock price drop on November 27, 2024 under the theory that the full "truth" was disclosed during the Canaccord Interview. But that interview began at 10 a.m. after the market opened. Plaintiffs have provided no evidence showing the time when

-13-

Mr. Mann supposedly made the statement that purportedly revealed ASPI's technology had not been tested on uranium. Even assuming this was new information (which it was not), Plaintiffs exclude from the class definition everyone who bought ASPI stock on November 27, 2024 after the market opened and before Mr. Mann allegedly made this disclosure. The purchasers of ASPI stock during that window of time on November 27, 2024 are in the same situation as putative class members who bought ASPI stock on November 26, 2024 after the Fuzzy Panda Report was released at 10 a.m. Yet, even though Plaintiffs seek to recover for the stock price decline on November 27, 2024, the class definition does not include those purchasers.

Accordingly, Plaintiffs cannot rely upon the *Basic* presumption either because they have not proven the necessary evidence to invoke the *Basic* presumption or because Defendants have shown that there is a "mismatch" between the alleged misrepresentation and the information revealed in the purported corrective disclosure. Without the ability to rely upon the *Basic* presumption, Plaintiffs have not proven that common issues predominate.

## II.   THE PROPOSED CLASS REPRESENTATIVES DO NOT SATISFY THE ADEQUACY REQUIREMENT.

### A.   The Errors in Mr. Leone's Sworn Certifications and Declaration Raise Concerns About Either His Diligence Or His Candor.

Mr. Leone is not an adequate class representative because the errors in his Sworn Certifications and Declaration raise issues about either his diligence or candor that preclude him from adequately representing the class.

Courts have not hesitated to rule that proposed class representatives are inadequate because of mistakes in their certifications under the PSLRA. In *Shupe v. Rocket Companies, Inc.*, the court determined that the proposed class representative was inadequate and denied the motion for class certification because the individual omitted transactions from his PSLRA certification. 752 F. Supp. 3d 735, 792-95 (E.D. Mich. 2024). As here, the proposed class representative's explanation

was that he "'inadvertently did not include [his] March 2, 2021 trades in his trading records that [he] previously sent to [his] counsel, and thus, they were unintentionally not included in [his] prior certification' because he made a mistake when downloading his trading records from his broker's website." *Id.* at 794 (alterations in original). The court noted that the proposed representative's deposition testimony on this topic was "contradictory, self-serving, and borderline nonsensical." *Id.* It concluded that "[a]t best, [the proposed representative's] deposition testimony highlights his inability to remember important details central to this litigation and his own trades of Rocket stock. At worst, [his] testimony is indicative of obfuscation after deliberate, dishonest disclosures. His adequacy is undermined ***either way***." *Id.* (emphasis added). Here, the omitted information shows that Mr. Leone was in and out of the stock on the eve of the alleged corrective disclosure and that he literally purchased shares in response to the corrective disclosure—putting him at odds with the very theory of liability he advances in the Amended Complaint. Under such circumstances, it is not unreasonable to suspect that the omission was less than inadvertent.

Another court explained that "[p]laintiff's inadvertence or his indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that, in conjunction with his other deficiencies, counsel against a finding of adequacy." *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (denying motion for class certification). In a lead plaintiff decision (which, like class certification, includes an evaluation of the proposed representative's adequacy), this Court has observed that "a blatant gaffe does not bode well for the adequacy of [a proposed] group to lead this litigation." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (McMahon, J.) (citing *Tsirekidze v. Syntax–Brillian Corp.*, No. CV-07-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008)). In another lead plaintiff decision, this Court stated that "carelessness about detail [relating to their transactions] . . . undermines the adequacy

-15-

of Mr. Cole (and his associated group) as a lead plaintiff." *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (NKF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007). Thus, it is proper for this Court to subject Mr. Leone's Sworn Certifications and Declaration to the "rigorous analysis" applicable to "each of the requirements of Rule 23." *Allergan*, 2020 WL 5796763, at *5 (citation omitted).

Here, the difference between the transactions listed in the attachment to the February Certification and the May Certification is significant. The February Certification listed only purchases of ASPI stock on two days. The May Certification included numerous *sales* during the Class Period, including sales exiting the entire position two trading days before the Fuzzy Panda report and purchases on the day of (and, as his deposition revealed, in response to) Fuzzy Panda. The difference between the list attached to the February Certification and Mr. Leone's actual transactions was "obvious[]" according to Mr. Leone, who admitted that "to be honest with you" he did not remember what happened but attributed the error simply to some "miscommunication" with counsel. Leone Tr. at 53:23-24; 54:9-11, 16-18, 22-24; 59:23-60:1, 5-10.

These events raise serious concerns about Mr. Leone's ability to adequately represent the putative class because they reflect, in the light most favorable to Mr. Leone, a lack of diligence and/or attention, or, under a more rigorous review, outright deception. Mr. Leone signed the February Certification under penalty of perjury that the statements it contained were true and correct. *See* February Certification. This alone should have motivated Mr. Leone to confirm that the information was accurate. In addition, the transactions in the Certification were used to calculate his financial losses. As it turned out, the Court's decision to appoint Mr. Leone Lead Plaintiff was based solely on the amount of his alleged losses and the withdrawal of competing lead plaintiff candidates in light of these losses. Thus, Mr. Leone's appointment as Lead Plaintiff

should have further motivated him to confirm the accuracy of the information submitted to the Court. Even putting these facts aside, Mr. Leone acknowledges that it was "obvious" (at least to him) that the transactions listed in the February Certification are incomplete. Mr. Leone nonetheless signed the erroneous February Certification.

