**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LEONE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ASP ISOTOPES INC., PAUL E. MANN, and HEATHER KIESSLING,<br><br>    Defendants. | Case No. 1:24-cv-9253-CM |

**DEFENDANTS ASP ISOTOPES INC., PAUL E. MANN,
AND HEATHER KIESSLING'S REPLY MEMORANDUM OF LAW IN
<u>SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

**MORGAN, LEWIS & BOCKIUS LLP**

Michael D. Blanchard
Christopher M. Wasil
One State Street
Hartford, CT 06103
(860) 240-2700
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

Laura Hughes McNally
Karen Pieslak Pohlmann
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000
brian.herman@morganlewis.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION. ................................................ 2

II.   PLAINTIFFS FAIL TO PLEAD FACTS GIVING RISE TO A STRONG
      INFERENCE OF SCIENTER. .................................................................................... 4

      A.    The Opposition's Motive Theory Does Not Support A Strong
            Inference Of Scienter. ..................................................................................... 4

      B.    Plaintiffs Fail To Allege "Strong Circumstantial Evidence"
            Of Conscious Misbehavior Or Recklessness. ................................................ 6

III.  PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MATERIAL
      MISREPRESENTATION OR OMISSION .................................................................. 8

      A.    ASPI Repeatedly Disclosed That Its QE Technology Has Never Been
            Used On Uranium—The Very Fact Plaintiffs Claim Was Concealed. ................. 8

      B.    None Of The Challenged Statements Are Actionable. ....................................... 11

            1.    Plaintiffs Improperly Challenge Statements Of Opinion And
                  Puffery. ................................................................................................ 11

            2.    None Of The Remaining Challenged Statements Are False Or
                  Misleading. ........................................................................................... 14

CONCLUSION ...................................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
    752 F.3d 173 (2d Cir. 2014)..................................................................................................6

*Colbert v. Rio Tinto PLC,*
    2019 WL 10960490 (S.D.N.Y. July 29, 2019) ......................................................................11

*Diabat v. Credit Suisse Grp. AG,*
    2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024).......................................................................10

*Gagnon v. Alkermes PLC,*
    2019 WL 2866113 (S.D.N.Y. July 2, 2019) ....................................................................10, 11

*Hawes v. Argo Blockchain PLC,*
    2024 WL 4451967 (S.D.N.Y. Oct. 9, 2024).........................................................................6, 7

*Hunt v. Enzo Biochem, Inc.,*
    530 F. Supp. 2d 580 (S.D.N.Y. 2008)....................................................................................4

*In re Aratana Therapeutics Inc. Secs. Litig.,*
    315 F. Supp. 3d 737 (S.D.N.Y. 2018)..................................................................................6, 7

*In re Avon Sec. Litig.,*
    2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019).......................................................................12

*In re Curaleaf Holdings, Inc. Sec. Litig.,*
    519 F. Supp. 3d 99 (E.D.N.Y. 2021) ..................................................................................9, 10

*In re Garrett Motion Inc. Secs. Litig.,*
    2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023) .........................................................................6

*In re Hyperion Sec. Litig.,*
    1995 WL 422480 (S.D.N.Y. July 14, 1995), *aff'd sub nom. Olkey v. Hyperion 1999
    Term Tr., Inc.*, 98 F.3d 2 (2d Cir. 1996) ..................................................................................9

*In re IAC/InterActiveCorp Sec. Litig.,*
    478 F. Supp. 2d 574 (S.D.N.Y. 2007)................................................................................9, 17

*In re Lottery.com, Inc. Sec. Litig.,*
    765 F. Supp. 3d 303 (S.D.N.Y. 2025)......................................................................................4

*In re Lululemon Sec. Litig.,*
    14 F. Supp. 3d 553 (S.D.N.Y. 2014).......................................................................................2

*In re Meta Materials Inc. Sec. Litig.*,
  2023 WL 6385563 (E.D.N.Y. Sept. 29, 2023) .................................................................10

*In re Nokia Corp. Secs. Litig.*,
  2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021) ..............................................................11, 18

*In re Puda Coal Secs. Inc. Litig.*,
  30 F. Supp. 3d 261 (S.D.N.Y. July 14, 2014)....................................................................11

*In re Signet Jewelers Ltd. Sec. Litig.*,
  389 F. Supp. 3d 221 (S.D.N.Y. 2019)................................................................................12

*In re Vaxart, Inc. Secs. Litig.*,
  576 F. Supp. 3d 663 (N.D. Cal. Dec. 22, 2021)................................................................18

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd sub nom. Arkansas Pub. Emps.*
  *Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) ........................................13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015)..................................................................................................11, 12

*Point12 Diversified Fund, LP v. TMC The Metals Co.*,
  2025 WL 1920340 (E.D.N.Y. July 11, 2025)......................................................................5

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
  348 F. Supp. 3d 313 (S.D.N.Y. 2018)..................................................................................5

*Skiadas v. Acer Therapeutics Inc.*,
  2020 WL 3268495 (S.D.N.Y. June 16, 2020) .....................................................................5

