**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LEONE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ASP ISOTOPES INC., PAUL E. MANN, and HEATHER KIESSLING, <br><br> Defendants. | Case No. 1:24-cv-09253-CM |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.      DEFENDANTS FAIL TO REBUT THE *BASIC* PRESUMPTION ....................... 1

          A.    The November 27 Stock Price Decline Was Statistically
Significant ................................................................................................ 2

          B.    The Canaccord Interview And Resulting Stock Decline Show Price
Impact ...................................................................................................... 2

          C.    Defendants' Misleading Statements Match The Fuzzy Panda
Research Report ...................................................................................... 3

          D.    Common Issues Predominate For The Class, As Defined .......................... 5

    II.     LEONE AND AGAPCHEV ARE ADEQUATE CLASS
REPRESENTATIVES ................................................................................... 6

          A.    Leone and Agapchev Are Knowledgeable, Committed, And
Interested ................................................................................................ 6

          B.    Leone Voluntarily Corrected Inadvertent Errors In His Transaction
Lists ........................................................................................................ 7

          C.    Leone And Agapchev Are Committed To Working Together To
Advance The Class's Interests .................................................................. 9

          D.    Leone Believes The Fuzzy Panda Research Report Was Accurate .......... 10

CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

### CASES

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ........................................................................................ 4, 5

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ...................................................................................................... 1

*Bennett v. GoDaddy.com LLC*,
2019 WL 1552911 (D. Ariz. Apr. 8, 2019) ................................................................ 5

*Bhojwani v. Pistiolis*,
2007 WL 9228588 (S.D.N.Y. July 31, 2007) ............................................................ 8

*Borteanu v. Nikola Corp.*,
348 F.R.D. 239 (D. Ariz. 2025) .................................................................................. 4

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
2023 WL 2932485 (D. Conn. Apr. 13, 2023) ........................................................... 10

*Crass v. Yalla Grp. Ltd.*,
2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021) .............................................................. 9

*Crews v. Rivian Auto., Inc.*,
2024 WL 3447988 (C.D. Cal. July 17, 2024) ......................................................... 2, 3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ...................................................................................................... 3

*Erickson v. Jernigan Cap., Inc.*,
692 F. Supp. 3d 114 (S.D.N.Y. 2023) ..................................................................... 6, 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332, 345 (S.D.N.Y. 2015) ..................................................................... 6, 9

*Ferris v. Wynn Resorts Ltd.*,
2023 WL 2337364 (D. Nev. Mar. 1, 2023) ............................................................. 2, 4

*Glauser v. EVCI Ctr. Colleges Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ................................................................................ 9

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113 (2021) ................................................................................................. 1, 2

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ..................................................................................................... 1

*Hunt v. Enzo Biochem, Inc.*,
530 F. Supp. 2d 580 (S.D.N.Y. 2008) ......................................................................... 3

*In re Allergan PLC Sec. Litig.*,
2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) ........................................................... 10

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) ...................................................... 1, 5, 6

*In re Apple Inc. Sec. Litig.*,
2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ................................................................. 7

*In re Cassava Scis., Inc.*,
2025 WL 1465045 (W.D. Tex. May 21, 2025) ............................................................ 5

*In re Concho Res., Inc.*,
2025 WL 1040379 (S.D. Tex. Apr. 7, 2025) ........................................................... 4, 5

*In re Credit Suisse Sec. Fraud Class Actions*,
2025 WL 1866293 (S.D.N.Y. July 7, 2025) .............................................................. 10

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) ............................................................. 5

*In re NIO, Inc. Sec. Litig.*,
2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ........................................................... 4, 6

*In re Paysafe Ltd.*,
2022 WL 1471122 (S.D.N.Y. May 10, 2022) .............................................................. 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019) .......................................................... 2, 6

*In re SLM Corp. Sec. Litig.*,
2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ............................................................ 7, 8

*In re: Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) ................................................................................. 9

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................................. 7, 8, 9

*Pearlstein v. BlackBerry Ltd.*,
 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ......................................................................... 4, 10

*Shiring v. Tier Techs., Inc.*,
 244 F.R.D. 307 (E.D. Va. 2007) ...................................................................................... 8

*Shupe v. Rocket Companies, Inc.*,
 752 F. Supp. 3d 735 (E.D. Mich. 2024)........................................................................... 8

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
 2024 WL 1497110 (S.D.N.Y. Apr. 5, 2024)...................................................................... 4, 5

