# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 1:24-cv-09253-CM

MARK LEONE, Individually
and on Behalf of All Others Similarly
Situated,

Plaintiff,

v.

ASP ISOTOPES INC., PAUL E. MANN,
and HEATHER KIESSLING,

Defendants.

EXPERT REPLY REPORT OF ZAHN BOZANIC, PH.D.

August 5, 2025

Table of Contents

I.      Introduction....................................................................................................................1

II.     Summary of Opinions....................................................................................................2

III.    Efficiency Factors and Event Study Analysis................................................................3

IV.     Conclusion ....................................................................................................................6

## I.     Introduction

1.     On June 26, 2025, I submitted an expert report in this matter (my "Opening Report"), in which I concluded that the market for ASP Isotopes Inc. ("ASPI") Common Stock was efficient throughout the Class Period. I also concluded that damages can be calculated on a class-wide basis subject to a common methodology in this matter on Plaintiffs' claims under §10(b) and §20(a) of the Exchange Act.[1] I continue to hold the opinions expressed in my Opening Report.

2.     Following the submission of my Opening Report, Counsel for Plaintiffs provided me with Defendants' Opposition to Plaintiffs' Motion for Class Certification, dated July 25, 2025 (Doc. 44) ("Defendants' Opp. Brief"). Plaintiffs' attorneys have asked me to respond to certain arguments regarding my Opening Report opinions contained within Defendants' Opp. Brief.

3.     My qualifications (including my CV) and rate of compensation for work in this matter were identified in my Opening Report and so I do not repeat them here.

4.     In formulating my opinions set forth in this Expert Reply Report, I have relied upon the analyses already described in my Opening Report, as well as my knowledge, experience, and formal training in economics, finance, and statistics, in addition to the allegations and facts set forth in this matter. All of the materials I have considered in forming my opinions are identified in **Appendix A** to this Reply Report, in addition to those previously identified in Appendix B to my Opening Report.

5.     I reserve the right to amend this report to reflect new information that becomes available to me in light of the discovery process and/or future rulings from the Court.

---

[1] Opening Report, ¶¶ 3, 93, and Sections V and VI. Capitalized terms in this report have the same meaning as in my Opening Report.

## II.    Summary of Opinions

6.    Nothing in Defendants' Opp. Brief disturbs the opinions expressed in my Opening Report. There are a number of important opinions I express in my Opening Report that Defendants do not dispute. First, Defendants do not dispute my conclusion that ASPI's Common Stock traded in an efficient market throughout the entirety of the Class Period. In my Opening Report, I tested the market efficiency of ASPI's Common Stock by evaluating the *Cammer* and *Krogman* factors.[2] Defendants do not dispute my analyses of or my conclusions regarding *any* of these factors.

7.    Second, Defendants do not offer any criticism of the event study regression specified in my Opening Report. Defendants do not put forward their own event study, nor do they dispute that I performed a valid event study regression that controls for market and industry effects that accurately measures the abnormal returns exhibited by ASPI's Common Stock during the Class Period and on the alleged corrective disclosure dates. They also do not dispute that an event study regression, like the one I conducted in my Opening Report, is one of the economically valid methods for analyzing a cause-and-effect relationship between company-specific information and stock prices under the fifth *Cammer* factor, and for conducting a loss causation and damages analysis.

8.    Third, Defendants do not dispute that the damages methodology (*i.e.*, the out-of-pocket method) that I detail in my Opening Report is standard, reasonable, and relied upon in virtually all securities class action matters alleging fraud claims under Section 10(b) of the Exchange Act.[3] Nor do they articulate any alternative methodology that would be more suitable in this matter.

---

[2] Opening Report, Section V.

[3] Opening Report, Section VI.

9.      Defendants claim, *inter alia*, that because the Analysis Period in my Efficiency Report does not include the alleged corrective disclosures on November 27, 2024 regarding the Canaccord Interview, I have not analyzed whether ASPI's stock price movements on this date are statistically significant and thus provide no evidence that would support a cause-and-effect relationship between ASPI's Common Stock price movements that day and the Canaccord Interview.[4] Defendants also claim that I have not considered the potential arrival of unspecified information other than the Canaccord Interview on November 27, 2024 that could have impacted stock prices that day.[5]

10.      Defendants' concerns are flawed and unpersuasive. First, using the same event study analysis as in my Opening Report, there was a statistically significant price decline in ASPI's Common Stock on November 27, 2024. Second, the measurement of artificial inflation and corresponding analysis of any disaggregation of confounding information would occur at the loss causation and damages stage, which I have not been asked to perform at this time.

## III.    Efficiency Factors and Event Study Analysis

11.      I analyzed the *Cammer* and *Krogman* factors relating to ASPI's Common Stock in my Opening Report, and found that these factors support a conclusion of market efficiency.[6] Thus, it follows that purchasers of ASPI's Common Stock implicitly relied on Defendants' alleged misrepresentations and/or omissions because the value of that information was incorporated into the price of ASPI's Common Stock at the time those trades were made. Defendants do not dispute

---

[4] Defendants Opp. Brief, at p. 10.

