# GLANCY PRONGAY WOLKE & ROTTER

Garth Spencer
gspencer@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, California 90067
929-777-1047

March 5, 2026

*Via ECF*
The Honorable Jennifer E. Willis
United States Magistrate Judge
Southern District of New York
40 Foley Square, Room 425
New York, New York 10007

> Re:    *Leone v. ASP Isotopes Inc., et al.*, Case No. 1:24-cv-09253

Dear Judge Willis:

Plaintiff Mark Leone writes pursuant to Local Civil Rule 37.2 and Part II.A of the Court's Individual Practices to request a pre-motion conference regarding a discovery dispute. The dispute relates to the Defendant ASP Isotopes Inc.'s ("ASPI") refusal to produce almost all documents located in South Africa, including *all* documents from ASPI's South African email domain used by *all* of its technical and scientific personnel whose work related to ASPI's plans for uranium enrichment—*i.e.*, matters at the heart of this case. Defendants refuse to produce such documents notwithstanding that, as of the end of the Class Period, 127 of ASPI's 136 employees were located in South Africa. *See* **Exhibit 1** (ASPI SEC Form 10-K excerpts). The parties met and conferred by phone and videoconference on January 23, 2026, February 10, 2026, and March 3, 2026.

This is a securities class action alleging that ASPI and its CEO, Defendant Paul Mann, violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by misleading investors as to the stage of development of the company's heavily touted "quantum enrichment" technology for the enrichment of uranium, to ostensibly be sold as fuel for nuclear power generators. *See generally* ECF No. 25 (amended complaint). By order dated December 4, 2025 (ECF No. 57), Judge McMahon granted in part and denied in part Defendants' motion to dismiss, finding that Plaintiff sufficiently alleged claims relating to misleading statements including:

- "One of the advantages of our QE process is that we do it in batches, so rather than having a continuous process of hundreds of kilograms of product inside the plant at a time, you only have a small amount of product being enriched at a time. And so we believe we can demonstrate very clearly to regulators that there's no chance of hitting criticality," *i.e.*, a self-sustaining nuclear chain reaction. *Id.* at 32-34.

- ASPI's Quantum Leap Energy Subsidiary can enrich uranium with "Selectivity $\alpha \geq 50$," *i.e.*, the factor by which uranium feedstock is enriched in a single stage, that the energy input required for this process was only "40 kWh/SWU," and that it could enrich uranium to "reactor grade" in a "Single Stage." *Id.* at 35-37.

- "Our team have used lasers to enrich . . . Uranium." *Id.* at 17-18, 37.

The Honorable Jennifer E. Willis
March 5, 2026
Page 2

- ASPI's technology to produce "Uranium-235" was in the "R&D Stage." *Id.* at 38.

- ASPI had "Proven, Proprietary Technology" that "allow[ed] it to meet the growing demand in the . . . Nuclear Energy industr[y]." *Id.* at 38-39.

- In response to the question, "What *current technology* is your company working on?", that ASPI was "focusing on producing critical nuclear fuels necessary for the operation of small modular reactors. These include HALEU (High-Assay Low-Enriched Uranium)." *Id.* at 40-42.

- ASPI's uranium enrichment technology was "fully prepared for deployment" and only required regulatory approvals. *Id.* at 40-42.

As Judge McMahon noted in the order, among the elements that Plaintiff will have to prove are, "(1) a material misrepresentation or omission by the defendant; [and] (2) scienter." *Id.* at 20.

Plaintiff served requests for production and interrogatories on defendants on December 19, 2025. *See* **Exhibits 2-3**. Defendants timely served responses and objections on January 30, 2026. *See* **Exhibits 4-5**. The parties cooperatively met and conferred to discuss the objections and to negotiate parameters for ESI collection. The parties reached various agreements on production of documents located in the U.S., including emails from ASPI's U.S. email domain (aspisotopes.com). Defendants agreed to produce documents from the U.S. based accounts of:

- Paul Mann (CEO)
- Hendrik Strydom (Chief Technology Officer) – but *see infra* for a critical limitation
- Robert Ainscow (Chief Operating Officer)
- Heather Kiessling (CFO)
- Viktor Petkov (Chief Commercial Officer)
- Jason Assad (Investor Relations)

However, the parties are at an impasse as to whether Defendants will produce *any* documents (other than certain unspecified documents Defendants say they are considering producing) located in South Africa, including from ASPI's South African email domain (aspisotopes.co.za).

