**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LEONE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ASP ISOTOPES INC., PAUL E. MANN, and HEATHER KIESSLING, <br><br> Defendants. | Case No. 1:24-cv-09253-CM <br><br> Honorable Jennifer E. Willis |

**REDACTED MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFF MARK LEONE'S MOTION**
**TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

PROCEDURAL HISTORY AND DISCOVERY CONDUCTED THUS FAR ............................ 4

THE DISCOVERY SOUGHT IN THIS MOTION ............................................................... 5

      A.    The Routine Business Emails Sought By Plaintiff .................................. 5

      B.    Plaintiff Is Not Seeking Nuclear Secrets, Which ASPI Never Developed ................................................................................................ 7

LEGAL STANDARDS ................................................................................................. 7

ARGUMENT .............................................................................................................. 8

    I.    Documents From ASPI's South African Email Domain Are Relevant .................. 8

    II.    The Discovery Sought Is Proportional To The Needs Of The Case ..................... 10

    III.    South African Nuclear Laws Do Not Bar Production ........................................... 12

      A.    An International Comity Analysis Is Not Required Because No True Conflict Exists Between The South African Nuclear Laws And U.S. Discovery Rules ....................................................................................... 12

          1.    Defendants Fail to Meet Their Burden To Explain The Purported Conflict ........................................................................ 12

          2.    The South African Nuclear Laws Do Not Conflict With U.S. Law ............................................................................................ 13

          3.    Defendants' Pattern Of Routinely Disclosing Uranium-Related Information To Third Parties And Non-South Africans Shows The Nuclear Laws Do Not Bar Production ........ 15

      B.    An International Comity Analysis, Although Unnecessary, Favors Production ............................................................................................... 17

          1.    Balancing The National Interests Favors Production ................... 18

          2.    The Importance Of The Documents Favors Production ............... 21

          3.    The Degree Of Specificity Of Plaintiff's Requests Favors Production ....................................................................................... 22

4.     The Origin Of The Information Requested Is Neutral.................. 22

5.     The Lack Of Alternative Means Of Securing The Information Favors Production ....................................................... 23

6.     The Lack Of Hardship To Defendants Favors Production............ 24

7.     ASPI's Good Faith In Resisting Discovery, Or Lack Thereof, Is Neutral.................................................................................... 25

IV.    South Africa's Blocking Statute Is Entitled To Little Or No Weight .................... 25

A.    South Africa's Interest In Applying The Blocking Statute, Which Is Simply Designed To Impede U.S. Civil Discovery, Is Minimal............... 26

B.    There Are No Alternative Means Of Production ...................................... 27

C.    Defendants Will Not Face Any Hardship................................................. 27

CONCLUSION................................................................................................................. 28

# TABLE OF AUTHORITIES

CASES

*Alfadda v. Fenn*,
  149 F.R.D. 28 (S.D.N.Y. 1993) ....................................................................................... 13

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*,
  385 F. Supp. 3d 212 (S.D.N.Y. 2019) ..................................................................... 12, 13, 17

*Chevron Corp. v. Donziger*,
  296 F.R.D. 168 (S.D.N.Y. 2013) ............................................................................. 17, 22, 23

*Christine Asia Co. v. Alibaba Grp. Holding Ltd.*,
  327 F.R.D. 52 (S.D.N.Y. 2018) ....................................................................................... 19

*Condit v. Dunne*,
  225 F.R.D. 100 (S.D.N.Y. 2004) ....................................................................................... 8

*Est. of Mechling by Ulmer v. U.S. Bank Nat'l Ass'n*,
  2023 WL 6542772 (D. Conn. Oct. 6, 2023)....................................................................... 8

*Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*,
  284 F.R.D. 132 (S.D.N.Y. 2012) ....................................................................................... 7

*Gucci Am., Inc. v. Curveal Fashion*,
  2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ...................................................................... 20

*Hayes v. Harmony Gold Min. Co.*,
  2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) .................................................................... 23

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2010 WL 2976220 (E.D.N.Y. July 23, 2010)............................................................. *passim*

*In re Aphria, Inc. Sec. Litig.*,
  2024 WL 4335819 (S.D.N.Y. Sept. 27, 2024) ............................................................ 12, 17

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ...................................................................11

*In re DiDi Glob. Inc. Sec. Litig.*,
  2025 WL 267893 (S.D.N.Y. Jan. 22, 2025) ............................................................... *passim*

*In re Grand Jury Subpoena dated Aug. 9,*
  *2000*, 218 F. Supp. 2d 544 (S.D.N.Y. 2002) .................................................................. 20

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ................................................................................... 12

*In re: Uranium Antitrust Litig.*,
    480 F. Supp. 1138 (ND. Ill. 1979) ................................................................ 20, 26

*King v. Habib Bank Ltd.*,
    2025 WL 965809 (S.D.N.Y. Mar. 31, 2025) ................................................ 21, 25

*Leone v. ASP Isotopes Inc.*,
    --- F.Supp.3d ----, 2025 WL 3484821 (S.D.N.Y. Dec. 4, 2025) ....................... 4, 8, 9

*Linde v. Arab Bank, PLC*,
    706 F.3d 92 (2d Cir. 2013) ..................................................................................... 20

*Mays v. Town of Hempstead*,
    2011 WL 4345164 (E.D.N.Y. Sept. 15, 2011) ........................................................ 8

*Milliken & Co. v. Bank of China*,
    758 F. Supp. 2d 238 (S.D.N.Y. 2010) .................................................................. 27

*Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
    482 U.S. 522 (1987) ................................................................... 2, 17, 23, 26

*Owen v. Elastos Found.*,
    343 F.R.D. 268 (S.D.N.Y. 2023) ................................................................. 12, 13

*S.E.C. v. Gibraltar Glob. Sec., Inc.*,
    2015 WL 1514746 (S.D.N.Y. Apr. 1, 2015) ........................................ 17, 18, 19, 20

*Safo v. Singh*,
    2025 WL 2123613 (S.D.N.Y. July 29, 2025) ........................................................ 10

*SEC v. Banca Della Svizzera Italiana*,
    92 F.R.D. 111 (S.D.N.Y. 1981) ............................................................................ 19

*Taser Int'l, Inc. v. Phazzer Elecs., Inc.*,
    2017 WL 3584901 (M.D. Fla. Feb. 28, 2017) ....................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................................. 19

*Wultz v. Bank of China Ltd.*,
    910 F. Supp. 2d 548 (S.D.N.Y. 2012) .................................................................. 18

RULES

Fed. R. Civ. P. 26........................................................................................................... 9
Fed. R. Civ. P. 26(b)(1) ........................................................................................... 7, 8, 10
Fed. R. Civ. P. 37(a)(3) .................................................................................................... 8

OTHER AUTHORITIES

*Private International Law in Africa: The Past, Present, and Future*,
    55 Am. J. Comp. L. 677 (2007) ........................................................................... 26, 27

**INTRODUCTION**

This discovery dispute relates to Defendant ASP Isotopes Inc.'s ("ASPI" or the "Company") refusal to produce *any* documents from its South African email domain, used by ASPI's technical and scientific personnel whose work was central to ASPI's plans for so-called "quantum enrichment" ("QE") of uranium. Those documents are highly relevant as this case centers on Defendants' false and misleading statements about the purported stage of development, technical capabilities, and commercial readiness of ASPI's QE technology for uranium enrichment. As of the end of the Class Period, 127 of ASPI's 136 employees were based in South Africa and used the "aspisotopes.co.za" email domain, including all of its technical and scientific team. Plaintiff's requests—limited to just six (6) South African email custodians and a narrowly-targeted list of already agreed search terms—are clearly proportional to the needs of this high-stakes litigation.

