# Exhibit 22

DATED 29th November 2022

CONSULTANCY AGREEMENT

between

**ASP ISOTOPES UK LTD**

and

**Hendrik J Strydom**

CONFIDENTIAL

ASPI_00025311

# CONTENTS

## CLAUSE

1. Interpretation ............................................................................................. 2

2. Term of engagement .................................................................................. 5

3. Duties and obligations ............................................................................... 5

4. Fees .......................................................................................................... 8

5. Expenses ................................................................................................... 8

6. Other activities ......................................................................................... 8

7. Confidential information ............................................................................ 8

8. Data protection ......................................................................................... 9

9. Intellectual property ................................................................................ 11

10. Insurance and liability ............................................................................ 12

11. Termination ............................................................................................ 13

12. Obligations on termination ..................................................................... 14

13. Status ..................................................................................................... 14

14. Notices ................................................................................................... 15

15. Entire agreement .................................................................................... 16

16. Variation ................................................................................................ 16

17. Counterparts ........................................................................................... 16

18. Third party rights .................................................................................... 16

19. Governing law ........................................................................................ 17

20. Jurisdiction ............................................................................................. 17

## SCHEDULE

Schedule 1    Services ................................................................................. 18

Schedule 2    Processing, Personal data and Data subjects ......................... 19

1

ASPI_00025312

This agreement is dated 29th November 2022

**Parties**

(1) ASP ISOTOPES UK LTD incorporated and registered in England and Wales with company number 14252657 whose registered office is at 128 City Road, London. EC1V 2NX (**Client**)

(2) Hendrik Strydom of 500 Piering Road, Elarduspark x2, Pretoria 0181, South Africa (**Consultant**)

**Agreed terms**

### 1. Interpretation

The following definitions and rules of interpretation apply in this agreement (unless the context requires otherwise).

1.1 Definitions:

**Board**: the board of directors of the Client (including any committee of the board duly appointed by it).

**Business of the Client**: The separation of gases including the design gas separators, and the design and creation of records of gas flows, pressures and temperatures used in the operation of separators, the creation of algorithms, relating to performance of separators and the modification and adjustment of gas separators relative to differing molecular masses.

**Business Opportunities**: any opportunities which the Consultant becomes aware of during the Engagement which relate to the Business of the Client or any Group Company or which the Board reasonably considers might be of benefit to the Client or any Group Company.

**Business Day**: a day, other than a Saturday, Sunday or public holiday in England, when banks in London are open for business.

**Capacity**: as agent, consultant, director, employee, owner, partner, shareholder or in any other capacity.

**Commencement Date**: 29th November, 2022.

**Client Property**: all documents, books, manuals, materials, records, correspondence, papers and information, particularly Intellectual Property Rights, (on whatever media and wherever located) relating to the affairs or Business of the Client or any Group Company or its or their customers and business contacts, and any equipment, keys, hardware or

2

CONFIDENTIAL

ASPI_00025313

software provided for the Consultant's use by the Client during the Engagement, and any data or documents (including copies) produced, maintained or stored by the Consultant on the Client or the Consultant's computer systems or other electronic equipment during the Engagement, which, for the avoidance of doubt, shall include any and all such Client Property created by the Consultant as part of the Works.

**Confidential Information**: information in whatever form (including without limitation, in written, oral, visual or electronic form or on any magnetic or optical disk or memory and wherever located) relating to the Business of the Client and the customers, clients, suppliers, products, affairs and finances of the Client or any Group Company for the time being confidential to the Client or any Group Company and trade secrets including, without limitation, technical data, know-how, show-how and other technical proprietary information relating to the Business of the Client or of any Group Company or any of its or their suppliers, customers, clients, agents, distributors, shareholders, management or business contacts, including in particular (by way of illustration only and without limitation) information relating to the research and development subject activity of the Company, details of processes or mechanisms developed for the Business of the Client of any kind or sort whatsoever,  and including (but not limited to) information that the Consultant creates, develops, receives or obtains in connection with his Engagement, whether or not such information (if in anything other than oral form) is marked confidential.

