# Exhibit 28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                          :

IN RE:                     :

                          :

AIR CARGO SHIPPING SERVICES    :   MEMORANDUM AND ORDER
ANTITRUST LITIGATION          :

                          :   06-MD-1775 (JG)

MDL No. 1775               :

                          :

----------------------------------------------------------------x

A P P E A R A N C E S:

        LEVIN, FISHBEIN, SEDRAN & BERMAN
            510 Walnut Street
            Philadelphia, Pennsylvania 19106
        By:   Howard J. Sedran
            *Attorneys for Plaintiffs-Movants*

        WHITE & CASE LLP
            701 13th Street, NW
            Washington, DC 20005
        By:   J. Mark Gidley, George L. Paul and Kristen J. McAhren
            *Attorneys for Defendant South African Airways Ltd.*

ONLINE PUBLICATION ONLY

JOHN GLEESON, United States District Judge:

This opinion addresses the objections of Defendant South African Airways Ltd. ("SAA") to Magistrate Judge Victor Pohorelsky's order compelling it to produce certain transactional and cost data along with its responses to Plaintiffs' first set of interrogatories. SAA contends that it was error to order the production of these documents, principally because South Africa has asserted a sovereign interest against their disclosure. For the reasons stated below, I conclude that Magistrate Judge Pohorelsky's order was neither clearly erroneous nor contrary to law, and in fact I agree with it.

BACKGROUND

The facts of this multi-district litigation have been set forth more fully in several prior opinions of the Court, familiarity with which is assumed.

Plaintiffs, direct and indirect domestic and foreign purchasers of allegedly price-fixed airfreight shipping services, filed a motion to compel in this case on April 1, 2010, seeking SAA's production of its "Transactional Data and Cost Information" and its response to Plaintiffs' first set of interrogatories. Mot. To Compel at 1 & n.1. The transactional information sought by Plaintiffs included, *inter alia*, information revealing the origin, destination, identity of the customer, product shipped, actual weight of shipment, chargeable weight of shipment, and every price adjustment for each shipment by SAA in the period from January 1, 1998 through March 31, 2009. Ex. A to Mot. To Compel, at 2, 3. The cost information requested included information from the same time period showing, *inter alia*, the operating, overhead, transportation, fuel, insurance and security costs incurred by SAA in connection with its shipping services. *Id.* at 2. Plaintiffs' interrogatories requested information on meetings and participants in communications concerning the imposition of various surcharges, agreements between SAA and other carriers with respect to surcharges, and the actual surcharges imposed by SAA. *See* Ex. B to Mot. To Compel, at 7-9.

On July 23, 2010, Magistrate Judge Pohorelsky ordered SAA to produce the requested information to Plaintiffs, despite SAA's argument that South Africa's Protection of Businesses Act No. 99 of 1978 (the "blocking statute")[1] operated to prohibit such disclosure and the fact that the South African Minister of Trade and Industry had yet to rule on SAA's request

---

[1]     The blocking statute prohibits anyone from, *inter alia*, furnishing "any information as to any business whether carried on in or outside the Republic" in response to any request or interrogatory "emanating from outside the Republic in connection with any civil proceedings," "except with the permission of the Minister of Economic Affairs." Protection of Businesses Act 99 of 1978 § 1(b) (S. Afr.).

for permission to produce the information.  Magistrate Judge Pohorelsky ruled that the contested

information was "essential to the proof of [Plaintiffs'] claims against SAA" and was "the

principal way – perhaps the only way – that the plaintiffs will be able to establish the prices

charged and the costs incurred by SAA for its air cargo services, and thus be able to prove

whether SAA engaged in unlawful price-fixing."  Order of July 23, 2010 ("July 23 Order"), at 2-

3.  With regard to SAA's primary objection to disclosure, Magistrate Judge Pohorelsky opined

that "the United States['] interest in enforcing antitrust laws through private civil actions is one

of fundamental importance to this country's effort to encourage and maintain a competitive

economy," *id.* at 3, while the "South African interest in enforcing the blocking statute at issue

here . . . is entitled to less deference since it is not a substantive rule of law at variance with the

law of the United States, but rather one whose primary purpose is to protect its citizens from

discovery obligation in foreign courts," *id.* at 3-4.