Mr. Leone's explanation for this conduct –*i.e.*, a "miscommunication" with counsel (or alternatively, he does not remember) – does nothing to dispel concerns about his adequacy as Lead Plaintiff. If a "miscommunication" occurred, it was a significant one. While this alone raises the risk of another error that potentially harms a certified class, Mr. Leone's second inaccurate transaction list – the May Certification – further validates that risk. In addition, if Mr. Leone does not remember important facts about this case from only a few months ago, one must question whether he is paying enough attention to this matter to adequately serve as class representative.

Moreover, Lead Plaintiff did not adequately bring either of these errors to the Court's attention, or explain how they happened or whether they affect the Court's conclusion about who to appoint as lead plaintiff. Instead, Mr. Leone buried the first mistake in a footnote in the Amended Complaint and referenced the second one only in his Declaration rather than in the body of the Class Memorandum. This raises concerns about Mr. Leone's transparency both with the Court and potential class members.

Defendants respectfully submit that these concerns alone demonstrate that Mr. Leone is not an adequate class representative. When considered together with the concerns discussed below arising from the request to approve an unrelated group as class representatives, Mr. Leone's failure to satisfy Rule 23's requirements is (to use his word) "obvious."

**B.      The Lack Of A Relationship Between The Proposed Class Representatives Raises Questions Whether This Is Lawyer-Driven Litigation.**

Mr. Leone alone moved to be appointed as Lead Plaintiff, and this Court appointed only him. Mr. Leone is not aware of any aspect of the Lead Plaintiff role that he cannot perform.  Yet, Mr. Leone apparently allowed his counsel to add Mr. Agapchev and Mr. Prada to the Amended Complaint as additional plaintiffs, even though he has no idea why their inclusion was necessary or desirable, or how their role as "regular plaintiff" differs from his role as Lead Plaintiff.  "As a general rule, . . . the class is best served by having one Lead Plaintiff and one Lead Counsel to minimize legal fees."  *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 190-91 (S.D.N.Y. 2006).

Mr. Leone and Mr. Agapchev were brought together by counsel.  They do not know each other outside this litigation; they have only communicated once on a conference call arranged and attended by counsel.  Their memories of this call are inconsistent – Mr. Leone testified that it lasted almost an hour; Mr. Agapchev testified that it was an introduction call that lasted a couple of minutes, then stated the call lasted for ten minutes or possibly longer.  Mr. Agapchev initially testified he did not have Mr. Leone's contact information, then stated he would have his email address if both were included on the same email (but did not confirm whether this occurred).  Mr. Agapchev and Mr. Leone have never spoken without counsel present.  Both became involved in this litigation because they responded to an advertisement placed by Frank Cruz – although neither of them knew if they had any signed agreement with Mr. Cruz, who is no longer part of this case. Mr. Leone just remembers "signing documents," but he apparently didn't know what they were. Leone Tr. at 104:20-105:2.  Mr. Agapchev similarly can only recall that he "signed something"; he is "not sure" what it was.  Agapchev Tr. at 68:8-10.  Neither Mr. Leone nor Mr. Agapchev has

ever met or spoken to the third named plaintiff Mr. Prada, and they do not know whether Mr. Prada is even still part of this case.

These facts are hallmarks of a case that is purely "lawyer-driven litigation." This Court has declined to appoint as lead plaintiffs an unrelated group of investors who had "no pre-litigation relationship, having been introduced to each other 'through our counsel.'" *Khunt*, 102 F. Supp. 3d at 532–33 (S.D.N.Y. 2015) (citation omitted) (only involvement was a single conference call). If these types of groups do not satisfy the adequacy requirement to be appointed as lead plaintiffs, they are equally improper as class representatives.

Accordingly, class certification should be denied because Plaintiffs have failed to satisfy all the requirements of Rule 23.

### III. MR. LEONE CANNOT REPRESENT THE PUTATIVE CLASS AS DEFINED SINCE HE DID NOT BELIEVE THE CORRECTIVE DISCLOSURE ON NOVEMBER 26, 2024 WAS TRUE.

Mr. Leone is not a proper class representative because the facts relating to his personal transactions in ASPI stock are not consistent with the theory of liability pled in the Amended Complaint. As noted, the Amended Complaint avers that the Fuzzy Panda Report was a corrective disclosure revealing "the material risks and adverse information previously concealed by Defendants' false and misleading statements and omissions[,]" Amended Complaint ¶ 91, and seeks to recover for the stock price drop on November 26, 2024 after the Fuzzy Panda Report was published. *Id.* ¶ 102.

However, Mr. Leone testified plainly he did not believe the Fuzzy Panda Report, and he bought ASPI stock on November 26, 2024 because he was "confident" the stock would recover. Whether viewed as a failure to demonstrate typicality or adequacy, the discrepancy between Mr. Leone's and the Amended Complaint's view of the "truth" and when it was "revealed" creates an irreconcilable conflict that is detrimental to the putative class members.

-19-

**CONCLUSION**

For the reasons set forth herein, the Motion for Class Certification should be denied.

Dated:  July 25, 2025

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

/s/ Michael D. Blanchard
Michael D. Blanchard
Christopher M. Wasil
One State Street
Hartford, CT 06103
(860) 240-2700
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

Laura Hughes McNally
Karen Pieslak Pohlmann
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000
brian.herman@morganlewis.com

*Attorneys for Defendants ASP Isotopes Inc., Paul E. Mann, and Heather Kiessling*

-20-