*Zhou v. NextCure, Inc.*,
  2023 WL 4493541 (S.D.N.Y. July 12, 2023) ......................................................................2

**STATUTES**

PSLRA ....................................................................................................................................1

## PRELIMINARY STATEMENT[1]

There is no better demonstration that the Complaint is deficient than Plaintiffs' attempt to amend it in their Opposition to Defendants' Motion to Dismiss (ECF 46) (the "Opposition" or "Opp."), replete with newly minted factual assertions, deposition testimony, and reinvented legal theories. Plaintiffs' motivation is obvious. Their single claim—that Defendants misled investors to believe ASPI had tested its QE technology on uranium when it had not—is defeated by ASPI's repeated disclosures before and during the putative class period that, among other things, it did not have the necessary licenses to use QE on uranium, could not conduct research necessary to "demonstrate proof of concept" and "there is no proof that this technology [QE] has ever been used to enrich uranium." Likely recognizing that their tortured interpretations of these disclosures to imply the Company had tested QE on uranium are insufficient to avoid dismissal, Plaintiffs seek to rely on materials outside the Complaint that, even if considered, do not save their claim.

For this reason alone, there are multiple, independently dispositive bases for dismissal. As to loss causation, there can be no "corrective" disclosure when there was nothing to correct—the Fuzzy Panda Report and the Canaccord Interview were, at most, redundant disclosures. As to scienter, Plaintiffs' allegations that Defendants were motivated to capitalize on the alleged fraud through ASPI's public stock offering, where the prospectus itself reiterated the same disclosures of the supposedly omitted information, does not begin to satisfy the PSLRA. And finally, ASPI's express disclosures preclude any claim that reasonable investors were misled as proposed by Plaintiffs' irrational "understanding" of the Challenged Statements that conflicts with those disclosures.

---

[1]     Capitalized terms have the same meanings as in Defendants' Memorandum of Law in Support of Motion to Dismiss (ECF 42) ("Motion to Dismiss" or "MTD"). All emphasis herein is added unless otherwise indicated.

This renders superfluous many, if not most, of the Opposition's legal arguments that, in any event, find no support in the cases it cites or any other legal authority. While the Court need not even reach these arguments for the reasons explained above, Defendants address each one herein. For these reasons, the Complaint should be dismissed, with prejudice.

## ARGUMENT

### I.      PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.

Surely, Plaintiffs would not attempt to rewrite the Complaint's loss causation allegations in their Opposition if those allegations were already sufficient to avoid dismissal. But Plaintiffs do exactly that, in multiple ways. In response to Defendants' argument that the Fuzzy Panda Report was not a corrective disclosure (MTD at 19–20), Plaintiffs contend for the first time in the Opposition that the Fuzzy Panda Report revealed that ASPI had not tested QE on uranium. Opp. at 23. Regarding the Canaccord Interview, Plaintiffs rely on their own deposition testimony (*id.* at 25) and add a new "materialization of the risk" theory that appears nowhere in the Complaint (*id.* at 22–23). Plaintiffs cannot amend the Complaint via the Opposition, *Zhou v. NextCure, Inc.*, 2023 WL 4493541, at *9 (S.D.N.Y. July 12, 2023), but even considering the unpled allegations, the Complaint fails.

The Opposition fails to overcome the most fundamental reason the Complaint fails to plead loss causation—ASPI's own disclosures before and during the putative class period that it has not used QE on uranium. As that fact was expressly disclosed—not concealed—neither the Fuzzy Panda Report nor the Canaccord Interview could be deemed to "reveal" previously undisclosed information causing a stock price decline. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 575 (S.D.N.Y. 2014).

The Opposition's main contention in this regard is that ASPI's disclosures only admitted to not having a license to enrich uranium, not that the Company never tested QE on uranium. Opp.

at 23.  That is a distinction without a difference, as established by Fuzzy Panda's recognition that non-licensure is synonymous with no testing: "A former Klydon executive pointed out that if the technology was as good as ASPI claims, someone surely would have by now found a way to *get the necessary licenses and test it on uranium to prove its worthiness*."  FP at 18 ("ASPI agrees ..." and quoting ASPI's 10-Q: "If we receive permits and licenses to enrich U-235....").  With immaterial differences in verbiage, ASPI repeatedly disclosed the same: "We are awaiting the *approvals necessary to conduct early research* and development efforts for isotopes such as *Uranium-235 utilizing the Quantum Enrichment* process."  FY 2023 10-K at 24; *id.* at 28 (ASPI "plan[s] to begin researching the enrichment of uranium ... using quantum enrichment.... [T]here is *no proof that this technology has ever been used to enrich uranium*....  Multiple *regulatory agencies need to provide approvals* to allow us to proceed with research and development *necessary to show proof of concept* to the market.").[2]  Plaintiffs make no attempt to distinguish ASPI's disclosures—*i.e.*, that it needs regulatory approvals to "conduct early research" on QE and uranium, and that without such approvals ASPI cannot "proceed with research and development necessary to show proof of concept"—from Fuzzy Panda's disclosure that no one had obtained "the necessary licenses and tested it" or Mann's acknowledgment that "we need to get a license before we're able to test our processes on the uranium."  AC ¶ 105.