*Strougo v. Barclays PLC*,
 312 F.R.D. 307 (S.D.N.Y. 2016) ..................................................................................... 1

*Tai Jan Bao v. SolarCity Corp.*,
 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) .................................................................. 8

*Wagner v. Barrick Gold Corp.*,
 251 F.R.D. 112 (S.D.N.Y. 2008) ..................................................................................... 6

*Wilson v. LSB Indus., Inc.*,
 2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)................................................................... 8

**INTRODUCTION**

Defendants fail to negate the strong showing for class certification made in Plaintiffs' motion.[1] Defendants attempt to rebut predominance and the *Basic* presumption, but provide *zero* evidence, and rely without any analysis on a mere handful of inapposite cases. Defendants argue that Plaintiffs Leone and Agapchev are inadequate by baselessly attacking Mr. Leone, and by selectively quoting deposition excerpts out of context, but Plaintiffs' involvement in and knowledge of this case proves their adequacy. Defendants' arguments are without merit.

**ARGUMENT**

**I.    DEFENDANTS FAIL TO REBUT THE *BASIC* PRESUMPTION**

Plaintiffs have established the fraud-on-the-market presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). *See* ECF No. 38 at 9-23. Defendants do not dispute Plaintiffs' showing of market efficiency, they merely try to rebut the presumption. Such rebuttal requires "direct, more salient *evidence* showing that the alleged misrepresentation did not actually affect the stock's market price." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014); *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 125 (2021) (defendants must "*sever[] the link* between the alleged misrepresentation and . . . the price"). Defendants "must demonstrate under the preponderance-of-the-evidence standard, using event studies or other means, that the other events explain the *entire* price drop." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *10 (S.D.N.Y. Sept. 8, 2021). Attempts at rebuttal "will not ordinarily present a serious obstacle to class certification." *Strougo v. Barclays PLC*, 312 F.R.D. 307, 324 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017).

---

[1] Capitalized terms used but not defined herein have the same meanings as in the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint" or "¶_"), ECF No. 28. Unless otherwise noted, all internal quotes and citations are omitted, and all emphasis is added.

Defendants here submit no expert report, no event study, and no evidence. Therefore, they fail to carry their burden to disprove price impact or rebut the *Basic* presumption. *See, e.g.*, *Ferris v. Wynn Resorts Ltd.*, 2023 WL 2337364, at *8 (D. Nev. Mar. 1, 2023) (defendants "fail[] to meet their burden of showing a lack of price impact" where they "do not present any evidence").

### A.    The November 27 Stock Price Decline Was Statistically Significant

Defendants argue that Plaintiffs must show that ASPI's 14.2% (¶112) stock price decline on November 27, 2024 was statistically significant to invoke the *Basic* presumption. This argument is wrong,[2] and also moot. The November 27 price decline is statistically significant at (and above) the 95% level. *See* Expert Reply Report of Zahn Bozanic, Ph.D., at ¶¶16-17 (filed herewith as Exhibit 1 to the Declaration of Garth Spencer ("Reply Decl.")). Defendants argue that other *unspecified* news might have contributed to the price decline. But even where specific confounding information is identified, "[m]erely suggesting that another factor . . . also contributed to an impact on a security's price does not establish that the fraudulent conduct . . . did not also impact the price." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *17 (S.D.N.Y. July 10, 2019).

### B.    The Canaccord Interview And Resulting Stock Decline Show Price Impact

Defendants assert, citing no authority, that Plaintiffs must show that the Canaccord interview was "publicly available" to invoke *Basic*. That is false. Plaintiffs must show the *misrepresentations* were publicly known. *See Goldman*, 594 U.S. at 118. "Publicly available" corrective disclosures are *not* one of the requirements to invoke *Basic*. *See id*. The *Basic* presumption concerns class members' reliance on the integrity of the stock price *at the time of their purchases*. Defendants are making a loss causation argument, but the Supreme Court has

---

[2] Plaintiffs need not show "statistically significant" declines because their "burden to prove loss causation later in this action . . . does not alter *Defendants'* present burden to prove lack of price impact." *Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *15 (C.D. Cal. July 17, 2024).

2

"never before mentioned loss causation as a precondition for invoking *Basic*'s rebuttable presumption of reliance." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011).