[5] *Id.*

[6] Opening Report, Section V.

my analyses of any of the efficiency factors or my conclusion that ASPI's Common Stock traded in an efficient market during the entirety of the Class Period.

12.    As part of the analysis in my Opening Report, I performed an event study to analyze the stock price movements for ASPI's Common Stock throughout the Class Period (September 26, 2024 to November 26, 2024, inclusive). The Analysis Period used for the event study begins one year prior to the start of the Class Period (from September 26, 2023 until November 26, 2024, inclusive). To perform the event study, I used a regression analysis to measure the relationship between ASPI's stock price returns and: (1) changes in market-wide factors that would be expected to impact all stocks, and (2) changes in industry-wide factors that would be expected to impact stocks in ASPI's industry. By modeling how ASPI's stock price returns moved relative to an overall market index and an industry index, I am able to measure its "abnormal" return, which represents the component of the return that is not attributable to market-wide or industry-wide effects.

13.    Defendants offer no criticisms of my event study methodology, only that the alleged Corrective Disclosure on November 27, 2024 – the day *after* the Class Period ends – was not included in my Analysis Period. Nor do they dispute that my event study methodology accurately measures the abnormal returns exhibited by ASPI's Common Stock.

14.    Defendants claim that "Plaintiffs' expert does not include November 27, 2024 in his 'Analysis Period.' Thus, Dr. Bozanic has conducted no analysis, and Plaintiffs have no proof showing whether the stock price drop after the Canaccord Interview was statistically significant." Second, Defendants claim that "Nor have they considered what other news may have been available that day that could have affected ASPI's stock."[7]

---

[7] Defendants' Opp. Brief, at p. 10.

15. First, regarding Defendants' latter claim, while I have not yet been asked to perform a loss causation and damages analysis, to conduct such an analysis I would identify, review, evaluate, and empirically analyze all of the events that are alleged as revealing corrective information (including by conducting an event study analysis). This, along with an analysis of the alleged misstatements and omissions in this matter, would allow me to determine the amount of artificial inflation impounded into the stock on each day of the Class Period, based on the amounts that subsequently dissipated from the Common Stock price when investors learned the relevant truth.

16. Second, regarding Defendants' former claim, my event study shows statistically significant negative abnormal returns for ASPI's Common Stock, on high trading volume, following both alleged corrective disclosures. My analysis thus provides strong evidence that the alleged misrepresentations impacted ASPI's Common Stock prices (*i.e.*, "price impact"). As detailed in **Table 1** and discussed further below, the two alleged corrective disclosures resulted in significant declines in ASPI's Common Stock prices:

**Table 1. Event Study Results**

| Event Date | Event | Abnormal Return | T-Statistic | P-Value | Significance | Volume |
|---|---|---|---|---|---|---|
| 11/26/2024 | Fuzzy Panda Report | -23.64% | -4.42 | 0.000 | 99.9% | 28,925,963 |
| 11/27/2024 | Canaccord Interview | -12.62% | -2.36 | 0.020 | 98.0% | 14,496,559 |

17. First, on 11/26/2024, which is the last day of the Class Period, my event study shows that, controlling for market and industry effects, the alleged corrective disclosures that day are associated with a 23.64% abnormal stock price decrease, with a *p*-value of 0.000 and statistical significance at the 99.9% level. Second, on 11/27/2024, which is the day after the Class Period

ends, my event study demonstrates that, controlling for market and industry effects, the alleged corrective disclosures that day are associated with a 12.62% abnormal stock price decrease, with a $p$-value of 0.020 and statistical significance at the 98.0% level. In other words, my event study documents that both alleged corrective disclosures were followed by declines in ASPI's Common Stock prices, and these declines are statistically significant at above the 95% level. In addition, reported trading volume in ASPI common stock on both corrective disclosure dates was roughly three to five times higher than the average Class Period daily trading volume of 5,574,676 shares.

## IV.    Conclusion

18.    In summary, Defendants' arguments are flawed and unpersuasive as my event study clearly shows statistically significant price declines on both days pertaining to the alleged corrective disclosures. In addition, an analysis of artificial inflation and any disaggregation of confounding information, which I have not been asked to perform at this time, would occur at the loss causation and damages stage.

I declare under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Zahn Bozanic, Ph.D.

6

**Appendix A**

## Documents Considered

**Case Documents:**

- Amended Class Action Complaint for Violations of the Federal Securities Laws, dated May 27, 2025 (Doc. 25).

- Expert Report of Zahn Bozanic, Ph.D., dated June 26, 2025 (Doc. 39-1).

- Defendants' Opposition to Plaintiffs' Motion for Class Certification, dated July 25, 2025 (Doc. 44).

**Other:**

- All documents cited within this report and Opening Report.