Plaintiff needs, and is entitled to, documents from ASPI's South African technical and scientific team in order to establish falsity and scienter for the statements concerning ASPI's purported progress in developing its technology, the technical capabilities of the technology, and its supposed readiness for commercial deployment. Documents located in South Africa are highly relevant, and are important to Plaintiff's ability to prove his case. During the Class Period only Defendant Mann and two other ASPI employees (CFO Kiessling and another finance employee) were based in the U.S. (*see* ECF No. 25 at ¶14), while 127 of its 136 employees were located in South Africa (*see* **Exhibit 1** at 39). In fact, *all* of ASPI's scientific and technical personnel were located in South Africa, and they almost exclusively used ASPI's South African email domain. This includes key custodians proposed by Plaintiff, but rejected by ASPI:

- Xandra van Heerden (Manager of R&D)

The Honorable Jennifer E. Willis
March 5, 2026
Page 3

- Hendrik Kloppers (Lab Manager)
- Einar Ronander (Chief Scientific Advisor)
- Christo Green (General Manager)
- Heino Van Wyk (Head of Engineering)

Although Defendants concede the relevance of ASPI's CTO, Hendrik Strydom, they refuse to produce documents from his South African email account. Defendants have disclosed that although Strydom had both U.S. and South African ASPI email accounts, he barely used the U.S. account and conducted substantially all of his work email on the South African account.

While Defendants' explanations of their reasons for refusing to produce documents located in South Africa have evolved over the course of the parties' discussions, they now appear to be primarily based on the contention that disclosure of some of those documents may be limited by South African laws applicable to nuclear technology. *See* **Exhibit 4** (interrogatory objections) at 8-9; **Exhibit 5** (RFP objections) at ¶3. "To determine whether foreign law stands as a bar to discovery, the party opposing production bears the burden of proving what that law is and demonstrating why it impedes production." *In re Aphria, Inc. Sec. Litig.*, 2024 WL 4335819, at *1 (S.D.N.Y. Sept. 27, 2024) (internal quotes omitted). "To satisfy this burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law. Among other things, that party must identify the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." *Owen v. Elastos Found.*, 343 F.R.D. 268, 281 (S.D.N.Y. 2023) (quotes and citation omitted).

Defendants fail to meet their burden to show with specificity which documents are supposedly prohibited from disclosure based on which provisions of South African law. Defendants generically cite the *entirety* of the South African Nuclear Energy Act 46 of 1999, without explaining which provision of the Act purportedly bars production of which particular documents at issue. As shown by ASPI's repeated public statements about its uranium enrichment technology (developed, to the extent that it was, in South Africa), and its sharing of information from its operations in South Africa to foreigners such as Defendant Mann and ASPI's investors and prospective business partners, it simply cannot be the case that *all* information located in South Africa that is related to nuclear technology is prohibited from production. ASPI's SEC filings make clear that it has processes in place to provide even genuinely restricted information when it chooses to do so. *See* **Exhibit 1** at 21 ("We have compliance systems in our U.S. and non-U.S. subsidiaries to identify those products and technologies that are subject to export control regulatory restrictions and, where required, we obtain authorization from relevant regulatory authorities for sales to foreign buyers or for technology transfers to foreign consultants, companies, universities or foreign national employees."). Finally, as Defendants belatedly admitted, *ASPI has never tested its technology on uranium*. This casts further doubt on their claims that all of the documents sought by Plaintiff are highly protected nuclear secrets, as opposed to routine business emails that will simply reveal Defendants' lack of progress in developing the technology they touted to investors.

The Honorable Jennifer E. Willis
March 5, 2026
Page 4

Respectfully,

*/s/ Garth Spencer*

Garth Spencer