ASPI resists discovery on four grounds, all of which are baseless. First, by taking a myopic view of relevance that is contrary to established law, ASPI claims that the South African custodians are irrelevant. Second, ASPI claims that producing the requested documents would be unduly burdensome because some unspecified portion of the documents will be written in Afrikaans, but foreign-language documents are routinely produced in complex litigations such as this.

Third, ASPI cites South African nuclear laws which it claims prohibit production, but fails to show a true conflict between those laws and ASPI's U.S. discovery obligations. As Defendants have admitted, *ASPI never tested its technology on uranium*, severely undermining ASPI's claim that all of its South African emails contain highly classified nuclear secrets. ASPI's argument is further undermined by its routine practice of sharing information about uranium enrichment with, *inter alia*: the public; its non-South African CEO; and numerous foreign investors and prospective business partners. Moreover, even if a conflict did exist between U.S. and South African laws, the

1

international comity factors strongly favor production. As Judge McMahon succinctly put it, "[i]f you choose to raise money in the United States, you choose to subject yourself to the laws of the United States, including the litigation laws of the United States." *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, No. 15-md-2631 (S.D.N.Y.) (transcript of Jan. 12, 2018 conference) at 11:13-11:16 (Ex. 26, the "*Alibaba* Transcript").[1] ASPI sold $18.6 million of stock listed on the U.S. Nasdaq exchange during the Class Period, at prices artificially inflated by Defendants' misleading statements. *See* Amended Class Action Complaint For Violations Of The Federal Securities Laws (ECF No. 28, "Complaint") at ¶¶2, 9, 56.[2]

Fourth, ASPI invokes South Africa's blocking statute, but cites no instance of the blocking statute ever being enforced, and no occasion when any U.S. court excused a party from producing discovery based on the blocking statute. On the contrary, it is well established that foreign blocking statutes "need not be given the same deference by courts of the United States as substantive rules of law" *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987), and courts in this Circuit have rejected objections to discovery based on South Africa's blocking statute. *See*, *e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 2976220, at *2 (E.D.N.Y. July 23, 2010).

The discovery that Plaintiff seeks is highly relevant and proportional, and ASPI's objections are meritless. The Court should reject ASPI's attempt to shield incriminating evidence contained in its South African email domain, and should compel production.

---

[1] References to "Ex. __" herein are to the exhibits to the concurrently filed Declaration of Garth Spencer, unless otherwise specified.

[2] Unless otherwise noted, all "¶_" citations are to the Complaint.

**FACTUAL BACKGROUND**

Plaintiff brings this securities fraud class action alleging that Defendants ASPI and its CEO, Paul Mann, violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by misleading investors as to the development and capabilities of ASPI's QE technology to enrich uranium, to ostensibly be used as fuel for nuclear power generators. During the September 26, 2024, to November 26, 2024, Class Period, Defendants misled investors through statements relating to ASPI's QE technology, including, *inter alia*:

- "One of the advantages of our QE process is that we do it in batches, so rather than having a continuous process of hundreds of kilograms of product inside the plant at a time, you only have a small amount of product being enriched at a time. And so we believe we can demonstrate very clearly to regulators that there's no chance of hitting criticality," *i.e.*, a self-sustaining nuclear chain reaction. ¶82.

- ASPI's Quantum Leap Energy Subsidiary can enrich uranium with "Selectivity $\alpha \geq 50$," *i.e.*, the factor by which uranium feedstock is enriched in a single stage, that the energy input required for this process was only "40 kWh/SWU," and that it could enrich uranium to "reactor grade" in a "Single Stage." ¶61.

- "Our team have used lasers to enrich . . . Uranium." ¶63.

- ASPI had "Proven, Proprietary Technology" that "allow[ed] it to meet the growing demand in the . . . Nuclear Energy industr[y]." ¶67.

- Responding to the question "Do you have a timeline for commercial operation of your technology?", an ASPI executive stated its uranium enrichment QE technology was "fully prepared for deployment" and only required regulatory approvals. ¶86.

Reality differed starkly from those statements: ASPI had performed only preliminary *theoretical* work for QE of uranium, and was years away from potential commercialization. On November 26, 2024, Fuzzy Panda Research published a report discussing interviews with nuclear energy industry executives and an applied physicist, which revealed significant problems with using QE to enrich uranium, and which caused a 23.5% same-day drop in ASPI's stock price. ¶¶91-102. Attempting to rebut the report, the next day Defendant Mann gave a live-streamed interview to a Canaccord Genuity analyst. *Id.* at ¶103. In the interview Mann revealed that ASPI had never tested its QE technology on uranium, which surprised the analyst (who regularly covered ASPI).

3

¶¶51-53 & n.7, 104-11. It also surprised investors. ASPI's share price fell another 14.2% in a single day. ¶112.

## PROCEDURAL HISTORY AND DISCOVERY CONDUCTED THUS FAR

In Judge McMahon's December 4, 2025 Order and Opinion, the Court denied Defendants' motion to dismiss in substantial part, finding that Plaintiff had sufficiently alleged falsity for seven statements, as well as scienter and loss causation. *Leone v. ASP Isotopes Inc.*, --- F.Supp.3d ----, 2025 WL 3484821, at *6-*26 (S.D.N.Y. Dec. 4, 2025). In the same order, the Court granted Plaintiff's motion for class certification, certifying a class of investors who purchased ASPI stock during the Class Period. *Id.* at *26-*42.

The parties then began discovery. Plaintiff served his first requests for production (ECF No. 71-3, "RFPs") and interrogatories (ECF No. 71-2) on December 19, 2025. Defendants served responses and objections on January 30, 2026. *See* ECF Nos. 71-4 and 71-5. The parties met and conferred to discuss the objections and to negotiate parameters for ESI collection. The parties reached various agreements on production of documents located in the U.S., including emails from ASPI's U.S. email domain (aspisotopes.com). As a result of the meet and confer process, Defendants agreed to produce documents from the *U.S.-based* accounts of:

- Paul Mann (CEO)
- Hendrik Strydom (Chief Technology Officer)[3]
- Robert Ainscow (Chief Operating Officer)
- Heather Kiessling (CFO)
- Viktor Petkov (Chief Commercial Officer)
- Jason Assad (Investor Relations)

---

[3] Defendants have disclosed that although Strydom had both U.S. and South African ASPI email accounts, he barely used the U.S. account and conducted substantially all of his work email on the South African account. Plaintiff's counsel has not located a single instance of Strydom sending an email from his U.S. ASPI account in the documents produced to date.