**Deliverable**: any outputs of the Services and any other documents or materials provided by the Consultant to the Client as specified in Schedule 1 or in relation to the Services (excluding the Consultant's equipment) and in particular, the details of any process or design reduced to written form.

**Data Protection Legislation:** all applicable data protection and privacy legislation in force from time to time in the UK including the retained EU law version of the General Data Protection Regulation ((EU) 2016/679) (UK GDPR), the Data Protection Act 2018 (and regulations made thereunder) or any successor legislation, and all other legislation and regulatory requirements in force from time to time which apply to a party relating to the use of personal data (including, without limitation, the privacy of electronic communications).

**Engagement**: the engagement of the Consultant by the Client on the terms of this agreement.

**Group Company**: subsidiaries or holding companies of the Client from time to time and any subsidiary of any such holding company from time to time.

**Insurance Policies**: commercial general liability insurance cover, employer's liability insurance cover and public liability insurance cover.

**Intellectual Property Rights**: patents, utility models, rights to Inventions, copyright, works of authorship and neighbouring and related rights, moral rights, trademarks, logos and service marks, business names and domain names, brand names and brand marks, rights in get-up, goodwill and the right to sue for passing off or unfair competition, rights in

3

ASPI_00025314

designs, rights in computer software, database rights, rights to use, processes, drawings, specifications, formulae, compositions, manufacturing and production processes and techniques, social media accounts and URLs, web pages (dynamic or static), websites, layouts and web libraries, Confidential Information and non-public information, know-how and trade secrets and all other intellectual property rights, in each case whether registered or unregistered and including all applications and rights to apply for and be granted, renewals or extensions of, and rights to claim priority from, such rights and all similar or equivalent rights or forms of protection which subsist or will subsist now or in the future in any part of the world, together with the goodwill associated with any of the foregoing, and including, for the avoidance of doubt, and such rights created, prepared or otherwise included in the Works.

**Invention**: any invention, idea, discovery, development, design, improvement, process or innovation made by the Consultant in the provision of the Services, whether or not patentable or capable of registration, and whether or not recorded in any medium.

**Services**: the services to be provided by the Consultant in a consultancy capacity for the Client or any Group Company as more particularly described in Schedule 1.

**Subsidiary**: has the meaning given in clause 1.6.

**Substitute**: a substitute engaged by the Consultant under the terms of clause 3.3.

**Termination Date**: the date of termination of this agreement, howsoever arising.

**Works**: all records, reports, documents, data sheets, papers, drawings, designs, transparencies, photos, graphics, images, logos, typographical arrangements, software, and all other materials in whatever form, including but not limited to hard copy and electronic form, prepared by the Consultant at any time pursuant to the Engagement in providing the Deliverables through the provision of the Services.

1.2 The headings in this agreement are inserted for convenience only and shall not affect its construction.

1.3 A reference to a particular law is a reference to it as it is in force for the time being taking account of any amendment, extension, or re-enactment and includes any subordinate legislation for the time being in force made under it.

1.4 Unless the context otherwise requires, words in the singular shall include the plural and in the plural shall include the singular.

1.5 The Schedules form part of this agreement and shall have effect as if set out in full in the body of this agreement. Any reference to this agreement includes the Schedules.

1.6 A reference to a **holding company** or a **subsidiary** means a holding company or a subsidiary (as the case may be) as defined in section 1159 of the Companies Act 2006 [and a company shall be treated, for the purposes only of the membership requirement

4

ASPI_00025315

contained in sections 1159(1)(b) and (c), as a member of another company even if its shares in that other company are registered in the name of (a) another person (or its nominee), whether by way of security or in connection with the taking of security, or (b) as a nominee].

## 2. Term of engagement

2.1 The Client shall engage the Consultant and the Consultant shall provide the Services on the terms of this agreement.

2.2 The Engagement shall be deemed to have commenced on the Commencement Date and shall continue unless and until terminated:
   (a) as provided by the terms of this agreement; or
   (b) by either party giving to the other written notice.