SAA moved on August 6, 2010 for reconsideration of the Court's July 23 Order,

attaching to its motion a communication[2] from the South African government which stated that

the Minister of Trade and Industry, upon consideration of a report on the subject by the State

Attorney, Pretoria, denied SAA permission "to discover or disclose company information that is

sensitive in nature and harmful to the Republic and the continued existence of SAA."  At a status

conference on September 15, 2010, Magistrate Judge Pohorelsky granted SAA's motion for

reconsideration but issued an oral order (the "September 15 Order") declining to vacate or

modify the July 23 Order granting Plaintiffs' motion to compel.   Observing that the South

African State Attorney, Pretoria did not appear to have "look[ed] at the documents that were

---

[2]     For convenience, I will refer to the South African government's communication, which comprises a letter from the Minister of Trade and Industry and the report of the State Attorney, Pretoria, on which the Minister's letter was based, as the "Letter."  I also note that while the Minister's letter is dated July 1, 2010, SAA has stated that it received the entire communication on July 26, 2010.

requested" and failed to explain in his report why the information sought was sensitive, Magistrate Judge Pohorelsky concluded that "[n]othing in all the new materials provided to me causes me to change my analysis with respect to various factors that were analyzed before."

SAA has objected to both the July 23 and September 15 Orders.

## DISCUSSION

### A. *Standard of Review*

In considering a timely objection to a magistrate judge's ruling on a non-dispositive pretrial matter, I must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," and an order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 162-63 (E.D.N.Y. 2006) (quotation marks omitted). A magistrate judge's resolution of a discovery dispute is entitled to substantial deference. *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001).

### B. *Analysis*

When discovery is sought from a foreign nation for the purpose of litigation in a United States court, concerns of international comity require that the court perform a "particularized analysis of the respective interests of the foreign nation and the requesting nation." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the Southern Dist. of Iowa*, 482 U.S. 522, 543-44 (1987). Factors relevant to the court's analysis include "(1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the

4

availability of alternative means of securing the information; . . . (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located," *id.* at 544 n.28 (quoting Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987) ("Restatement")) (alteration omitted); (6) "the hardship of compliance on the party or witness from whom discovery is sought," *Strauss v. Crédit Lyonnais, S.A.*, 249 F.R.D. 429, 439 (E.D.N.Y. 2008) (quotation marks omitted); and (7) "the good faith of the party resisting discovery," *id.* (quotation marks omitted). The fifth factor, requiring a comparison of the national interests at stake, weighs most heavily in the analysis. *See, e.g.*, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992). It is the court's province to draw the "exact line between reasonableness and unreasonableness" in determining whether a given discovery request should be granted, but the court in all cases should "take care to demonstrate due respect for . . . any sovereign interest expressed by a foreign state." *Aérospatiale*, 482 U.S. at 546.

Because SAA objects primarily to Magistrate Judge Pohorelsky's findings and legal conclusions on the first, fourth, fifth and sixth factors, I discuss only those factors here.[3]

1. *Importance of the Documents to the Litigation*

Although SAA urges that Plaintiffs must establish that the requested information is "crucial" to this litigation, I would be hard pressed to apply a rule so antithetical to the spirit of *Aérospatiale*. *See id.* at 546 ("We do not articulate specific rules to guide this delicate task of adjudication."); *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust*

---

[3] I also note that Magistrate Judge Pohorelsky's findings that Plaintiffs' requests were sufficiently specific (the second factor) and that most if not all of the information requested originated outside of the United States (the third) were not clearly erroneous. The court declined to make a finding as to SAA's good faith in resisting disclosure, and as I find that factor to be of negligible importance in this case, I do not consider it here.

*Litig.*, No. 05-MD-1720, 2010 WL 3420517, at \*7 (E.D.N.Y. Aug. 27, 2010).  Rather, disclosure may be appropriate where the requested material is "less than crucial, but still sufficiently important to outweigh a relatively weak foreign interest."  *Payment Card*, 2010 WL 3420517, at \*7.