Even more fundamentally, Plaintiffs' whole theory is a nonstarter because no Defendant has ever stated or implied that the Company had tested QE on uranium.  *See infra*, Part III.B.[3]

---

[2]    In light of these disclosures, it is irrelevant whether, as Plaintiffs argue, the Canaccord interviewer "believed that ASPI had enriched uranium" (Opp. at 24)—yet another purported "belief" that is negated by disclosed facts.

[3]    It is therefore irrelevant whether, as Plaintiffs vaguely contend, the Canaccord Interview "provid[ed] additional information" beyond the Fuzzy Panda Report because the CEO, instead of a purported Klydon principal, "admitted" what ASPI had already disclosed.  Opp. at 24.  In any

In light of the foregoing, whether the Canaccord Interview was a "public" disclosure is hardly of consequence, but regardless, the Opposition fails to overcome the Complaint's failure to plead that it was. Plaintiffs focus on ASPI's press release foretelling the Company's "transparency" as the reason for the interview, but ignore that the same press release reveals the interview was a dial-in call limited to Canaccord's clients. Opp. at 24. Nor do allegations that Canaccord was ASPI's underwriter (*id.* at 25) fill the pleading void, as only those who contacted "[their] Canaccord Genuity sales representatives" could access the call. *Id.* at 24 (quoting press release). The argument that Defendants "offer no explanation" for the stock-price drop on the day of the interview is simply an attempt to flip the pleading burden. Plaintiffs cite no case requiring defendants to disprove that a purported corrective disclosure was made public in the absence of allegations that it was. *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 597 (S.D.N.Y. 2008) (*id.* at 25) is unpersuasive, as it involved a common law fraud claim and held that a private placement memorandum could be deemed a corrective disclosure because the complaint sufficiently alleged facts showing, *inter alia*, that it was distributed to "a substantial segment of the institutional investment community[.]" *Id.* The Complaint, by contrast, contains no allegations as to whom the Canaccord Interview was distributed (notwithstanding Plaintiffs' testimony that they heard it).

## II.   PLAINTIFFS FAIL TO PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.

### A.   The Opposition's Motive Theory Does Not Support A Strong Inference Of Scienter.

Facing controlling law holding that "courts in this Circuit routinely decline to find scienter based on a desire to benefit from a higher share price in the context of public offerings" (MTD at 22 (quoting *In re Lottery.com, Inc. Sec. Litig.*, 765 F. Supp. 3d 303, 347 (S.D.N.Y. 2025)),

---

case, these are not allegations of the truth "leaking out." *Id.* These are allegations that the same fact was disclosed repeatedly.

4

Plaintiffs make two, equally infirm arguments to claim the Company's stock offering was sufficient motive to commit fraud and plead scienter.

First, Plaintiffs argue that the foregoing principle does not apply where a company must "sell stock to survive[.]" Opp. at 20 (citing, *inter alia*, *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018)). That sweeping notion would apply to virtually every public company before turning profitable, and accordingly, courts recognize that "*Shanawaz* does not stand for so stark a proposition." *Point12 Diversified Fund, LP v. TMC The Metals Co.*, 2025 WL 1920340, at *22 (E.D.N.Y. July 11, 2025). Rather, "dependence on stock sales was only one factor alleged in support of motive," a factor magnified by "the specific ties between the *Shanawaz* defendants' incentive packages, on the one hand, and the stock price and other metrics, on the other." *Id.* Plaintiffs allege nothing of the sort here. Moreover, and unlike in cases where FDA approval of a single product was the "*sin[e] qua non*" for the company's survival (*Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *10 (S.D.N.Y. June 16, 2020) (Opp. at 20)), ASPI's multiple technologies and target industries other than nuclear energy undermine any "incentive to bet the farm in a reckless gamble[.]" *Id.*, at *11; AC ¶¶ 42, 67 (alleging ASPI's focus on medical and semiconductor industries). ASPI is not a "one-trick pony," dependent on QE and uranium.

Second, Plaintiffs point to ASPI's stock offering a day after announcing its term sheet with TerraPower, theorizing that Defendants used the stock offering to "capitalize" on their supposed scheme. Opp. at 20. But the argument is hardly applicable to the offering here, given that ASPI used the opportunity to reiterate its disclosure of the allegedly concealed fact in its prospectus[4]:

---

[4]     *See* preliminary prospectus, Form 424B5, filed with the SEC on October 31, 2024 (relevant excerpts of which are attached to the accompanying Declaration of Michael D. Blanchard ("Blanchard Decl.") as Exhibit ("Ex.") 3), at p. S-4. For the Court's convenience, it can access the full document using the following hyperlink: Form 424B5.

> We are *awaiting the approvals necessary to conduct early research and development efforts for isotopes such as Uranium-235 utilizing the Quantum Enrichment process*.  The necessary approvals may take a significant amount of time and may [] fail to materialize.  As a result, we [may] not be able to enter into the nuclear energy space utilizing our technology.