In any event, the interview was disseminated. *See* ECF No. 46 at 24-25. It was conducted by a prominent analyst at Canaccord, which had recently sold $18.6 million of ASPI stock to its clients. Canaccord was thus interested in ASPI's response to the Fuzzy Panda Research report. ¶¶50 & n.4, 54-56. ASPI publicly promoted the interview in advance as providing "transparency and open communication," listing its time and date. ECF No. 47-3. While Defendants quibble that Plaintiffs have not pled how many people listened to the interview live, Gianarikas stated during the interview that "it looks like we have *a lot* of people on our webcast. There's a lot of interest in what you're doing. Somewhat controversial recently for obvious reasons." *See* link at note 3, at 58:45. Plaintiff Leone watched ASPI's stock price "plummet[]" *during* the interview. ECF No. 47-1 at 73:15-74:18. While not required to certify the Class, this shows the interview was disseminated and the price dropped in response. *See Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 597 (S.D.N.Y. 2008). Defendants do not provide *any* evidence negating the interview's price impact.[3]

**C.    Defendants' Misleading Statements Match The Fuzzy Panda Research Report**

Defendants argue there is a mismatch between their misleading statements and the Fuzzy Panda Research report because they claim ASPI previously disclosed the truth. This is merely a repackaging of their truth-on-the-market defense, which is meritless for the reasons detailed in Plaintiffs' motion to dismiss opposition, not least of which is that "*ASPI never disclosed its failure to test [Quantum Enrichment] on uranium*." ECF No. 46 at 10-14. Courts routinely reject similarly unsubstantiated truth-on-the-market arguments as to price impact. *E.g.*, *Rivian*, 2024 WL 3447988,

---

[3] Defendants vaguely attempt to sow doubt about the interview, but they do not dispute that Plaintiffs' quotations are accurate. A recording of the interview is publicly available online, so Plaintiffs' allegations are readily verified. *See* https://m3u8play.dev/?url=https://content-nc.webcaster4.com/2332/51711/AE1584D9/archive_601532/master.m3u8 (last visited 8/14/25).

at \*12-13 (defendants' "vague[] . . . disclosures" did not disprove price impact where analysts were "surprise[ed]" by the corrective information); *Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 260 (D. Ariz. 2025) (rejecting argument that "the relevant facts . . . were already publicly known").

Though "the alleged disclosure need only relate to" a misrepresentation and need not be a "mirror image," *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at \*18 (S.D.N.Y. Jan. 26, 2021) (cleaned up), the Fuzzy Panda Research report closely matches Defendants' statements. For example, ASPI told investors on a slide titled "Quantum Enrichment: Real World Experience" that "[o]ur team have used lasers to enrich . . . Uranium" (¶63), and when asked in an interview focused on nuclear energy about "commercial operation" of ASPI's technology, its executive replied by referring to HALEU and stating "[o]ur technology is fully prepared for deployment" (¶86). Such statements match the report's revelations that a former executive of ASPI's predecessor implied ASPI had not tested QE on uranium (ECF No. 28-5 at 18), and that QE of uranium faced daunting, *unresolved* technological challenges. ¶¶93-100; *see, e.g.*, *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at \*14-16 (E.D.N.Y. Aug. 8, 2023) (statement that project was under construction matched disclosure of its termination); *Wynn Resorts*, 2023 WL 2337364, at \*10 (general denials of executive's misconduct matched disclosure of his specific actions).

Defendants quote out of context from *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 102 (2d Cir. 2023) ("*ATRS*") to argue that "a searching price impact analysis must be conducted" here, but they do not conduct *any* analysis, instead merely citing three inapposite cases.[4] In each of those cases, unlike here, the defendants introduced *evidence*,

---

[4] Defendants omit that a "searching" analysis is only required where, unlike here, there is "a considerable gap in front-end–back-end genericness" and "the plaintiff claims . . . that a company's generic risk-disclosure was misleading by omission." *ATRS*, 77 F.4th at 102. Their cases are inapposite. *See In re Concho Res., Inc.*, 2025 WL 1040379, at \*16-17 (S.D. Tex. Apr. 7, 2025) (statements about financial results from 2017-18 were not corrected by 2019 results) *Sjunde AP-*

including expert reports, to disprove price impact. *ATRS*, 77 F.4th at 104; *Concho*, 2025 WL 1040379, at \*13; *Kirkland*, 2024 WL 1342800, at \*9; *Sjunde*, 2024 WL 1497110, at \*5.