Defendants eventually agreed to produce documents for Mann and Strydom for September 1, 2023 to December 31, 2024, and for all other custodians from April 1, 2024 to December 31, 2024. The parties also agreed to 35 search terms narrowly targeted to the facts at issue. ███████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████. *See* Ex. 1.

To date, Defendants have produced 4,458 documents. Of those, 4,257 are emails and attachments collected from ASPI's U.S. email domain. A search for "aspisotopes.co.za" within Defendants' production returns 503 emails, reflecting communications between aspisotopes.com accounts and aspisotopes.co.za accounts, all of which Defendants collected and produced from the U.S.-based aspisotopes.com accounts.

Despite meeting and conferring by phone and videoconference on January 23, 2026, February 10, 2026, and March 3, 2026, the parties reached an impasse on Defendants' refusal to produce documents from ASPI's South African email domain. The parties filed discovery letters (ECF Nos. 71-72), and the Court granted Plaintiff leave to file this motion. *See* ECF No. 73.

Fact discovery must be completed by June 30, 2026, expert discovery by August 15, 2026, and the final pretrial order is due by October 2, 2026. *See* Minute Entry entered January 8, 2026.

## <u>THE DISCOVERY SOUGHT IN THIS MOTION</u>

### A.    The Routine Business Emails Sought By Plaintiff

Plaintiff seeks to compel production of emails from six (6) custodians of ASPI's South African aspisotopes.co.za domain that are responsive to the RFPs, applying the parties' agreed search terms and time periods discussed *supra*. The six South African custodians are:

- Hendrik Strydom (CTO) – already included as a U.S. email custodian (*see supra* n.3)
- Xandra Van Heerden (Manager of R&D)

- Hendrik Kloppers (Lab Manager / Technologist)
- Josua Oosthuizen (Laser Team Project Manager)[4]
- Christo Green (General Manager)
- Heino Van Wyk (Head of Engineering)

███████████████████████████████████████████████████████████████

███████████████████████. *See, e.g.*, Exs. 5-8, 10-13, 15-16, 18-19, 22 (Strydom); Exs. 3, 7, 10, 15-19 (Van Heerden); Exs. 7-8, 11-13 (Kloppers); Exs. 5-8, 10-13, 15-16, 18-19 (Oosthuizen); Exs. 11-13, 16-17, 21, 24 (Green); Exs. 4, 9, 11-13, 15-19 (Van Wyk).

As is evident from the five hundred emails Defendants have produced that include the aspisotopes.co.za domain, ASPI's South Africa-based employees used their South African email accounts for routine business purposes such as scheduling meetings (Exs. 4, 8-10), ███████ ███████████████████ (Ex. 7), ████████████ (Ex. 11-13), circulating production forecasts and cost estimates (Exs. 3, 5-6), ██████████████████████████ (Exs. 14-20). While many of these emails relate to ASPI's uranium enrichment plans, and are therefore relevant to this action, these emails are *not* highly protected nuclear secrets. This is evidenced by the facts, including that: (i) ASPI employees often sent such emails to accounts at ASPI's U.S. domain belonging to non-South Africans such as Defendant Mann; (ii) ASPI has already produced some of those emails in discovery; and (iii) even though Defendants marked as

---

[4] In this motion Plaintiff slightly modifies his prior proposed list of South African custodians (*see* ECF No. 71 at 3-4) to replace Einar Ronander with Josua Oosthuizen. As Defendants have produced additional documents on a rolling basis it has become clear that, despite being listed as ASPI's Chief Scientific Advisor in Defendants' Class Period public statements (*e.g.*, ECF No. 28-4 at 41), Ronander's involvement in the relevant events appears to be limited, as he did not send or receive *any* of the emails produced by Defendants to date. █████████████████ ████████████████████████████. *See* Exs. 5-8, 10-13, 15-16, 18-19.

"CONFIDENTIAL" numerous emails filed herewith that include recipients at aspisotopes.co.za, they have now agreed that the vast majority of those emails do not need to be filed under seal.

**B.      Plaintiff Is Not Seeking Nuclear Secrets, Which ASPI Never Developed**

Defendants belatedly admitted that ASPI never tested its technology on uranium, and that the relevant experience of its key scientific and technical personnel derives from South Africa's long-defunct national nuclear enrichment program. *See* ¶51 ("we haven't actually enriched uranium"); ¶105 ("The team have done it in the day, 20-30 years ago"); ¶107 ("we've actually hired out of retirement quite a lot of the team who were involved in the enrichment back in the day . . . for a lot of them, you know, back in the 90s kind of the rug got pulled from under their feet, they suddenly stopped having to do they were doing"). These admissions debunk Defendants' claim that the emails at issue contain protected nuclear information.

While ASPI may possess in secure, offline locations *some* highly classified nuclear information (presumably relating to research carried out *decades ago* by *other* organizations), that is not what Plaintiff seeks here. ████████████████████████████████ ████████████████████████████████ ████████████████. Plaintiff is *not* asking Defendants to produce documents from that source. ASPI's publicly filed SEC disclosures state that "[o]ur most sensitive data is stored in offline air-gapped devices." Ex. 2. Plaintiff is *not* asking Defendants to produce documents from those devices. Plaintiff merely seeks routine business emails from the aspisotopes.co.za domain.

## LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y.

2012). If "a party fails to produce documents . . . as requested under Rule 34," the "party seeking discovery may move for an order compelling . . . production." Fed. R. Civ. P. 37(a)(3).

**ARGUMENT**

**I.      Documents From ASPI's South African Email Domain Are Relevant**

"Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). "[T]he right of litigants to discover and present relevant evidence in civil litigations is given great weight in federal courts." *Mays v. Town of Hempstead*, 2011 WL 4345164, at *2 (E.D.N.Y. Sept. 15, 2011). Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The discovery sought is plainly relevant. Plaintiff seeks production of certain documents stored in ASPI's South African email domain, which was used by *all* of the Company's technical and scientific personnel who worked on ASPI's uranium enrichment plans leading up to and during the Class Period. This action is predicated on Defendants' false and misleading statements regarding ASPI's uranium enrichment plans. Indeed, Judge McMahon denied Defendants' motion to dismiss as to several of their statements regarding uranium enrichment. *See ASP Isotopes*, 2025 WL 3484821, at *16-*21; *see supra* Factual Background (quoting certain QE-related misstatements). The requested discovery is relevant. *See*, *e.g.*, *Est. of Mechling by Ulmer v. U.S. Bank Nat'l Ass'n*, 2023 WL 6542772, at *2 (D. Conn. Oct. 6, 2023) ("the materials sought would seem to be highly relevant, insofar as they are likely to be probative of the . . . issue at the heart of this litigation.").