## 3. Duties and obligations

3.1 During the Engagement the Consultant shall:

   (a) provide the Services, including the Deliverables, with all due care, skill and ability and use their best endeavours to promote the interests of the Client or any Group Company;

   (b) unless prevented by ill health or accident, devote sufficient time in each calendar month to the carrying out of the Services, as may be necessary for their proper performance and ensure that the Deliverables conform in all respects with, and are achieved by any deadlines specified in, Schedule 1 and that the Deliverables shall be fit for any purpose expressly or implicitly made known to the Consultant by the Client; and

   (c) promptly give to the Board all such information and reports as it may reasonably require in connection with matters relating to the provision of the Services ,including the Deliverables, Works, or the Business of the Client or any Group Company.

3.2 If the Consultant is unable to provide the Services due to illness or injury, they shall advise the Client of that fact as soon as reasonably practicable. For the avoidance of doubt, no fee shall be payable in accordance with clause 4 in respect of any period during which the Services are not provided.

3.3 The Consultant may, with the prior written approval of the Client and subject to the following proviso, appoint a suitably qualified and skilled Substitute to perform the Services

5

CONFIDENTIAL

ASPI_00025316

on their behalf, provided that the Substitute shall be required to enter into direct undertakings with the Client, including with regard to Confidential Information. If the Client accepts the Substitute, The Consultant shall continue to invoice the Client in accordance with clause 4 and shall be responsible for the remuneration of the Substitute. For the avoidance of doubt, the Consultant will continue to be subject to all duties and obligations under this agreement for the duration of the appointment of the Substitute.

3.4 If a Substitute is appointed, the provisions relating to sub-processor obligations under clause 8 will apply.

3.5 The Consultant shall use reasonable endeavours to ensure that they are available at all times on reasonable notice to provide such assistance or information as the Client may require.

3.6 Unless they have been specifically authorised to do so by the Client in writing, the Consultant shall not:

(a) have any authority to incur any expenditure in the name of or for the account of the Client; or

(b) hold themselves out as having authority to bind the Client.

3.7 The Consultant shall comply with all reasonable standards of safety and comply with the Client's health and safety procedures from time to time in force at the premises where the Services are provided and report to the Client any unsafe working conditions or practices.

3.8 The Consultant shall comply with the Client's policies on social media, use of information and communication systems, anti-harassment and bullying equal opportunities and rules in relation to the storage and transfer of Confidential Information and Intellectual Property.

3.9 The Consultant undertakes to the Client that during the Engagement they shall use their best endeavours to offer (or cause to be offered) to the Client any Business Opportunities as soon as practicable after the same shall have come to their knowledge and, in any event, before the same shall have been offered by the Consultant (or caused by the Consultant to be offered) to any other party provided that nothing in this clause shall require the Consultant to disclose any Business Opportunities to the Client if to do so would result in a breach by the Consultant of any obligation of confidentiality or of any fiduciary duty owed by the Consultant to any third party.

3.10    The Consultant shall:

(a) comply with all applicable laws, regulations, codes and sanctions relating to anti-bribery and anti-corruption including but not limited to the Bribery Act 2010 (**Relevant Requirements**);

6

(b) not engage in any activity, practice or conduct which would constitute an offence under sections 1, 2 or 6 of the Bribery Act 2010 if such activity, practice or conduct had been carried out in the UK;

(c) comply with the Client's ethics and anti-bribery and anti-corruption policies in each case as the Client or the relevant industry body may update them from time to time (**Relevant Policies**);

(d) promptly report to the Client any request or demand for any undue financial or other advantage of any kind received by the Consultant in connection with the performance of this agreement;

(e) ensure that all persons associated with the Consultant or other persons who are performing services or providing goods in connection with this agreement comply with this clause 3.10; and