I defer to and fully espouse Magistrate Judge Pohorelsky's finding that the information sought by Plaintiffs is both highly relevant to their case and extremely important to their ability to prove that SAA engaged in unlawful price-fixing.  SAA's own transactional and cost information, supplemented by its responses to Plaintiffs' interrogatories, is undoubtedly the most direct and fruitful source of evidence in support of Plaintiffs' price-fixing claims.  In addition, Plaintiffs have stated that this information will be very important, if not necessary, to class certification.  SAA contends that Plaintiffs' request for a five-month stay of most discovery in this case undercuts their argument that they presently are in need of the requested information and that it is sufficiently important to their case.  As Plaintiffs explain in their submissions, this stay of discovery was requested by the Department of Justice in order to protect its ongoing criminal investigations of certain defendants in this case.  Even if Plaintiffs did not object to the Department of Justice's request for a stay, SAA's argument would still be meritless; Plaintiffs desire and expect SAA's production of the requested information, even if at a somewhat later date, and its importance to their case remains significant and is unlikely to change five months down the road.  I therefore conclude that Magistrate Judge's Pohorelsky's finding that the requested information would be central to Plaintiffs' proof of SAA's participation in the alleged price-fixing conspiracy was not clearly erroneous.

2.  *Availability of Alternative Means of Securing the Information*

In the July 23 Order, Magistrate Judge Pohorelsky expressed skepticism as to the existence of another viable avenue of disclosure that accorded with South Africa's blocking statute.  He noted that, unlike some other countries' blocking statutes, South Africa's blocking statute "does not even permit a response via the Hague Convention or letters rogatory absent ultimate approval by the Ministry."  SAA now argues that in ruling on its motion for reconsideration, Magistrate Judge Pohorelsky failed to consider that Plaintiffs had at their disposal "millions of pages of documents" by other carrier defendants in this case that have pled guilty in a parallel criminal proceeding, in addition to Plaintiffs' own records showing their purchases of cargo shipping services and the documents SAA produced to the Department of Justice and subsequently to Plaintiffs.  Finally, SAA notes that South Africa is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, T.I.A.S. No. 7444, 23 U.S.T. 2555 (1968).

Like Magistrate Judge Pohorelsky, I am unpersuaded that Plaintiffs would be able to glean evidence supporting their claims of price-fixing from the documents to which they already have access that is as detailed and complete as the evidence available in SAA's own records of its shipping services and its meetings and communications regarding surcharges.  As a result, I find that Magistrate Judge Pohorelsky's findings on this score were not clearly erroneous.  With respect to SAA's contention that the Hague Convention offers an alternative avenue for obtaining the requested information, I conclude that Magistrate Judge Pohorelsky's implicit decision that the Hague Convention did not provide a viable alternative was not clearly erroneous or contrary to law.  As Plaintiffs point out, South Africa's blocking statute provides no exceptions for evidence sought through alternative means such as international treaties; as a

7

result, if the South African government construes the blocking statute as prohibiting disclosure of certain information, the party from whom disclosure is sought is not permitted under South African law to disclose that information pursuant to an international treaty. While the applicable provision of the blocking statute begins with the qualifier, "[n]otwithstanding anything to the contrary contained in any law or other legal rule," there is nothing in the statute itself to suggest that the Hague Convention would control if it was held to be in conflict with the blocking statute. Moreover, the South African government made no mention of the Hague Convention in the Letter, demonstrating that the government did not consider the Hague Convention to provide a viable alternative means to disclosing the requested information, and SAA's counsel did not pursue this argument at the September 15, 2010 hearing. Accordingly, Magistrate Judge Pohorelsky's reticence as to the Hague Convention, reflecting his decision that it did not provide an alternative avenue for Plaintiffs' obtaining the requested information, was not clearly erroneous or contrary to law.

### 3. *Balancing of the National Interests at Stake*

As Magistrate Judge Pohorelsky observed in his July 23 Order, the United States has a strong national interest in enforcing its antitrust laws to ensure the integrity of its financial markets. *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634-35 (1985) (stating that "[w]ithout doubt, the private cause of action plays a central role in enforcing [the] regime" of the U.S. antitrust laws). An additional interest held by the United States in this case is that of "fully and fairly adjudicating matters before its courts." *Compagnie Française d'Assurance Pour le Commerce Extérieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 30 (S.D.N.Y. 1984). Magistrate Judge Pohorelsky also acknowledged South Africa's interest in