The prospectus also expressly incorporated by reference the FY 2023 10-K—and advised investors to "pay special attention" to the "Risk Factors" in the 10-K—before deciding whether to invest. *Id.* at pp. S-1, S-20.  As discussed (*supra* at 3), the 10-K has myriad disclosures making clear ASPI has not used QE on uranium.  Plaintiffs' theory that ASPI supposedly sought to "capitalize" on misleading the market to believe that it had tested QE on uranium fails because ASPI simultaneously disclosed the opposite—that it did not have the "approvals necessary to conduct early research" on QE applied to uranium.  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186 n.62 (2d Cir. 2014) (affirming dismissal with prejudice; no scienter where defendant's disclosures "undercut the inference that [it] was attempting to conceal the truth"); *In re Garrett Motion Inc. Secs. Litig.*, 2023 WL 2744029, at *15 n.10 (S.D.N.Y. Mar. 31, 2023) (finding that "Class Period disclosures overall weigh against a strong inference of scienter").

### B.      Plaintiffs Fail To Allege "Strong Circumstantial Evidence" Of Conscious Misbehavior Or Recklessness.

Plaintiffs do not dispute that "[w]ithout a motive for a defendant to commit fraud, the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater."  MTD at 23 (quoting *Hawes v. Argo Blockchain PLC*, 2024 WL 4451967, at *16 (S.D.N.Y. Oct. 9, 2024) (alteration in original) (internal quotation marks omitted)).  Plaintiffs argue that, because Mann admittedly "knew throughout the Class Period that ASPI had not tested QE on uranium," they have easily plead conscious misbehavior.  Opp. at 19.

Tellingly, Plaintiffs make no attempt to distinguish *In re Aratana Therapeutics Inc. Secs. Litig.*, 315 F. Supp. 3d 737 (S.D.N.Y. 2018), or *Hawes* (quoted in MTD at 22–24).  In *Aratana*,

6

the Court rejected a similar scienter theory because "the AC lack[ed] any concrete allegations whatsoever regarding defendants' knowledge, *apart from the information defendants themselves disclosed*." 315 F. Supp. 3d at 765. *Hawes* stands on the same principle, rejecting a recklessness scienter theory predicated upon the defendants' knowledge where the complaint "fail[ed] to allege what information known by the Defendants was *contrary* to its statement ...." 2024 WL 4451967, at *18 (emphasis in original). *Aratana* and *Hawes* are instructive here. While Mann admittedly had knowledge that the Company had not tested QE on uranium, that information is not contrary to Defendants' disclosures—it is the essence of them. *See, e.g.*, FY 2023 10-K at 28 (ASPI "plan[s] to begin researching the enrichment of uranium ... using quantum enrichment.... [T]here is no proof that this technology has ever been used to enrich uranium.... Multiple regulatory agencies need to provide approvals to allow us to proceed with research and development necessary to show proof of concept [of QE] to the market.").

Plaintiffs' arguments around scienter also collapse in light of their invalid arguments that ASPI's statements were misleading. As addressed fully below, because there is no statement expressly stating that ASPI tested QE on uranium, Plaintiffs are left to argue that this was implied based on allegedly vague terms. *See, e.g.*, Opp. at 8 (arguing statement that "one of the advantages of our QE process is that we do it [*i.e.*, enrichment] in batches" necessarily means that "ASPI enriches *uranium* in batches"). As this Court held in *Hawes*: "The fact that a statement may be 'sloppy, contradictory and poorly drafted,' does not mean that it is 'consistent with the 'reckless disregard for the truth' required to allege scienter." 2024 WL 4451967, at *18. That is the most one might conclude from Defendants' statements that Plaintiffs strain to portray as impliedly false.

Finally, Plaintiffs argue the Complaint pleads scienter because "Defendants fail to offer a more plausible competing inference" (Opp. at 21), ignoring the most plausible (and dispositive)

competing inference imaginable—Defendants made no false or misleading statements; they instead disclosed the very information Plaintiffs claim was concealed.  MTD, *passim*.

III.    **PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MATERIAL MISREPRESENTATION OR OMISSION.**

A.    **ASPI Repeatedly Disclosed That Its QE Technology Has Never Been Used On Uranium—The Very Fact Plaintiffs Claim Was Concealed.**

The Motion to Dismiss quotes ASPI's extensive public disclosures that make clear its QE technology has never been used on uranium, only some of which Plaintiffs attempt to address (unsuccessfully) in the Opposition.  Those disclosures explicitly communicated to investors, *inter alia*: (a) "there is *no proof that [QE] has ever been used to enrich uranium*"; (b) ASPI was "*plan[ning] to begin research and development for the enrichment of uranium* to demonstrate [its] capability to produce [enriched uranium] *using Quantum Enrichment*"; and (c) in relation to QE, ASPI was only "in discussions" with various regulatory bodies "pursuing an approval *to conduct nuclear research*" and ASPI "*would need to obtain approval* from one of these regulatory bodies *in order to proceed with [its] nuclear research*."  MTD at 5–6.  There is no way to read these along with ASPI's many other disclosures to suggest, or leave open the possibility, that ASPI has ever used QE on uranium, whether in "tests" or otherwise.