Finally, "the genericness and mismatch inquiries go to the value of the *back-end* price drop as *indirect* evidence of a front-end, inflation-maintaining price impact." *ATRS*, 77 F.4th at 93. Plaintiffs do not rely solely on the inflation maintenance theory, as they have also provided *direct* evidence of *front-end* price impact: statistically significant ASPI stock price increases following the October 17, 2024 and October 30, 2024 misleading statements. ECF No. 39-1 at E-7. While Defendants' undeveloped "mismatch" argument fails as to back-end price impact as discussed above, it has no bearing at all on Plaintiffs' direct evidence of front-end price impact.

### D.    Common Issues Predominate For The Class, As Defined

Defendants claim, again without *any* authority, that Plaintiffs cannot invoke *Basic* because the Class Period ends on November 26, 2024, rather than the precise time of the Canaccord interview on November 27. But "[t]here is no rule that a Class Period must include the date of the last corrective disclosure." *In re Cassava Scis., Inc.*, 2025 WL 1465045, at \*3 (W.D. Tex. May 21, 2025); *cf. Bennett v. GoDaddy.com LLC*, 2019 WL 1552911, at \*12 (D. Ariz. Apr. 8, 2019) ("Defendant does not cite any authority requiring certification of the broadest possible class"). The Class Period's end date is common to all Class members, so individual issues do not predominate.

Like here, the overwhelming majority of securities actions define their classes, and calculate price inflation, in terms of days, not hours or minutes. *E.g.*, *Allergan*, 2021 WL 4077942, at \*17 (certifying purchasers "between January 30, 2017 and December 19, 2018"); *id.* at \*14 ("one can estimate the price inflation due to the alleged fraud for each *day* during the Class

---

*Fonden v. Goldman Sachs Grp., Inc.*, 2024 WL 1497110, at \*17 (S.D.N.Y. Apr. 5, 2024) (that CEO met with financier did not render false statement about lack of client relationship in prior acquisition); *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at \*11 (S.D.N.Y. Mar. 29, 2024) (statement about future targets did not match disclosure of acquisition's current state).

5

Period"); *Signet*, 2019 WL 3001084, at *21 (certifying purchasers "from August 29, 2013 to May 25, 2017"); *id.* at *20 (approving damages method based on "*daily* levels of inflation").

## II. LEONE AND AGAPCHEV ARE ADEQUATE CLASS REPRESENTATIVES

The adequacy requirement is "designed to weed out potential lead plaintiffs with fundamental conflicts of interest that go to the very heart of the litigation." *Allergan*, 2021 WL 4077942, at *7. Defendants fail to identify *any* conflicts here, let alone "fundamental" ones.

### A. Leone and Agapchev Are Knowledgeable, Committed, And Interested

Plaintiffs have "demonstrated a commitment to the class by" *inter alia*, "sit[ting] for a … deposition, agreeing to testify at trial and otherwise participating in the litigation by reviewing the pleadings filed … and meeting with … counsel." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 127 (S.D.N.Y. 2023); ECF No. 39-2 ¶8; ECF No. 39-3 ¶8. They are knowledgeable about the facts at issue. *E.g.*, ECF No. 45-2 (Leone Tr.) at 100:1-101:5; ECF No. 45-4 (Agapchev Tr.) at 73:19-74:20. Defendants cavil that Plaintiffs did not recall certain details at their depositions, but "[c]ourts rarely deny class certification on the basis of the inadequacy of class representatives, doing so only in flagrant cases, where [they] display an alarming unfamiliarity with the suit." *Facebook*, 312 F.R.D. at 345. Plaintiffs' deposition testimony more than suffices to show their strong knowledge of the case and "active involvement in the litigation at the level to be reasonably expected from a non-expert plaintiff." *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *9 (E.D.N.Y. Aug. 8, 2023); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 118 (S.D.N.Y. 2008).

They suffered substantial losses on their ASPI investments. Leone lost roughly $150,000. Complaint at 1 n.1. Agapchev lost approximately $34,000. *See* ECF No. 28-3. They are educated and experienced investors, entrepreneurs and managers, well capable of overseeing the litigation. ECF No. 39-2 ¶2; ECF No. 39-3 ¶2. They are committed to continued participation in the case, and to seek a recovery that is fair and beneficial to all Class members. Leone Tr. at 101:12-21;

6

Agapchev Tr. at 105:20-106:15; ECF No. 39-2 ¶¶7, 11; ECF No. 39-3 ¶¶7, 11.