The documents sought are central to the case, as they relate to, *inter alia*, "quantum enrichment of uranium" (RFP 1), the misleading statements at issue (*e.g.*, RFP 5), and the corrective disclosures, including the Fuzzy Panda Report (*e.g.*, RFP 14). The agreed search terms that the parties negotiated are narrowly targeted to locate documents responsive to the RFPs. *See*

8

ECF No. 71-3; Ex. 1 (███████████████████████████████████████████
██████████████████████████████). Documents hitting those search terms from the aspisotopes.co.za email accounts of the six requested custodians, who all had key roles in ASPI's QE and uranium efforts, are thus likely to contain information that is relevant and central to Plaintiff's case. Among the elements that Plaintiff will have to prove are, "(1) a material misrepresentation or omission by the defendant; [and] (2) scienter." *ASP Isotopes*, 2025 WL 3484821, at *10. The requested discovery is relevant to both.

Moreover, documents from the six proposed custodians' aspisotopes.co.za email accounts will contain unique information that Plaintiff cannot obtain from other sources. As of the end of the Class Period, 127 of ASPI's 136 total employees were located in South Africa. *See* ECF No. 71-1. *All* of ASPI's scientific and technical personnel were located in South Africa, and most of them *only* had ASPI email accounts through the Company's South African domain. Even ASPI's Chief Technology Officer, Strydom, who had both U.S. and South African email accounts, conducted the vast majority of his work email through the South African account. *See* n.3, *supra*. While Defendants have begun producing documents from ASPI's U.S. email accounts that include communications with its South African email accounts, this will *only* result in production of South African domain messages that included one of the six agreed U.S. custodial email accounts. This is almost assured to omit key communications such as emails that ASPI's South Africa-based scientists sent to each other or to third parties without copying ASPI's U.S.-based officers.

Defendants argue that the *only* relevant documents are those that directly prove scienter as to Defendant Mann or ASPI's VP of Business Development Viktor Petkov (*see* ECF No. 72 at 2), but that is clearly not the standard for relevance. "Relevance to the subject matter under Rule 26 is construed broadly to encompass any matter that bears on, or that reasonably could lead to other

9

matter that could bear on, any issue that is or may be in the case." *Safo v. Singh*, 2025 WL 2123613, at \*4 (S.D.N.Y. July 29, 2025). Of course, Plaintiff can prove any Defendant's scienter through circumstantial evidence, and can prove ASPI's scienter without needing to prove scienter as to Mann or Petkov. Plaintiff is entitled to evidence of falsity regardless of whether it also proves scienter, and to discover documents even if they are not necessarily admissible evidence. The South African emails sought are relevant.

## II.     The Discovery Sought Is Proportional To The Needs Of The Case

To assess proportionality courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Each of these considerations supports compelling production of the requested discovery here.

1. The issues at stake are important. Plaintiff alleges that Defendants violated the federal securities laws, fraudulently causing hundreds or thousands of U.S. investors to purchase ASPI stock at artificially inflated prices. While Plaintiff has not yet submitted an expert damages report, preliminary analysis indicates that damages are well into the tens of millions of dollars. While a full damages analysis will depend on a variety of factors, the approximate scale of damages at issue is confirmed by ASPI's stock price declines totaling $2.63/share following the corrective disclosures (¶¶102, 112), and ASPI's 72 million shares of stock outstanding at the end of the Class Period (ECF No. 71-1).

2. Plaintiff lacks access. The requested documents are within ASPI's control and Plaintiff has no access to them unless production is compelled.

3. ASPI has sufficient resources. ASPI has substantial human and financial resources in comparison to any modest cost of producing these documents for just six custodians. At the end of

the Class Period ASPI had 136 employees, including 127 in South Africa. *See* ECF No. 71-1. ASPI's most recently published financial statements list assets far in excess of liabilities and "[c]ash and cash equivalents" of $113 million. *See* Ex. 27.

4. The requested discovery is highly important. As described above, Plaintiff seeks emails from ASPI's team who were *directly* responsible for the Company's uranium enrichment plans, which are central to this case, and Plaintiff has no other means of obtaining this important evidence.

5. The importance of the discovery outweighs any modest burden on ASPI. Defendants are *already* reviewing and producing emails, so simply adding relevant documents for six custodial email accounts based on the parties' agreed search terms creates no undue burden.

Defendants vaguely object on burden grounds that they "would need to divert additional time and resources to engaging a foreign language review team, as many of these documents will be written in Afrikaans." ECF No. 72 at 3. However, foreign language documents are routinely produced in complex litigations such as this, and courts roundly reject similar objections. *See*, *e.g.*, *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2017 WL 3584901, at *3 (M.D. Fla. Feb. 28, 2017) (a party "cannot avoid producing responsive documents merely because its counsel cannot comprehend the documents written in a foreign language"); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) ("the Court rejects McKinsey's claim that the production will be unduly burdensome on the ground that the documents will have to be translated from German into English so that they may be reviewed by McKinsey's United States, non-German speaking, counsel"). ████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████. *See* Ex. 1.

**III.    South African Nuclear Laws Do Not Bar Production**

  **A.    An International Comity Analysis Is Not Required Because No True Conflict Exists Between The South African Nuclear Laws And U.S. Discovery Rules**

Defendants' primary explanation for their blanket refusal to produce *any* documents from South Africa is that disclosure of those documents may be limited by South African laws concerning nuclear technology, specifically the Nuclear Energy Act 46 of 1999 ("Nuclear Energy Act") and the Non-Proliferation of Weapons of Mass Destruction Act 87 of 1993 ("Non-Proliferation Act") (together, the "Nuclear Laws"). Defendants' argument is wrong on both the law and the facts.

    **1.    Defendants Fail to Meet Their Burden To Explain The Purported Conflict**

"International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction. . . . A true conflict exists if compliance with the regulatory laws of both countries would be impossible." *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 222-23 (S.D.N.Y. 2019) (quoting *In re Picard*, 917 F.3d 85, 102 (2d Cir. 2019)) (internal quotation marks omitted).

"To determine whether foreign law stands as a bar to discovery, the party opposing production bears the burden of proving what that law is and demonstrating why it impedes production." *In re Aphria, Inc. Sec. Litig.*, 2024 WL 4335819, at *1 (S.D.N.Y. Sept. 27, 2024). Defendants' reference to the Nuclear Laws as a blanket means to refuse searching or producing *any* South Africa-based documents is insufficient. *See Owen v. Elastos Found.*, 343 F.R.D. 268, 281 (S.D.N.Y. 2023) ("[T]he party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law."); *Baliga*, 385 F. Supp. 3d at 222-23 (when asserting "a true

conflict between American law and that of a foreign jurisdiction," a party's "mere allegation of a conflict will not suffice; the record needs to demonstrate the conflict clearly").