3.11    The Consultant shall:

(a) not engage in any activity, practice or conduct which would constitute either:
    (i)    a UK tax evasion facilitation offence under section 45(1) of the Criminal Finances Act 2017; or
    (ii)   a foreign tax evasion facilitation offence under section 46(1) of the Criminal Finances Act 2017;

(b) promptly report to the Client any request or demand from a third party to facilitate the evasion of tax within the meaning of Part 3 of the Criminal Finances Act 2017 or any suspected tax evasion offences or facilitation of tax evasion offences, whether under UK law or under the law of any foreign country, in connection with the performance of this agreement;

(c) ensure that all persons associated with the Consultant or other persons who are performing services or providing goods in connection with this agreement comply with this clause 3.11; and

3.12    Failure to comply with clause 3.11 may result in the immediate termination of this agreement.

7

CONFIDENTIAL

ASPI_00025318

## 4. Fees

4.1 The Client shall pay the Consultant a fee of £5000 inclusive of VAT. upon satisfactory completion of the Services and production of the Deliverables.

4.2 The fees set out in this clause 4.1 shall only be payable to the Consultant following the achievement of a Deliverable (as set out more particularly in Schedule 1) to the satisfaction of the Client.

4.3 The Client shall be entitled to deduct from the fees (and any other sums) due to the Consultant any sums that the Consultant may owe to the Client or any Group Company at any time.

4.4 Payment in full or in part of the fees claimed under clause 4 or any expenses claimed under clause 5 shall be without prejudice to any claims or rights of the Client or any Group Company against the Consultant in respect of the provision of the Services.

## 5. Expenses

5.1 The Consultant shall bear their own expenses incurred in the course of the Engagement.

5.2 If the Consultant is required to travel abroad in the course of the Engagement, they shall be responsible for any necessary insurances, inoculations and immigration requirements.

## 6. Other activities

Nothing in this agreement shall prevent the Consultant from being engaged, concerned or having any financial interest in any Capacity in any other business, trade, profession or occupation during the Engagement provided that:

(a) such activity does not cause a breach of any of the Consultant's obligations under this agreement;

(b) the Consultant shall not engage in any such activity if it relates directly or indirectly to a business which is similar to or in any way competitive with the Business of the Client or any Group Company without the prior written consent of the Client; and

(c) the Consultant shall give priority to the provision of the Services to the Client over any other business activities undertaken by the Consultant during the course of the Engagement.

## 7. Confidential information

8

CONFIDENTIAL

ASPI_00025319

7.1 The Consultant acknowledges that in the course of the Engagement they will have access to Confidential Information. The Consultant has therefore agreed to accept the restrictions in this clause 7.

7.2 Subject to clause 0, the Consultant shall not (except in the proper course of their duties), either during the Engagement or at any time after the Termination Date, use or disclose to any third party (and shall use their best endeavours to prevent the publication or disclosure of) any Confidential Information. This restriction does not apply to:
(a) any use or disclosure authorised by the Client or required by law; or
(b) any information which is already in, or comes into, the public domain otherwise than through the Consultant's unauthorised disclosure.

7.3 At any stage during the Engagement, the Consultant will promptly on request return all and any Client Property in their possession to the Client.

7.4 Nothing in this clause 7 shall prevent the Consultant or, where applicable, the Client (or any of its officers, employees, workers or agents) from:
(a) reporting a suspected criminal offence to the police or any law enforcement agency or co-operating with the police or any law enforcement agency regarding a criminal investigation or prosecution;
(b) doing or saying anything that is required by HMRC or a regulator, ombudsman or supervisory authority;
(c) whether required to or not, making a disclosure to, or co-operating with any investigation by, HMRC or a regulator, ombudsman or supervisory authority regarding any misconduct, wrongdoing or serious breach of regulatory requirements (including giving evidence at a hearing);
(d) complying with an order from a court or tribunal to disclose or give evidence;
(e) making any other disclosure as required by law; or
(f) disclosing information to any person who owes a duty of confidentiality (which the Consultant and the Client agree not to waive) in respect of information disclosed to them, including legal or tax advisers or, in the Consultant's case, persons providing them with medical, therapeutic, counselling or support services.