8

enforcing its blocking statute, but concluded that it deserved less deference than the United States' interests given that the blocking statute's primary purpose is to protect South Africa's citizens from discovery obligations in foreign courts. *See Aérospatiale*, 482 U.S. at 544 n.29 ("Blocking statutes that frustrate [the] goal [of adjudicating on the basis of the best information available] need not be given the same deference by courts of the United States as substantive rules of law at variance with the law of the United States.") (quotation marks omitted); *see also Payment Card*, 2010 WL 3420517, at *8 (stating that "[t]he sort of blanket prohibition imposed by the French blocking statute is different in kind" from a sovereign's stronger interest in "restrict[ing] access to its own investigative and adjudicative procedures"). SAA contends, however, that South Africa's interest extends beyond that of enforcing its blocking statute, and in support of this proposition invokes the South African State Attorney, Pretoria's statements in his report that disclosure of the "sensitive" information requested by Plaintiffs would "implicate[] the Republic of South Africa's national security" and have other "direct and/or indirect consequences together with various adverse effects on an already volatile business sector." According to SAA, the Letter provided new evidence of South Africa's interests in this discovery dispute which necessitated a re-balancing of the comity factors, and Magistrate Judge Pohorelsky failed to perform such an analysis.

I agree with Magistrate Judge Pohorelsky's findings that the South African government's Letter did not bear out the argument that disclosure of the requested information would harm South Africa's national security or economy. Magistrate Judge Pohorelsky also found that there was no evidence that the Minister of Trade and Industry or the State Attorney, Pretoria reviewed the documents at issue in this litigation before deciding not to authorize their disclosure. While I do not find this point dispositive of the balancing inquiry, Magistrate Judge

Pohorelsky's decision to take it into consideration was not contrary to law, and SAA has cited no authority suggesting as much.

At any rate, even assuming, as I do, that South Africa's concerns regarding disclosure are legitimate, I conclude that they do not outweigh the United States' strong interest in enforcing the Sherman Act in this case.  Unlike in the recent case of *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, where the European Commission asserted "strong and legitimate reasons to protect the confidentiality" of its formal communications to parties under investigation and the oral hearings held in such investigations, here, South Africa is asserting an interest largely traceable to its status as the owner of a profitable national airline.  *Payment Card*, 2010 WL 3420517, at *9.  In my view, this tangible, business-related interest animates South Africa's objection to disclosure of the requested information.  In light of South Africa's proprietary posture in this case, I am unwilling to give its asserted interests as much deference as I gave the European Commission's interest in the confidentiality of its investigative statements and hearings in *Payment Card.  See id.* ("The Commission has established that confidentiality plays a significant role in assisting the effective enforcement of European antitrust law.").  *See also Minpeco*, 116 F.R.D. at 524 (deferring to the Swiss national interest in enforcing its bank secrecy laws, which "have the legitimate purpose of protecting commercial privacy inside and outside Switzerland," and explicitly distinguishing those laws from foreign blocking statutes).

For these reasons, I defer to Magistrate Judge Pohorelsky's finding that the interests asserted by South Africa in this discovery dispute do not outweigh those of the United States.[4]

---

[4]     SAA further contends that the South African Competition Commission's own investigation concerning the price fixing at issue in this litigation bolsters its interest in resisting disclosure of the requested

4. *Hardship to SAA*

Magistrate Judge Pohorelsky found that SAA did not face hardship sufficient to warrant non-disclosure of the requested information. Although the South African government in its Letter alluded to the punitive consequences that would attend SAA's disclosing the information,[5] I agree with Magistrate Judge Pohorelsky's finding that there is no realistic chance of sanctions or prosecution in the event that SAA obeys the Court's production order. The fact that SAA professes to being an organ of the South African government further supports this finding.

## CONCLUSION

SAA's objections to Magistrate Judge Pohorelsky's July 23 Order granting Plaintiffs' motion to compel and his September 15 Order declining to modify or vacate the previous order are overruled. SAA is to comply with Magistrate Judge Pohorelsky's July 23 Order in full, and any failure to do so will result in the imposition of sanctions.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
        November 23, 2010

---

information, seemingly attempting to draw a parallel between this case and *Payment Card*. I find such an analogy untenable, as the information sought here is not documents or transcripts produced in connection with that investigation, but rather business-related information in the possession of an airline.

[5] Although the blocking statute provides that "[a]ny person who contravenes the provisions of section 1(1)(b) shall be guilty of an offence and on conviction liable to a fine not exceeding two thousand rand or to imprisonment for a period not exceeding two years or to both such fine and such imprisonment," Protection of Businesses Act 99 of 1978 § 1G(2), neither the South African government nor SAA has provided any examples of persons having been prosecuted for violating the blocking statute. I therefore am not concerned that SAA will suffer such a fate.

11