Plaintiffs' arguments to the contrary do not withstand the slightest scrutiny.  Plaintiffs' speculation that government approvals might not be necessary to "test" or "experiment" with uranium enrichment (Opp. at 10)—stated without support—is all but foreclosed by several of ASPI's disclosures that the Opposition flatly ignores: (a) "We are awaiting the approvals necessary *to conduct early research and development efforts* for isotopes such as *Uranium-235 utilizing the Quantum Enrichment process*." (MTD at 24); and (b) "[W]e have not yet sought any regulatory approval that may be necessary for . . . *the production of U-235* that we may produce *using quantum enrichment*." (*id.* at 25).  In fact, even the disclosure quoted in the Fuzzy Panda Report—

8

a disclosure ASPI issued *during the putative class period*—is unequivocal: "If we receive permits and licenses *to enrich U-235* (which in itself is highly uncertain), we do not expect U-235 to be commercially available for at least several years, if ever." FP at 18. A non-existent "laboratory-scale" exception that allows for nuclear research without a license is found nowhere in these disclosures. Equally invalid is Plaintiffs' suggestion that an investor might read "there is no proof that [QE] has ever been used to enrich uranium" to mean, in effect, no proof *other than ASPI's proof*, which it cannot share publicly because it is confidential. Opp. at 11–12. While the English language itself does not permit such a reading, surrounding context explaining that ASPI must obtain approval to "begin researching" enrichment of uranium using QE (MTD at 3) leaves no room for misunderstanding.

Plaintiffs' backup argument that ASPI's disclosures were "superseded" by the Challenged Statements (Opp. at 12–13) fails because none of the Challenged Statements contradict the disclosures. *See In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 593 (S.D.N.Y. 2007) ("Given [the company's] regular, meaningful, and specific warnings regarding the issue . . . no reasonable investor could have been misled by [the challenged] statements."). Even if, based upon Plaintiffs' self-serving "inferences," the Challenged Statements could be viewed as contradictory, the law would still require dismissal. *In re Hyperion Sec. Litig.*, 1995 WL 422480, at *8 (S.D.N.Y. July 14, 1995), *aff'd sub nom. Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2 (2d Cir. 1996) ("[P]laintiffs cannot predicate their claims on inferences drawn from statements made during the roadshows, if, as here, those inferences are contradicted by specific disclosures in the prospectuses."). Plaintiffs' theory effectively seeks to hold Defendants liable for failing to repeat ASPI's full Form 10-K risk disclosures in every public statement, an argument rejected by courts in this circuit. *See, e.g.*, *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 108

9

(E.D.N.Y. 2021) ("[N]ot every public statement made by the Company need contain the full roster of disclosures detailed in the Company's securities filings."); *see also In re Meta Materials Inc. Sec. Litig.*, 2023 WL 6385563, at \*18 (E.D.N.Y. Sept. 29, 2023) (same). In any event, there can be no "superseding" of ASPI's disclosures because they repeated them *during the putative class period*, including in the 10-Q quoted in the Fuzzy Panda Report (*supra*), and in ASPI's prospectus for its public stock offering: "We are awaiting the approvals necessary to *conduct early research and development efforts* for isotopes such as *Uranium-235* utilizing the *Quantum Enrichment* process." Blanchard Decl., Ex. 3 at p. S-4; *see also id.* at pp. S-1 & S-20 (incorporating FY 2023 10-K by reference and directing investors to "pay special attention to" the disclosures therein).

Plaintiffs' last-ditch effort to avoid ASPI's disclosures is to cast Defendants' argument as a "truth-on-the-market" defense. Opp. at 13–14. ASPI asserts no "truth on the market" defense—recognized as a rebuttal of the fraud on the market presumption of reliance. *See Gagnon v. Alkermes PLC*, 2019 WL 2866113, at \*3 (S.D.N.Y. July 2, 2019) (denying motion for reconsideration of dismissal; "truth on the market" not implicated where dismissal not predicated upon materiality or reliance). ASPI is only invoking the legal proscription against "inferring" a meaning that pretends the Company did not disclose the opposite. This Court and others have not hesitated to reject Section 10(b) claims where, as here, the defendants disclosed the very information that was allegedly concealed. *See, e.g., Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at \*114 (S.D.N.Y. Sept. 19, 2024) (statement not actionable where "[t]he Company had already made multiple public disclosures" of allegedly concealed fact and could not be "liable for failing to reiterate that information"); *Curaleaf*, 519 F. Supp. 3d at 107 ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.").

10

In any case, Plaintiffs' "truth on the market" argument is based upon: (a) speculation that the Canaccord interviewer was "misled"; and (b) their own deposition testimony. Opp. at 14. Neither provides support. Even if Plaintiffs could assume without basis what the Canaccord interviewer supposedly believed (they cannot), that assumption cannot override ASPI's express disclosures. *See In re Nokia Corp. Secs. Litig.*, 2021 WL 1199030, at \*17 (S.D.N.Y. Mar. 29, 2021) (rejecting reliance on analyst conclusions to show statements misleading: "[T]he analysts' conclusions do not change the fact that Nokia made robust disclosures related to the integration."). As for Plaintiffs' self-serving and subjective deposition testimony, their arguments are procedurally invalid *ab initio*. *See In re Puda Coal Secs. Inc. Litig.*, 30 F. Supp. 3d 261, 272 n.3 (S.D.N.Y. July 14, 2014) (denying consideration of deposition testimony submitted in opposition to motion to dismiss as outside the complaint).