    **B.**       **Leone Voluntarily Corrected Inadvertent Errors In His Transaction Lists**

When moving to be appointed lead plaintiff, Leone's certification mistakenly only included his ASPI stock trades for November 25-26, 2024. ECF No. 7-2. In his certification filed with the amended complaint, Leone corrected that error to include all trades in his brokerage account during the Class Period. ECF No. 28-1. The vast majority of Leone's ASPI trades, both in number and dollar value, were in his brokerage account. *See* ECF No. 28-1 (brokerage account held 120,000 ASPI shares at the end of the Class Period); ECF No. 39-2 ¶3 (IRA held 2,391 ASPI shares at end of Class Period, less than 2% of Leone's total ASPI holdings). Though three Class Period IRA purchases were inadvertently omitted—Leone was primarily focused on his much larger brokerage account trades, was unsure about purchase timing in his IRA, and was in the process of obtaining transaction data from the account's custodian[5]—Leone fixed that error too. ECF No. 39-2 ¶3.

Leone acted in good faith and voluntarily fixed these mistakes. "Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith." *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012); *e.g.*, *Erickson*, 692 F. Supp. 3d at 128 ("the admitted error in Erickson's declaration about the amount of stock he held was later corrected," and "compared to Erickson's other activities on behalf of the class, do[es] not suggest an overall lack of diligence"); *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *5 (N.D. Cal. Feb. 4, 2022) (similar). Defendants cite *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015), but there this Court appointed a lead plaintiff and characterized arguments about his error in filing two motions with different law firms as a "tempest in a teacup"

---

[5] On or about May 21, 2025 Leone requested documents from his IRA custodian so he could identify relevant trades. Leone received the documents in the mail on or about June 13, 2025, and disclosed his Class Period IRA trades in his June 23, 2025 declaration (ECF 39-2 ¶3).

where, like Leone, the plaintiff "admits that he made a mistake. He rectified it. He seems to care very much about obtaining relief in light of the substantial losses he . . . suffered." *Id.* at 537.[6]

Leone's lead motion reflected a loss of $208,049. ECF No. 6 at 6. Had his earlier brokerage account trades been included, his losses would have been roughly $150,000. ECF No. 28 at 1 n.1. All competing movants had far smaller losses. ECF No. 9 at 5 ($11,528); ECF No. 11 at 9 ($6,947); ECF No. 14 at 9 ($19,921). Including the three IRA purchases would have *increased* his loss by $4,998. Reply Decl. Ex. 3. That these errors do not affect which movant had the largest financial interest further shows they were harmless. *See Tai Jan Bao v. SolarCity Corp.*, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014) (corrections reduced loss "from $233,386 to $100,169" but plaintiff "still has a greater financial interest"); *SLM*, 2012 WL 209095, at *8–9 (similar).

Defendants imply that Leone exited his entire position in ASPI stock on November 22, 2024, but that is incorrect. He sold the shares in his brokerage account on that date, before going on to purchase many more over November 25-26. *See* ECF No. 28-1. And he retained shares in his IRA from November 5, 2024 through the end of the Class Period. ECF No. 39-2 ¶3. Even if he had sold all his shares before acquiring more during the Class Period, that would not affect his adequacy. *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *6 (S.D.N.Y. Aug. 13, 2018).

Defendants baselessly accuse Leone of "deception" and "bur[ying]" his corrected trade information. Leone's voluntary correction of these errors, and his mistaken omission of IRA purchases that would have only *increased* his losses, disprove any intent to deceive. There was no attempt to hide the corrections—Leone disclosed them up front in his court filings (ECF No 28 at

---

[6] Defendants' other cases are distinguishable. *See Shupe v. Rocket Companies, Inc.*, 752 F. Supp. 3d 735, 793–95 (E.D. Mich. 2024) ("borderline nonsensical" testimony raised credibility concerns); *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) ("the data still [did] not quite add up" after correction); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (errors considered in conjunction with plaintiff's reliance on non-public information).

1 n.1; ECF No. 28-1; ECF No. 39-2 ¶3). Leone transparently corrected these honest mistakes.