Defendants offer only their U.S. outside counsel's broad-brush speculation to support this objection, providing no expert opinion regarding the foreign law, and failing to identify "the application of the foreign law[s] to the facts of the case." *Elastos*, 343 F.R.D. at 281; *see also Baliga*, 385 F. Supp. 3d at 223 ("when asserting issues of foreign law, parties should generally identify the foreign laws at issue, submit expert opinions, and provide translated primary source materials"). Defendants' counsel even implicitly admits, while making sweeping *ipse dixit* assertions about the applicability of foreign law, that they have conducted *no analysis* of the requested documents. ECF No. 72 at 3 (claiming that "ASPI is prohibited from disclosing the requested documents to *anyone (undersigned counsel included)* without written authorization").

Finally, it is *not* incumbent on either the Court or Plaintiff to fill in the blanks of Defendants' undeveloped argument. Rather, "*the party relying on foreign law* bears the burden of demonstrating that such law *actually bars* the production or testimony at issue." *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993). Defendants fail to carry their burden.

### 2.        The South African Nuclear Laws Do Not Conflict With U.S. Law

There is no true conflict between the Nuclear Laws and the rules of U.S. civil discovery. The Nuclear Energy Act was promulgated to govern the operations of South Africa's state-owned nuclear research company and related matters. *See* Nuclear Energy Act at preamble.[5] The Non-Proliferation Act implemented South Africa's obligations under the international Treaty on Non-

---

[5] The original text of the Nuclear Energy Act as published by the South African government is available at https://www.gov.za/sites/default/files/gcis_document/201409/a46-99.pdf

Proliferation of Nuclear Weapons, and to "provide for control over weapons of mass destruction." *See* Non-Proliferation Act at preamble.[6]

Defendants cite two provisions of the Nuclear Energy Act as regulating the disclosure of certain information relating to nuclear technology, and vaguely refer to the notice attached to their discovery letter as "outlining Non-Proliferation Act requirements" without themselves identifying any such requirements. ECF No. 72 at 3. However, the provisions of the Nuclear Energy Act they cite merely provide that written authorization is required to "dispose of any technology related to [nuclear] materials or equipment." Nuclear Energy Act §34(1)(u).

Defendants fail to show that complying with U.S. discovery obligations falls within the conduct proscribed by §34(1)(u). *A fortiori* Defendants fail to show that *all* of the emails that Plaintiff seeks are prohibited from production by this provision of the Nuclear Energy Act. Instead, Defendants simply assert that "ASPI is prohibited from disclosing the requested documents," while making no attempt to distinguish between documents that do or do not constitute a transfer of nuclear technology under the Nuclear Energy Act. Nor *could* they make such a showing; as Defendants admit, "ASPI has never enriched uranium." ECF No. 72 at 1.

Defendants also fail to acknowledge that both of the Nuclear Laws they cite contain multiple provisions allowing for disclosures in connection with legal obligations and court proceedings. *E.g.*, Nuclear Energy Act §31(2)(b) (allowing disclosures "on the order of a competent court of law"); *id.* at §33(4)(a) (similar); *id.* at §38(2)(a) (allowing for "alienation of restricted matter" where "authorized thereto by a court of law"); *id.* at §52(1) (providing for "*in camera*" court proceedings); Non-Proliferation Act §21(1)(b) (allowing disclosure to "any person

---

[6] The original text of the Non-Proliferation Act as published by the South African government is available at https://www.gov.za/sites/default/files/gcis_document/201504/act87of1993.pdf

14

who of necessity requires it for the performance of his functions in terms of this Act *or any other law*"); *id.* at §21(1)(d) (allowing disclosure "where it is required in terms of any law or as evidence in any court of law"); *id.* at §21(2) (providing for "*in camera*" court proceedings). Defendants conveniently ignore these provisions, which show no true conflict of law exists.

> **3.    Defendants' Pattern Of Routinely Disclosing Uranium-Related Information To Third Parties And Non-South Africans Shows The Nuclear Laws Do Not Bar Production**

ASPI's argument that it is prohibited from producing *any* documents from its South African email domain is belied by the fact that ASPI has repeatedly disclosed the same or similar information *in this litigation*, as well as to the public, to ASPI's non-South African employees such as Defendant Mann, and to foreign prospective investors and business partners. During the Class Period Defendants made multiple public statements touting their purported uranium enrichment technology, including key technical details. *See*, *e.g.*, ¶45 (slide explaining scientific principles of QE technology); ¶61 (slide purporting to show technical data concerning QE of uranium); ECF No. 28-4 at 23-32 (ASPI slide deck section dedicated to uranium enrichment).

Although Defendant Mann is a U.K. citizen and U.S. resident who appears to have had no special authorization to access South African nuclear secrets, ASPI's South African scientists and engineers routinely disclosed information about the company's QE and uranium plans to him. ████ ███████████████████████████████████████████████████████████████████ ███████████████████████. *See* Ex. 3. Mann and ASPI's head of engineering Heino Van Wyk scheduled a call to "catch up on uranium." Ex. 4. ████████████████████████████ ███████████████████████████████████████████████████████████████████." Exs. 5-6; *see also* Ex. 7 (███████████████████████████████████████████ ██████████████).

Similarly, ASPI's South African scientists met with non-South African employees including Mann and CFO Heather Kiessling for "Prep Session[s]" concerning "Lasers," "Engineering," and "R&D," to get ready for prospective U.S. customer TerraPower's upcoming visit to ASPI's South Africa facilities, in connection with the two companies' discussions concerning High-Assay Low-Enriched Uranium (HALEU) production. Exs. 8-10. ██████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████." Ex. 11. ████████████████████████████

███████████████████████████████████████████████

██████ (Ex. 12) ████████████████████████ (Ex. 13).

ASPI hosted these and other foreign investors and business partners, giving tours of its South African facilities, overviews of its technology from ASPI's senior South African scientists and engineers, and even tours of the facilities of NECSA, the South African state-owned nuclear research company. *E.g.*, Ex. 14 (Swedish firm Blykalla proposed an agenda including "HALEU technology deep dive, capacity and development timeline," to which Mann responded "That looks like a great schedule"); *see also* Exs. 15-18. South African governmental officials readily cooperated with ASPI's efforts to disclose its planned enrichment technology to such foreigners, arranging, for example, for TerraPower's U.S. representatives to meet with officials from NECSA and the Department of Mineral Resources and Energy. *See* Exs. 19-20.

In addition, ASPI consultancy agreements show that South African personnel and subsidiaries transferred ownership of enrichment technology and related documents out of South Africa. *See* Exs. 21-24 (definitions of "Client Property"). Further reflecting the non-South African

16

ownership of ASPI's uranium QE technology and related documents, a "Licence Agreement" between ASP Isotopes UK Ltd and Quantum Leap Energy LLC (organized in Delaware), states that *the U.K. company* "owns the . . . Technology," defined as "proprietary technologies and methods used to separate Subject Isotopes . . . including but not limited to the Quantum Enrichment," where the "Subject Isotopes" expressly include "Uranium-235." Ex. 25. In sum, Defendants' repeated disclosure of nuclear-related and enrichment technology-related information *out of South Africa* belies their argument that they are prohibited under South African laws from producing the requested discovery here.