## 8. Data protection

8.1 The Client will collect and process information relating to the Consultant in accordance with the privacy notice which is annexed to this agreement.

8.2 The Consultant and the Client acknowledge that for the purposes of the Data Protection Legislation, the Client is the controller, and the Consultant is the processor.

8.3 The Consultant and the Client will comply with the Data Protection Legislation.

9

ASPI_00025320

8.4 Schedule 2 sets out the scope, nature and purpose of the processing by the Consultant, the duration of the processing and the types of personal data (as defined in the Data Protection Legislation (**Personal Data**)) and categories of data subject.

8.5 The Consultant shall, in relation to any Personal Data processed in connection with the Engagement:

(a) process that Personal Data only on written instructions of the Client;

(b) keep the Personal Data confidential;

(c) comply with the Client's privacy standard;

(d) comply with the Client's reasonable instructions with respect to processing Personal Data;

(e) assist the Client at the Client's cost in responding to any data subject access request and to ensure compliance with its obligations under the Data Protection Legislation with respect to security, breach notifications, privacy impact assessments and consultations with supervisory authorities or regulators;

(f) notify the Client without undue delay on becoming aware of a Personal Data breach or communication which relates to the Client's or Consultant's compliance with the Data Protection Legislation;

(g) at the written request of the Client, delete or return Personal Data (and any copies of the same) to the Client on termination of the Engagement unless required by the Data Protection Legislation to store the Personal Data; and

(h) maintain complete and accurate records and information to demonstrate compliance with this clause 8.5.

8.6 The Consultant shall ensure that they have in place appropriate technical or organisational measures, reviewed and approved by the Client, to protect against unauthorised or unlawful processing of Personal Data and against accidental loss or destruction of, or damage to, Personal Data, appropriate to the harm that might result from the unauthorised or unlawful processing or accidental loss, destruction or damage and the nature of the data to be protected, having regard to the state of technological development and the cost of implementing any measures. Such measures may include, where appropriate:

(a) pseudonymising and encrypting Personal Data;

(b) ensuring confidentiality, integrity, availability and resilience of its systems and services;

(c) ensuring that availability of and access to Personal Data can be restored in a timely manner after an incident; and

(d) regularly assessing and evaluating the effectiveness of the technical and organisational measures adopted by it.

8.7 The Client does not agree to the Consultant appointing any third-party processor of Personal Data under this agreement.

8.8 The Consultant shall have personal liability for and shall indemnify the Client [and any Group Company for any loss, liability, costs (including legal costs), damages, or expenses

10

ASPI_00025321

resulting from any breach by the Consultant or a sub-processor engaged by the Consultant of the Data Protection Legislation and shall maintain in force full and comprehensive Insurance Policies.

## 9. Intellectual property

9.1 The Consultant agrees that the Works and all Intellectual Property Rights and Confidential Information created in performing the Services and producing the Works and the Inventions and all materials embodying these rights shall vest in the Client from the outset to the fullest extent permitted by law. Insofar as such rights do not vest automatically by operation of law or under this agreement, the Consultant agrees to hold legal title in these rights and Inventions on trust for and on behalf of the Client.

9.2 The Consultant undertakes:
  (a) to notify to the Client in writing full details of any Inventions promptly on their creation;
  (b) to keep details of all Inventions secret;
  (c) whenever requested to do so by the Client and in any event on the termination of the Engagement, promptly to deliver to the Client all correspondence, documents, papers and records on all media (and all copies or abstracts of them), recording or relating to any part of the Works and the process of their creation which are in their possession, custody or power;
  (d) not to register nor attempt to register any of the Intellectual Property Rights in the Works, nor any of the Inventions, unless requested to do so by the Client; and
  (e) to do all acts necessary to confirm that absolute title in all Intellectual Property Rights in the Works and the Inventions vest in the Client.