## B.    None Of The Challenged Statements Are Actionable.

While Plaintiffs argue that "falsity and materiality are generally questions for the jury" (Opp. at 4), pleading standards alone do not save the Complaint. "[A] plaintiff cannot simply use the motion to dismiss standard to transform a non-actionable statement into an actionable statement by peddling an implausible reading shorn of context." *Gagnon*, 2019 WL 2866113, at \*3. The Opposition confirms the Complaint's failure to plead an actionable misstatement or omission.

### 1.    Plaintiffs Improperly Challenge Statements Of Opinion And Puffery.

Without disputing that they are opinions, Plaintiffs argue Statements 1, 4, 8, and 11[5] are actionable for effectively the same reason—supposedly, *only* by testing QE on uranium could

---

[5]    Plaintiffs do not address the statements of opinion (expressing "beliefs") in Statements 7, 12, and 13 and thus waive any argument that they are actionable. *Colbert v. Rio Tinto PLC*, 2019 WL 10960490, at \*3 (S.D.N.Y. July 29, 2019). By contrast, Plaintiffs' argument that Defendants somehow waived arguments under the third *Omnicare* prong (Opp. at 15) is without basis—the core argument of the Motion to Dismiss is that none of the Challenged Statements "omitted information" such that the statements were "misleading to a reasonable investor." *Id.*

11

Defendants profess their beliefs about QE's potential uranium-enrichment capabilities without misleading investors. Opp. at 15–16. Plaintiffs provide no support for this proposition, and there is none. As this Court has held, "[t]he core inquiry when determining whether an omission renders an opinion misleading is whether the omitted facts 'conflict with what a reasonable investor would take from the statement itself.'" *In re Avon Sec. Litig.*, 2019 WL 6115349, at *17 (S.D.N.Y. Nov. 18, 2019) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1329 (2015)) (Opp. at 15). The allegedly omitted fact—*i.e.*, that ASPI has not yet tested QE on uranium—does not "conflict" with a reasonable interpretation of Defendants' "beliefs" as to what QE will achieve in enriching uranium, including processing nuclear waste into HALEU (AC ¶ 65), and enriching uranium "at an attractive price" (*id.* ¶ 71). As Plaintiffs state, reasonable investors "would understand Defendants to have a factual basis" for their beliefs. Opp. at 15. As pled, they do. Plaintiffs do not dispute ASPI has successfully used QE to enrich materials other than uranium, including Ytterbium. AC ¶ 70; *see also id.* ¶ 61 (Mann discussed lithium as an "example of quantum enrichment in a real world application"). And they do not dispute that laser enrichment technology (of which QE is one type) has been successfully used *to enrich uranium*. As the Fuzzy Panda Report itself states regarding uranium enrichment using dated but related AVLIS technology: "*[I]t works*, but evidently only at a small lab scale." FP at 15. That is more than sufficient "factual basis" for beliefs as to QE's uranium-enrichment capabilities. Opp. at 15.

The Opposition's arguments regarding puffery—directed at Statements 1, 7, and 12, but which ignore Statements 6 and 8—fare no better. Plaintiffs argue the statements are not puffery because they allegedly are "designed to distinguish the company to the investing public in some meaningful way." Opp. at 16 (quoting *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 229 (S.D.N.Y. 2019)). But there is no blanket rule precluding a statement from being deemed

12

puffery if it references competition. *See, e.g., Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569 (S.D.N.Y. 2018), *aff'd sub nom. Arkansas Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) (statements about how company's platform "differentiate[s] ourselves from our competitors around the world" deemed inactionable puffery). Plaintiffs' dissection of each statement fares no better. They contend Mann's statement, when displaying slide 26 of the Presentation, "[w]e think our quantum enrichment technology is perfect for enriching uranium" (Statement 1) is not puffery because *other* language in the Presentation is supposedly misleading (Opp. at 17). Not only does the Complaint fail to allege these other statements are misleading, they appear on slides 28, 29, and 33—in an entirely different context than Statement 1. Plaintiffs argue Statement 7, expressing beliefs regarding QE's enrichment capabilities, is not puffery because it "compar[es] QE to other technologies on concrete metrics such as 'capital efficiency.'" *Id.* No "concrete metrics" are provided. Capital efficiency is merely an area in which Defendants are optimistic about QE. Plaintiffs also argue descriptions of ASPI's technology as "advanced," "scalable," and "efficient" (Statement 12) are not puffery because they were included in the announcement of ASPI's term sheet with TerraPower, and thus a reasonable investor would "believe that ASPI had uranium enrichment test data to back up the premise that it could construct a commercially viable HALEU facility[.]" *Id.* at 17–18. Sales-talk adjectives are not transformed into statements of fact by employing them in an announcement of a term sheet.[6]

---

[6]    And Plaintiffs' other implied point—*i.e.*, that the statements convey success in testing QE on uranium—is again nothing more than an attempt to leap from the Company's optimism for QE on uranium based on its experience with other isotopes to a statement the Company does not make—that it has in fact proven successful in doing so.