### C.    Leone And Agapchev Are Committed To Working Together To Advance The Class's Interests

Defendants assert that Plaintiffs are inadequate because they did not know each other prior to this litigation. However, even on lead plaintiff motions, "the majority of courts . . . have permitted unrelated investors to join together as a group . . . on a case-by-case basis, if such a grouping would best serve the class." *In re Paysafe Ltd.*, 2022 WL 1471122, at *5 (S.D.N.Y. May 10, 2022); *e.g.*, *Crass v. Yalla Grp. Ltd.*, 2021 WL 5181008, at *6 (S.D.N.Y. Nov. 8, 2021) (appointing "relatively small and therefore presumptively cohesive" group of two investors). At class certification, where "the dangers are not the same as those presented by lawyers bundling unrelated clients together to win a lead plaintiff appointment," courts routinely appoint multiple representatives. *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016), *aff'd in part, vacated in part*, 862 F.3d 250 (2d Cir. 2017); *e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 337 (S.D.N.Y. 2015) (appointing nine class representatives).

Appointing both Plaintiffs would best serve the Class. They are both well qualified to serve, and have shown they can work together. Plaintiffs are filing a joint declaration attesting to their three calls together, with and without counsel present, and their intention to continue jointly overseeing the case. Reply Decl. Exhibit 2 at ¶¶2-3. Plaintiffs support each other's appointment to ensure that if one is not appointed or unexpectedly ceases to be a class representative, "the Class would continue to be represented by an investor with a strong knowledge of the case, a significant financial interest . . . and a demonstrated commitment to advancing the Class's interests." *Id.*[7]

---

[7] Defendants again cite *Khunt*, but there, unlike here, a lead plaintiff movant was merely "engage[d] in unseemly jockeying for the position of biggest loser." 102 F. Supp. 3d at 535. Defendants also cite *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006), where the Court denied a request "to appoint co-Lead Counsel," that would "only serve to fracture the leadership and drive up attorneys fees," but here, Plaintiffs are represented by

**D.        Leone Believes The Fuzzy Panda Research Report Was Accurate**

Defendants incorrectly argue that Leone cannot be a class representative because he bought ASPI stock after the Fuzzy Panda Research report's publication. That Leone bought shares after a "partial corrective disclosure . . . does not render him atypical." *Pearlstein*, 2021 WL 253453, at *9. A representative's "reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [he] relied on the integrity of the market during the class period." *Id.* at *10; *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *6 (D. Conn. Apr. 13, 2023) (representative's views "at the time of the alleged corrective disclosures" were immaterial to whether it "acted in reliance on the market price").

Defendants misstate Leone's testimony. He testified that after hearing the Canaccord interview and reviewing the Fuzzy Panda report, he thought it "was pretty accurate," *e.g.*, revealing that ASPI's depiction of QE had falsely touted "old technology that didn't work." Leone Tr. at 132:9-133:4. When Fuzzy Panda published its report, Leone was upset and asked ASPI to respond. *Id.* at 132:1-8; ECF No. 45-3. ASPI emailed Leone back, *attaching its public press release*, and he bought more shares to reduce his average purchase price—an entirely typical investment strategy. *See* ECF No. 45-3; ECF No. 47-3; Leone Tr. at 128:16-129:13 and 130:5-13. Leone relied on public information and the integrity of the market, making him typical of the Class. *See In re Credit Suisse Sec. Fraud Class Actions*, 2025 WL 1866293, at *9 (S.D.N.Y. July 7, 2025).

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to certify the Class.

---

the same counsel. Defendants cite *In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *6 (S.D.N.Y. Sept. 29, 2020), but there the plaintiffs "devised a secret workaround" to an order designed to avoid duplicative work. *Id.* at *6-8. Here, only GPM is now representing Plaintiffs, and The Law Offices Of Frank R. Cruz ("Cruz") is no longer involved. Leone Tr. at 50:6-24; Agapchev Tr. at 67:17-68:2. GPM will not request any payment relating to Cruz's prior work in this action, and will not pay Cruz any fees or expenses that may be awarded in this action.

DATED: August 15, 2025

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By: */s/  Garth Spencer*
Garth Spencer (GS-7623)
Robert V. Prongay
John C. Roberts (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: gspencer@glancylaw.com
rprongay@glancylaw.com
jroberts@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email:  glinkh@glancylaw.com

*Lead Counsel for Lead Plaintiff Mark Leone and Plaintiff Ivan Agapchev*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On August 15, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 15, 2025.

*/s/ Garth Spencer*
Garth Spencer