### B.    An International Comity Analysis, Although Unnecessary, Favors Production

Where the party resisting discovery proves a true conflict between foreign and U.S. laws, courts undertake a multifactor international comity analysis to determine whether to compel production. Even where a true conflict is shown, the Supreme Court has squarely held that foreign "statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 198 (S.D.N.Y. 2013) (quoting *Aérospatiale*, 482 U.S. at 544 n.29). The Court has power to "impose discovery under the Federal Rules of Civil Procedure when," as here, "it has personal jurisdiction over the foreign party," and this is true "notwithstanding provisions of foreign law that would prohibit production." *Chevron*, 296 F.R.D. at 198.

Because Defendants have failed to carry their burden to prove a true conflict, the Court need not further analyze their objections based on the Nuclear Laws. *See S.E.C. v. Gibraltar Glob. Sec., Inc.*, 2015 WL 1514746, at *4 (S.D.N.Y. Apr. 1, 2015) ("In the absence of a true conflict between domestic and foreign law, it is unnecessary to engage in a comity analysis"); *Aphria*, 2024 WL 4335819, at *3 ("[w]ithout a demonstrable conflict, no comity analysis is necessary."); *Baliga*, 385 F. Supp. 3d at 222-23 (similar).

17

Even if the Court overlooks Defendants' failure to establish a true conflict, an international comity analysis strongly favors production. Courts in the Second Circuit consider seven factors to evaluate whether to order discovery that conflicts with foreign law:

> (1) the importance to the investigation or litigation of the documents or other information requested;
>
> (2) the degree of specificity of the requests;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; []
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located[;]
>
> . . .
>
> (6) the hardship of compliance on the party or witness from whom discovery is sought; and
>
> (7) the good faith of the party resisting discovery.

*Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 552-53 (S.D.N.Y. 2012).

Here, five factors favor production, two are neutral, and none favor Defendants' objections.

### 1.    Balancing The National Interests Favors Production

The "most important" factor is "[t]he fifth factor—the balancing of national interests" because "it directly addresses the relations between sovereign nations." *Gibraltar*, 2015 WL 1514746, at *5. Here, the securities trading at issue "occurred on a United States exchange in stock registered under the Exchange Act" and "the United States has a substantial interest in fully and fairly adjudicating matters before its courts, and achieving that goal is only possible with complete discovery." *In re DiDi Glob. Inc. Sec. Litig.*, 2025 WL 267893, at *1, *5 (S.D.N.Y. Jan. 22, 2025) (granting plaintiffs' motion to compel even where "Chinese data security, state secret, and criminal laws prohibit disclosure of the information sought"), *motion to certify appeal denied sub nom. In re Didi Glob. Inc. Sec. Litig.*, 2025 WL 833437 (S.D.N.Y. Mar. 17, 2025). "The strength of the United States interest in enforcing its securities laws to ensure the integrity of its financial markets

18

cannot seriously be doubted." *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 117 (S.D.N.Y. 1981).

Private lawsuits such as this further the United States' substantial interest in enforcing its securities laws. *Didi*, 2025 WL 267893, at *5; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions."). Judge McMahon has unequivocally noted the primacy of U.S. discovery rules in private federal securities litigation over conflicting foreign laws:

> My position is very clear. *If you want to raise money in the United States of America, the only laws that matter to me are the laws of the United States of America.* If you don't want to cooperate with discovery as directed by this Court pursuant to the laws of the United States of America, we have the rule, Rule 37, and it calls for remedies for the refusal to cooperate including but not limited to preclusion on any and all issues. I am not allergic to that rule.

Ex. 26 (*Alibaba* Transcript) at 10:18-11:17; *id.* at 11:9-16; *see also Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 55 (S.D.N.Y. 2018) ("Chief Judge McMahon already has made clear that Alibaba is required to comply with the discovery laws of the United States.").

As noted *supra*, ASPI sold $18.6 million of stock listed on the NASDAQ exchange during the Class Period, Plaintiff has plausibly alleged securities fraud perpetrated by ASPI through its purposeful availment of U.S. financial markets, and tens of millions of dollars in investor losses are at issue. As such, the United States' interests in enforcement of its securities laws are particularly strong, and noncompliance with Plaintiff's discovery requests would undermine those interests. *See Gibraltar*, 2015 WL 1514746, at *5.

On the other hand, South Africa's interest in stopping ASPI from producing the requested emails is negligible. Indeed, it is not even "evident that disclosure of [this] information . . . would undermine [the foreign country's] interests in any material way." *DiDi*, 2025 WL 267893, at *3.

19

While South Africa presumably does have an interest in preventing public disclosure of genuine state nuclear secrets, those are not at issue here. Moreover, that the South African government "has voiced no objection to the requested discovery . . . militates against a finding that strong national interests of [the foreign country] are at stake." *Gibraltar*, 2015 WL 1514746, at \*5; *see also Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 808639, at \*6 (S.D.N.Y. Mar. 8, 2010) (similar).

Even if Defendants later prevail upon South Africa to register objections to Plaintiff's requested discovery, such objections are not dispositive. *See In re Air Cargo Shipping Services Antitrust Litig.*, Case No. 1:06-md-01775 (E.D.N.Y., Nov. 23, 2010), ECF No. 1324 (Memorandum and Order, filed herewith as Ex. 28) at 9 (compelling production despite South Africa's blocking statute and objection by South African State Attorney that disclosure of sensitive information would "implicate[] the Republic of South Africa's national security"); *Gucci*, 2010 WL 808639, at \*5 ("even if Malysia had submitted objections, that fact is not dispositive"); *see also In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 549 (S.D.N.Y. 2002) (ordering production despite submission from the foreign state arguing that the requested information was "strictly confidential" and would violate civil and criminal statutes).

Indeed, federal courts regularly order discovery even where, unlike here, foreign laws have been shown to conflict. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 114 (2d Cir. 2013) (collecting cases compelling discovery despite conflicting foreign bank secrecy laws); *DiDi*, 2025 WL 267893, at \*1 (granting plaintiffs' motion to compel despite "DiDi contend[ing] that Chinese data security, state secret, and criminal laws prohibit disclosure of the information sought"); *In re: Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1143 and 1155 (ND. Ill. 1979) (comity did not preclude compelling production despite legislation from Australia, Canada and South Africa enacted "for the express purpose of frustrating the jurisdiction of the United States courts").

20

### 2.      The Importance Of The Documents Favors Production

The documents that Plaintiff seeks are central to this action. ASPI and Defendant Mann misled investors as to the stage of development and commercial readiness of ASPI's highly-touted QE technology for uranium enrichment. The South Africa-based documents that ASPI refuses to produce are highly relevant to the falsity of Defendants' statements, which Judge McMahon found actionably misleading, and to Defendants' scienter.