9.3 The Consultant warrants to the Client that:
  (a) they have not given and will not give permission to any third party to use any of the Works or the Inventions, nor any of the Intellectual Property Rights in the Works;
  (b) they are unaware of any use by any third party of any of the Works or Intellectual Property Rights in the Works; and
  (c) the use of the Works or the Intellectual Property Rights in the Works by the Client will not infringe the rights of any third party.

9.4 The Consultant agrees to indemnify the Client and keep it indemnified at all times against all or any costs, claims, damages or expenses incurred by the Client, or for which the Client may become liable, with respect to any intellectual property infringement claim or other claim relating to the Works or Inventions supplied by the Consultant to the Client during the course of providing the Services. The Consultant shall maintain adequate liability insurance coverage and ensure that the Client's interest is noted on the policy, and shall supply a copy of the policy to the Client on request. The Client may at its option

11

ASPI_00025322

satisfy this indemnity (in whole or in part) by way of deduction from any payments due to the Consultant.

9.5 The Consultant waives any moral rights in the Works, Inventions and the Intellectual Property in the Works and Inventions to which they are now or may at any future time be entitled to under Chapter IV of the Copyright Designs and Patents Act 1988 or any similar provisions of law in any jurisdiction, including (but without limitation) the right to be identified, the right of integrity and the right against false attribution, and agrees not to institute, support, maintain or permit any action or claim to the effect that any treatment, exploitation or use of such Works or other materials infringes the Consultant's moral rights.

9.6 The Consultant acknowledges that, except as provided by law, no further fees or compensation other than those provided for in this agreement are due or may become due to the Consultant in respect of the performance of their obligations under this clause 9.

9.7 The Consultant undertakes, at the expense of the Client, at any time either during or after the Engagement, to execute all documents, make all applications, give all assistance and do all acts and things as may, in the opinion of the Client, be necessary or desirable to vest the Works, any Inventions and the Intellectual Property Rights in the Works and any Inventions in, and to register them in, the name of the Client and to defend the Client against claims that Works embodying Intellectual Property Rights or Inventions infringe third party rights, and otherwise to protect and maintain the Intellectual Property Rights in the Works and the Inventions.

9.8 The Consultant irrevocably appoints the Client to be their attorney in their name and on their behalf to execute documents, use the Consultant's name and do all things which are necessary or desirable for the Client to obtain for itself or its nominee the full benefit of this clause.

## 10. Insurance and liability

10.1    The Consultant shall have personal liability for and shall indemnify the Client and any Group Company for any loss, liability, costs (including reasonable legal costs), damages or expenses arising from any breach by the Consultant or a Substitute engaged by the Consultant of the terms of this agreement including any negligent or reckless act, omission or default in] the provision of the Services and shall accordingly maintain in force during the Engagement full and comprehensive Insurance Policies.

10.2    The Consultant shall ensure that the Insurance Policies are taken out with reputable insurers acceptable to the Client and that the level of cover and other terms of insurance are acceptable to and agreed by the Client.

12

ASPI_00025323

10.3     The Consultant shall on request supply to the Client copies of such Insurance Policies and evidence that the relevant premiums have been paid.

10.4     The Consultant shall notify the insurers of the Client's interest and shall cause the interest to be noted on the Insurance Policies together with a provision to the effect that, if any claim is brought or made by the Client against the Consultant in respect of which the Consultant would be entitled to receive indemnity under any of the Insurance Policies, the relevant insurer will indemnify the Client directly against such claim and any charges, costs and expenses in respect of such claim. If the relevant insurer does not so indemnify the Client, the Consultant shall use all insurance monies received by them to indemnify the Client in respect of any claim and shall make good any deficiency from their own resources.

10.5     The Consultant shall comply with all terms and conditions of the Insurance Policies at all times. If cover under the Insurance Policies shall lapse or not be renewed or be changed in any material way or if the Consultant is aware of any reason why the cover under the Insurance Policies may lapse or not be renewed or be changed in any material way, the Consultant shall notify the Client without delay.