13

2.       None Of The Remaining Challenged Statements Are False Or Misleading.

a.       *The Opposition's Arguments Regarding Statements 3, 6,
13, and 15 Conflate Different Technologies And Elements.*

As to the remaining Challenged Statements, the Opposition's primary tactic is to conflate statements that refer to different enrichment technologies (other than QE) and different chemical elements (other than uranium), and declare that reasonable investors would do the same to interpret the statements to mean ASPI has tested QE on uranium.  Without denying the statements conveyed the "literal truth," Plaintiffs claim to put the statements in "context" (*e.g.*, Opp. at 5, 8) when the actual "context" only exposes Plaintiffs' attempt to change their plain meaning.

Plaintiffs do not dispute the literal truth of Statement 3, which conveys that QE is based on "Real World Experience" and that ASPI's "team have used lasers to enrich many different metals," including "Uranium[.]" *Id.* at 5–6.  Rather, as best can be understood, Plaintiffs claim that, because the same slide deck refers to QE as "proprietary," any reasonable investor would necessarily conclude that the distinct laser technology that the "team" employed decades before was somehow QE.  *Id.* at 6.  Plaintiffs fail to explain how this would be the case, and the logic is far from self-evident.  It is also negated by the full "context" upon which Plaintiffs selectively rely.

Plaintiffs argue that Statement 6's heading "Proven Proprietary Technology" is misleading because "QE was far from '[p]roven' for uranium enrichment—it had never even been tested." *Id.* at 7.  Plaintiffs' insertion of "for uranium enrichment" is not "context" (*id.*)—it is Plaintiffs' rewrite of the statement.  Quite the contrary, the actual context around ASPI's "Proven Proprietary Technology" is not myopically focused on uranium—it is the totality of ASPI's technology as applicable across numerous chemical elements and the belief that the same technology will be successfully deployed on uranium as well.  *See, e.g.*, AC ¶ 61 (QE enrichment of lithium).

14

Plaintiffs similarly do not dispute the literal truth of Statement 13, in which Mann explained that "one of the advantages *of our QE process* is that we do it [*i.e.*, enrichment] in batches." Opp. at 8. Instead, Plaintiffs argue the statement is misleading by effectively rewriting it, suggesting Mann stated "ASPI enriches *uranium* in batches[.]" *Id.* That is not what Mann said, either expressly or by implication. Mann described how QE's small-batch enrichment process, tested and proven with other isotopes, leads ASPI to "believe" it will avoid "criticality" concerns that arise when enriching uranium. AC ¶ 82. Nowhere does Mann or ASPI state, as Plaintiffs claim, "that ASPI was *presently* using QE to enrich uranium." Opp. at 8 (emphasis in original).

The Opposition also fails to rehabilitate Statement 15, where ASPI's Viktor Petkov (not a Defendant) answered the question "Do you have a timeline for commercial operation of *your technology*?" AC ¶ 86. Petkov responded: (a) ASPI's "*technology* is fully prepared for deployment, pending the necessary approvals to operate an *isotope* [not uranium] enrichment facility"; (b) ASPI was "targeting 2025/2026 for the production of *Lithium-6 and Lithium-7*"; and (c) by contrast, ASPI was "engaged in discussions with multiple governments to secure authorization for the construction of a *uranium* enrichment plant[.]" *Id.* Plaintiffs' only argument that the foregoing would mislead an investor to believe ASPI has tested QE on uranium is their conflation of technologies and elements. The argument fails.

b.      *Statement 2*

While criticizing the Motion to Dismiss as purportedly ignoring "context" (Opp. at 5), Plaintiffs myopically dissect a single slide in the Presentation to reach their ultimate preferred inference, ignoring the Presentation's surrounding language (because it runs directly counter to their theory) as well as ASPI's repeated public disclosures that it has not yet used QE on uranium. In short, the Opposition contends that, because the chart on slide 28 refers to metrics that are (they

15

claim) associated with uranium enrichment, investors would necessarily assume that ASPI has tested QE on uranium. *Id.* at 4–5. Plaintiffs' argument is untenable for several reasons.