As discussed above, *all* of ASPI's scientific and technical work occurred in South Africa. *See* ECF No. 71-1 (127 of its 136 employees located in South Africa). During the meet and confer process, Defendants' counsel indicated that the South African custodians at issue almost exclusively used ASPI's South African email domain, and did not have U.S. ASPI email accounts, with the exception of CTO Strydom (who barely used the U.S. account, *see supra* note 3).

The documents and communications of ASPI's scientific and technical personnel are expected to be particularly probative of the undisclosed, adverse information known to Defendants regarding the true state of ASPI's uranium enrichment plans. As discussed above, their communications are likely to contain important documents not available through the limited collection of U.S. emails that ASPI is presently undertaking. Furthermore, Defendants' raising of multiple meritless objections to producing this discoverable information strongly suggests that there is incriminating evidence in those documents that they do not want Plaintiff to see. Plaintiff expects the requested documents to be highly probative of Defendants' fraud.

In sum, the centrality of the requested documents to the present action clearly favors production. *See DiDi*, 2025 WL 267893, at *4 ("The sought-after information is important to plaintiffs' ability to prove their claims"); *King v. Habib Bank Ltd.*, 2025 WL 965809, at *3 (S.D.N.Y. Mar. 31, 2025) (ordering defendants to produce foreign regulator inspection records because they were "directly relevant to establish the scienter requirement as to HBL's culpability").

21

### 3.    The Degree Of Specificity Of Plaintiff's Requests Favors Production

The specificity of Plaintiff's discovery requests weighs in favor of compelling production. While Plaintiff's RFPs are phrased in the customary terms of requests for "all documents" concerning specified relevant subjects (*e.g.*, RFPs 1-3 seeking documents related to QE and the use of lasers to enrich uranium), as is also customary Plaintiff has narrowed those requests through a lengthy meet and confer process and the negotiation of targeted search terms (Ex. 1). *See Chevron*, 296 F.R.D. at 205 (this factor supported production where "the parties have engaged in meet-and-confers to address defendants' objections to the requests"). And that negotiation process gives rise to Plaintiff's very specific request: ASPI need only apply the parties' agreed search terms and time periods to the "aspisotopes.co.za" email accounts for the six proposed South African custodians.

As such, there can be no serious dispute regarding the specificity of Plaintiff's requests, "which provide ample detail about precisely what information is sought." *Air Cargo*, 2010 WL 2976220, at *2 (compelling production of South Africa-based documents). And while Defendants have provided *no information whatsoever* regarding the volume of potentially responsive documents that will be produced through this commonly used and accepted methodology, even if Plaintiff's requests "may result in the production of large volumes of data," which Defendants have not shown, "the requests themselves are highly detailed," weighing in favor of production. *Id.*

### 4.    The Origin Of The Information Requested Is Neutral

The origin of the requested documents is a neutral factor. Though many of the emails themselves were likely sent from South Africa, Defendants admit that key underlying information they claim is protected originated *in the United States*. *See* ECF No. 71-4 at 9 (Defendants' Response to Interrogatory 2 stating that a "high level of protection is required" because "prior

22

iterations of the quantum enrichment (QE) technology were used to enrich uranium *in the United States*"). However, even if the Court finds that most of the information originates in South Africa, "the origin of the information can be counterbalanced with the inability to obtain the information through an alternative means, thus favoring disclosure." *Chevron*, 296 F.R.D. 168, 206. As discussed immediately below, the lack of alternative means to obtain the information favors compelling production.

### 5. The Lack Of Alternative Means Of Securing The Information Favors Production

There are no other means for Plaintiff to obtain the requested discovery. As discussed above, Defendants' production from ASPI's U.S. email accounts is not an adequate substitute. Though South Africa is a signatory to the Hague Evidence Convention, which might ordinarily provide an alternative way to obtain the documents, South Africa has declared that "Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries, will not be executed."[7] Even if the Hague Convention could potentially provide an alternative method of requesting this discovery, which it does not, "the Supreme Court has declined to 'require first resort to Convention procedures when discovery is sought from a foreign litigant.'" *DiDi*, 2025 WL 267893, at *4 (quoting *Aérospatiale*, 482 U.S. 522, 542); *see also Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *5 (S.D.N.Y. Dec. 2, 2011) (noting "particular challenges" to plaintiffs' discovery where "[a]ll potential fact witnesses are located in South Africa, where the authorities have yet to respond to letters rogatory issued under the Hague Convention more than a year ago"), *aff'd*, 509 F. App'x 21 (2d Cir. 2013). This factor thus favors production.

---

[7] *See* Hague Conference on Private International Law, *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=557&disp=resdn

### 6.    The Lack Of Hardship To Defendants Favors Production

There is no indication that Defendants would face *any*, let alone "substantial," hardship in producing the requested discovery. Defendants have provided "no information demonstrating that a [South African] individual or entity has been penalized under [the Nuclear Laws] or other [South African] laws for compliance with a discovery demand in a U.S. court." *DiDi*, 2025 WL 267893, at *4 (discussing Chinese laws). Moreover, "there is no reliable evidence that the [South African] government actually has objected to disclosure of the sought after information or threatened [ASPI] with penalties for complying with a discovery demand." *Id.*

Moreover, if ASPI's assertion that it is prohibited from disclosing any information about its South African uranium enrichment plans is true (it is not, *see supra* Sec. III.A), then the fact that ASPI has not already been prosecuted for its repeated disclosures of such information would prove that the laws it cites are not enforced. After all, ASPI repeatedly told South African regulators, including from the state-owned nuclear company NECSA, that it planned to disclose its technology to foreign investors and business partners. *See* Exs. 19-20. Far from objecting, the regulators met with these foreign third parties and even allowed them to tour NECSA's facilities. *See id.*; *see also* Exs. 15-16, 18.

Furthermore, ASPI's SEC filings make clear that it has processes in place to provide even genuinely restricted information when it chooses to do so. *See* ECF No. 71-1 at 21 ("We have compliance systems in our U.S. and non-U.S. subsidiaries to identify those products and technologies that are subject to export control regulatory restrictions and, where required, we obtain authorization from relevant regulatory authorities . . . for technology transfers to foreign consultants, companies, universities or foreign national employees."). And Defendants concede that they have the ability to segregate documents that "implicate nuclear security concerns," and *have already done so* to produce "communications involving ASPI's S.A. email domain

24

(aspisotopes.co.za)." ECF No. 72 at 1-2. Defendants cannot show any hardship arising from compliance with their discovery obligations.

### 7.    ASPI's Good Faith In Resisting Discovery, Or Lack Thereof, Is Neutral

As discussed above, ASPI's blanket refusal to produce *any* documents from its South African email domain is meritless. A good faith assertion of their objection based on South African laws would have been to use such objections only to withhold specific documents to which the laws actually applied (or, at least, appeared to actually apply). Instead, ASPI asserted a smattering of meritless objections, which it plainly fails to substantiate. While Plaintiff does not at this time accuse ASPI of bad faith, nor does he concede it has acted in good faith. "Accordingly, this factor does not weigh for or against production." *King*, 2025 WL 965809, at *5.