## 11. Termination

11.1     Notwithstanding the provisions of clause 2.1, the Client may terminate the Engagement with immediate effect with no liability to make any further payment to the Consultant (other than in respect of amounts accrued before the Termination Date) if at any time the Consultant:

    (a) commits any gross misconduct affecting the Business of the Client or any Group Company;

    (b) commits any serious or repeated breach or non-observance of any of the provisions of this agreement or refuses or neglects to comply with any reasonable and lawful directions of the Client;

    (c) is convicted of any criminal offence (other than an offence under any road traffic legislation in the United Kingdom or elsewhere for which a fine or non-custodial penalty is imposed);

    (d) is in the reasonable opinion of the Board negligent or incompetent in the performance of the Services;

    (e) is declared bankrupt or makes any arrangement with or for the benefit of their creditors or has a county court administration order made against them under the County Court Act 1984;

    (f) dies or is incapacitated (including by reason of illness or accident) from providing the Services for an aggregate period of 28 days in any 52-week consecutive period;

    (g) commits any fraud or dishonesty or acts in any manner which in the opinion of the Board brings or is likely to bring the Consultant or the Client or any Group Company

13

ASPI_00025324

into disrepute or is materially adverse to the interests of the Client or any Group Company;

(h) commits any breach of the Client's policies and procedures;

(i) commits any offence under the Bribery Act 2010; or

(j) commits a UK tax evasion facilitation offence under section 45(1) of the Criminal Finances Act 2017 or a foreign tax evasion facilitation offence under section 46(1) of the Criminal Finances Act 2017.

11.2    The rights of the Client under clause 0 are without prejudice to any other rights that it might have at law to terminate the Engagement or to accept any breach of this agreement on the part of the Consultant as having brought the agreement to an end. Any delay by the Client in exercising its rights to terminate shall not constitute a waiver of these rights.

## 12. Obligations on termination

On the Termination Date the Consultant shall:

(a) immediately deliver to the Client all Client Property, the Works and original Confidential Information in their possession or under their control;

(b) subject to the Client's data retention guidelines, irretrievably delete any information relating to the Business of the Client or any Group Company, the Works, Inventions and any Intellectual Property stored on any magnetic or optical disk or memory (including but not limited to any Confidential Information) and all matter derived from such sources which is in their possession or under their control outside the premises of the Client. This obligation includes requiring any Substitute to delete such information where applicable. For the avoidance of doubt, the contact details of business contacts made during the Engagement are regarded as Confidential Information and, as such, must be deleted from personal social or professional networking accounts; and

(c) provide a signed statement that they have complied fully with their obligations under this clause 12, together with such evidence of compliance as the Client may reasonably request.

## 13. Status

13.1    The relationship of the Consultant to the Client will be that of independent contractor and nothing in this agreement shall render them an employee, worker, agent or partner of the Client and the Consultant shall not hold themselves out as such.

13.2    This agreement constitutes a contract for the provision of services and not a contract of employment and accordingly the Consultant shall be fully responsible for and shall indemnify the Client or any Group Company for and in respect of:

14

ASPI_00025325

(a) any income tax, National Insurance and social security contributions and any other liability, deduction, contribution, assessment or claim arising from or made in connection with the performance of the Services, where the recovery is not prohibited by law. The Consultant shall further indemnify the Client against all reasonable costs, expenses and any penalty, fine or interest incurred or payable by the Client in connection with or in consequence of any such liability, deduction, contribution, assessment or claim other than where the latter arise out of the Client's negligence or wilful default; and

(b) any liability arising from any employment-related claim or any claim based on worker status (including reasonable costs and expenses) brought by the Consultant or any Substitute against the Client arising out of or in connection with the provision of the Services, except where such claim is as a result of any act or omission of the Client.

13.3    The Client may at its option satisfy such indemnity (in whole or in part) by way of deduction from any payments due to the Consultant.