First, the Presentation itself—*i.e.*, the "context" Plaintiffs advocate for—belies Plaintiffs' desired inference. The Presentation is a "Corporate Overview" of ASPI's entire isotope business, including medical, semiconductor and nuclear applications. After 23 slides explaining what isotopes are and how they will be utilized in other business lines, the Presentation turns to nuclear energy applications and the need for cost-effective, enriched uranium, explaining: "We believe that our proprietary Single Stage Quantum Enrichment Technology provides an ideal solution ..." Presentation at 26. The next slide titled "Our Technology: What is Quantum Enrichment?" explains how isotopes generically, not uranium specifically, can be separated using "quantum mechanics," concluding in bold: "***In principle*, Quantum Enrichment can separate isotopes of *most elements*, achieving desired enrichment in a single step.**" *Id.* at 27 (italics added). ASPI thus emphasized its belief regarding QE's potential as based on scientific *principles*. The next slide—the entire focus of Plaintiffs' argument—then compares enrichment methods that utilize what Plaintiffs allege to be uranium-related metrics (selectivity, SWU, etc.). Only by selectively ignoring the entire context in which slide 28 appears (as Plaintiffs do) might one speculate that the data is based on testing as opposed to the "principles" referenced in the slide immediately before. But even if an investor missed the preceding slide, any such speculation is debunked by the very next slide, titled "Quantum Enrichment: *Real World Experience*," highlighting "the only isotopes where results have been published"—lithium. AC ¶ 61; MTD at 13. If there existed any "real world experience" regarding QE on uranium (the point of the segment in the Presentation), it is hard to understand why lithium is showcased instead. The Opposition has no response to this.

Second, the Presentation was given after ASPI's repeated public disclosures that QE has not been used on uranium, and that ASPI lacks a license to do so. *See supra* at 8–9. Plaintiffs' contention that strained inferences derived from a handful of references to scientific metrics in slide 28's chart are sufficient to overcome ASPI's "regular, meaningful, and specific" disclosures is legally invalid. *In re IAC/InterActiveCorp*, 478 F. Supp. 2d at 593.[7]

c.      *Statement 5*

Plaintiffs argue that a chart placing QE uranium enrichment in the "R&D Stage" is misleading because a reasonable investor "would understand [it] to mean that QE had at a minimum been tested on U-235 on a laboratory scale[.]" Opp. at 6. They base this claim on the fact that the chart also put Lithium-6—which has been enriched using QE—in the same "R&D Stage." *Id.* One can "research and develop" a process without conducting laboratory "tests" on it, and even conclude from that research that a process might work "in principle," as ASPI disclosed in the Presentation as noted above. Plaintiffs' argument lacks merit.

d.      *Statements 9–12*

Plaintiffs' arguments directed at ASPI's announcement of the TerraPower term sheet confirm that Statements 9–12 do not support a Section 10(b) claim. Plaintiffs do not contend that any part of these statements was false. *Id.* at 7–8. Rather, they essentially argue that ASPI's accurate description of the term sheet misled investors because, in their view, ASPI will fail to perform under the anticipated agreement. *See id.* at 7 (arguing statements misleading because Defendants "lacked any basis" to believe ASPI will be able to construct HALEU facility). Plaintiffs' opinions about the prospects of QE do not make true statements misleading. Plaintiffs'

---

[7]      It is also telling that, mere weeks later, ASPI issued a press release announcing its successful enrichment of Ytterbium in a non-commercial quantity (*i.e.*, a "test") using QE. AC ¶ 70. If ASPI conducts testing, it does not cryptically insinuate the fact—it discloses and celebrates it, as one would expect.

17

case law involves defendants expressly misrepresenting the consequences of a tentative agreement, and is thus readily distinguishable. *See In re Vaxart, Inc. Secs. Litig.*, 576 F. Supp. 3d 663, 670–71 (N.D. Cal. Dec. 22, 2021) (stating MOU "would enable [it] to produce 'a billion doses'" of vaccine per year actionable where company concealed vaccine was not FDA approved).

e.     *Statement 14*

Plaintiffs argue Petkov's statement that ASPI was "focusing on" producing nuclear fuels was misleading because QE has not been "shown capable of enriching uranium." Opp. at 9. But Petkov did not claim that ASPI has shown it can use QE to enrich uranium. Nor does the interviewer's question—asking what "current technology" ASPI was "working on"—render Petkov's statement false or misleading. That ASPI has not tested QE on uranium does not mean it is not "current[ly]" "working on" the technology. *Id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice. *See Nokia*, 2021 WL 1199030, at *21 (dismissing with prejudice: "Given Nokia's numerous and continuous disclosures . . . it is not plausible that the challenged statements were misleading to a reasonable investor. . . . Leave to amend is therefore denied as futile.") (internal citation omitted). Specifically with respect to Defendant Kiessling, Plaintiffs concede that, while they have not dismissed her, "Kiessling is not named as a defendant in the operative Amended Class Action Complaint" (Opp. at 1 n.1) and make no argument against her dismissal. All claims against Kiessling should be dismissed for this reason alone.

Dated:  August 15, 2025

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Michael D. Blanchard*
Michael D. Blanchard
Christopher M. Wasil
One State Street
Hartford, CT 06103
(860) 240-2700
michael.blanchard@morganlewis.com
christopher.wasil@morganlewis.com

Laura Hughes McNally
Karen Pieslak Pohlmann
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000
laura.mcnally@morganlewis.com
karen.pohlmann@morganlewis.com

Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000
brian.herman@morganlewis.com

*Attorneys for Defendants ASP Isotopes Inc., Paul E.*
*Mann, and Heather Kiessling*

19