## IV.    South Africa's Blocking Statute Is Entitled To Little Or No Weight

In their March 10, 2026, discovery letter, Defendants *for the first time* raised South Africa's Protection of Business Act No. 99 of 1987 ("Blocking Statute") as an additional obstacle to production.[8] The Blocking Statute purports to broadly prohibit furnishing "any information as to any business" in response to discovery requests "emanating from outside the Republic in connection with any civil proceedings." Blocking Statute §1(1)(b). The Blocking Statute does not justify Defendants' refusal to produce.

Unlike the Nuclear Laws, the Blocking Statute does facially conflict with, and indeed was *enacted by South Africa to frustrate*, U.S. discovery laws. Nevertheless, an international comity analysis clearly favors production. Plaintiff's analysis of the second (importance of the documents), third (specificity of the requests), fourth (origin of the information), and seventh

---

[8] The original text of the Blocking Statute as published by the South African government is available at https://www.gov.za/documents/acts/protection-businesses-act-99-1978-30-may-1978

(good or bad faith) factors in the context of the Nuclear Laws is largely the same in the context of the Blocking Statute. *See supra* Part III.B. Further analysis of the Blocking Statute under the first (balance of national interests), fifth (alternative means of production), and sixth (lack of hardship to producing party) factors likewise strongly favors production.

### A.     South Africa's Interest In Applying The Blocking Statute, Which Is Simply Designed To Impede U.S. Civil Discovery, Is Minimal

South Africa's interest in barring production in the instant case is far outweighed by the United States' strong interest in adjudicating a securities fraud perpetrated on an American exchange that harmed hundreds or thousands of American investors. *See supra* Part III.B.1. South Africa's interest in enforcing the Blocking Statute is negligible. The Blocking Statute was passed with the express purpose of frustrating, or *blocking*, foreign law—specifically, U.S. discovery. *Uranium Antitrust Litig.*, 480 F. Supp. at 1143 (the Blocking Statute was enacted "for the express purpose of frustrating the jurisdiction of the United States courts over the activities of the alleged international uranium cartel"); Richard Frimpong Oppong, *Private International Law in Africa: The Past, Present, and Future*, 55 Am. J. Comp. L. 677, 708 (2007) (the Blocking Statute "was intended to shield South African companies from the effects of American anti-trust laws").

Such blocking statutes are entitled to little, if any, deference from U.S. Courts. *See Aérospatiale*, 482 U.S. at 544 n.29 (blocking statutes "need not be given the same deference by courts of the United States as substantive rules of law"); *id.* (French blocking statute "if taken literally, would appear to represent an extraordinary exercise of legislative jurisdiction by the Republic of France over a United States district judge, forbidding him or her to order any discovery from a party of French nationality"); *Uranium Antitrust Litig.*, 480 F. Supp. at 1156 (the Court compelled production of South African "uranium-related documents," in spite of the Blocking Statute"); *Air Cargo*, 2010 WL 2976220, at *2 ("The South African interest in enforcing the

26

blocking statute . . . is entitled to less deference since it is not a substantive rule of law at variance with the law of the United States, but rather one whose primary purpose is to protect its citizens from discovery obligations in foreign courts."). The Court should not defer to a foreign legislature's blatant attempt to circumvent the American judicial process.

**B.     There Are No Alternative Means Of Production**

The Blocking Statute provides for a single stated exception to its ban on production, which is really no exception at all, by allowing for production "with the permission of the Minister of Economic Affairs." *Id.* at §1(1); *see also Air Cargo*, 2010 WL 2976220, at \*2 ("the South African statute does not even permit a response via the Hague Convention or letters rogatory absent ultimate approval by the Ministry"). Defendants apparently have requested no such approval. Regardless, any such request would appear to be doomed from the outset, given South Africa's policy of trying to shield companies from U.S. civil discovery. There is no realistic alternative means of obtaining the requested information under the Blocking Statute.

**C.     Defendants Will Not Face Any Hardship**

Defendants fail to cite a single instance of the Blocking Statute being enforced to punish any person or company for producing documents in U.S. discovery. *See Air Cargo*, 2010 WL 2976220, at \*2 (ordering production of South Africa-based documents where "defendant cite[d] the prospect of criminal sanction if it violate[d] the [B]locking [S]tatute, [but] cited no instance in which such sanctions have ever been imposed"); *see also* Ex. 28 (*Air Cargo* Order) at 11 ("I agree with Magistrate Judge Pohorelsky's finding that there is no realistic chance of sanctions or prosecution in the event that [South African defendant] obeys the Court's production order.").

Indeed, "the [Blocking Statute] *has seldom been invoked, and even where it has, the courts have been careful to construe its scope narrowly*." Oppong, 55 Am. J. Comp. L. at 709. Defendants' claims to hardship are speculative at best, thus favoring production. *See, e.g., Milliken & Co. v.*

*Bank of China*, 758 F. Supp. 2d 238, 249-50 (S.D.N.Y. 2010) (ordering production where defendant failed to show a single instance in which sanctions have been opposed for production under the relevant foreign statute).

## CONCLUSION

For the foregoing reasons, the Court should compel ASPI to produce the requested documents from its South African email domain.

DATED: March 26, 2026    Respectfully submitted,

        **GLANCY PRONGAY WOLKE & ROTTER LLP**

        By: */s/  Garth Spencer*
        Garth Spencer (GS-7623)
        Robert V. Prongay
        John C. Roberts (*pro hac vice*)
        Amir A. Soleimanpour (*pro hac vice* forthcoming)
        1925 Century Park East, Suite 2100
        Los Angeles, CA 90067
        Telephone: (310) 201-9150
        Facsimile: (310) 201-9160
        Email: gspencer@glancylaw.com
          rprongay@glancylaw.com
          jroberts@glancylaw.com
          asoleimanpour@glancylaw.com

        Gregory B. Linkh (GL-0477)
        230 Park Ave., Suite 358
        New York, NY 10169
        Telephone: (212) 682-5340
        Facsimile: (212) 884-0988
        Email: glinkh@glancylaw.com

        *Counsel for Plaintiff Mark Leone and Class*

28

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1</u>**

The foregoing memorandum contains 8,679 words, excluding the caption, table of contents, table of authorities, signature blocks, and certificates, in compliance with Local Civil Rule 7.1(c).

Dated: March 26, 2026                                    */s/ Garth Spencer*
                                                        Garth Spencer

**<u>PROOF OF SERVICE</u>**

True and correct copies of the foregoing redacted document were served on counsel of record by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York.

True and correct copies of the unredacted version of the foregoing redacted document were served on counsel of record by email.

Dated: March 26, 2026                                    */s/ Garth Spencer*
                                                        Garth Spencer