## 14. Notices

14.1    Any notice given to a party under or in connection with this agreement shall be in writing and shall be:

(a) delivered by hand or by pre-paid first-class post or other next working day delivery service at the address given in this agreement or as otherwise notified in writing to the other party; or

(b) sent by email to the following addresses (or an address substituted in writing by the party to be served):
   (i) Client: rainscow@aspisotopes.com
   (j) Consultant: hstrydom@aspisotopes.com

14.2    Unless proven otherwise, any notice shall be deemed to have been received:

(a) if delivered by hand, at the time the notice is left at the address given in this agreement or given to the addressee or

(b) if sent by pre-paid first-class post or other next working day delivery service, at 9.00 am on the seventh Business Day after posting; or

(c) if sent by email, at the time of transmission.

14.3    If deemed receipt under clause 0 would occur outside business hours in the place of receipt, it shall be deferred until business hours resume. In this clause 0, business hours means 9.00am to 5.00pm Monday to Friday on a day that is not a public holiday in the place of receipt.

14.4    This clause does not apply to the service of any proceedings or other documents in any legal action or, where applicable, any other method of dispute resolution.

15

CONFIDENTIAL

## 15. Entire agreement

15.1     This agreement constitutes the entire agreement between the parties [and any Group Company] and supersedes and extinguishes all previous and contemporaneous agreements, promises, assurances and understandings between them, whether written or oral, relating to its subject matter.

15.2     Each party acknowledges that in entering into this agreement it does not rely on, and shall have no remedies in respect of, any statement, representation, assurance or warranty (whether made innocently or negligently) that is not set out in this agreement.

15.3     Each party agrees that it shall have no claim for innocent or negligent misrepresentation based on any statement in this agreement.

## 16. Variation

No variation of this agreement or of any of the documents referred to in it shall be effective unless it is in writing and signed by the parties (or their authorised representatives).

## 17. Counterparts

17.1     This agreement may be executed in any number of counterparts, each of which shall constitute a duplicate original, but all the counterparts shall together constitute the one agreement.

17.2     No counterpart shall be effective until each party has delivered to the other at least one executed counterpart.

## 18. Third party rights

18.1     Except as expressly provided elsewhere in this agreement, a person who is not a party to this agreement shall not have any rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this agreement.

18.2     The rights of the parties to terminate, rescind or agree any variation, waiver or settlement under this agreement are not subject to the consent of any other person.

16

ASPI_00025327

## 19. Governing law

This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the law of England and Wales.

## 20. Jurisdiction

Each party irrevocably agrees that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this agreement or its subject matter or formation (including non-contractual disputes or claims).

This document has been executed as a deed and is delivered and takes effect on the date stated at the beginning of it.

17

CONFIDENTIAL

ASPI_00025328

**Schedule 1     Services**

1. **SERVICES**:

To provide assistance to the Company in the development of advanced modular gas separators

2. **DELIVERABLES**:

Designs and operating specifications for the Separators.

Experimental results pertaining to gas flows, pressures and temperatures used to operate the Separators.

Computational algorithms to optimize the performance of the Separators.

Modifications to the gas separators required to allow for the separation of gases of different molecular masses.

18

CONFIDENTIAL

ASPI_00025329

**Schedule 2    Processing, Personal data and Data subjects**

**Schedule Intentionally Left Blank**

CONFIDENTIAL

ASPI_00025330

Director

Executed as a
deed by ASP
Isotopes UK Ltd

     acting
by Robert
Ainscow a
director, in the
presence of:

NAME, ADDRESS
AND
OCCUPATION
OF WITNESS

MULDER BOTHA. 377 HAZYVIEWSTR
FAERIE GLEN, PRETORIA
FACILITIES MANAGER

Signed as a deed
by Hendrik
Strydom in the
presence of:

NAME, ADDRESS
AND
OCCUPATION
OF WITNESS

MULDER BOTHA. 377 HAZYVIEWSTR
FAERIE GLEN, PRETORIA.
FACILITIES MANAGER.

20

CONFIDENTIAL

ASPI_00025331